# Exhibit A

CAMDEN COUNTY
SUPERIOR COURT
HALL OF JUSTICE
CAMDEN          NJ 08103

                              TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (856) 379-2200
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   MARCH 18, 2016
                    RE:     CARROW VS FEDEX GROUND PACKAGE SYSTEMS INC
                    DOCKET: CAM L -001023 16

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS    300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON ROBERT G. MILLENKY

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      101
AT:  (856) 379-2200 EXT 3060.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:

                              ATT: ANTHONY L. MARCHETTI JR
                              MARCHETTI LAW PC
                              900 N KINGS HIGHWAY
                              SUITE 306
                              CHERRY HILL      NJ 08034-1516
JUAXT5

RECEIVED
3/23/16

Appendix XII-B1

| | CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|



**CIVIL CASE INFORMATION STATEMENT**
**(CIS)**

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),**
**if information above the black bar is not completed**
**or attorney's signature is not affixed**

**FOR USE BY CLERK'S OFFICE ONLY**
PAYMENT TYPE:  ☐CK ☐CG ☐CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Anthony L. Marchetti, Jr. | (856) 824-1001 | Camden |

FIRM NAME (if applicable)
Marchetti Law, P.C.

DOCKET NUMBER (when available)
*L - 1023-16*

OFFICE ADDRESS
900 N. Kings Hwy.
Suite 306
Cherry Hill, NJ 08034

MAR 15 2016

DOCUMENT TYPE
Complaint

JURY DEMAND  ☑ Yes  ☐ No

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Michale Carrow and Michael Fennell, Plaintiffs | Michale Carrow and Michael Fennell v. FedEx Ground Systems, Inc. |

| CASE TYPE NUMBER (See reverse side for listing) | HURRICANE SANDY RELATED? | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☑ NO |
|---|---|---|
| 509 | ☐ YES  ☑ NO | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING?  ☐ Yes  ☑ No | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?  ☑ Yes  ☐ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)  ☐ NONE  ☐ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?  ☑ YES  ☐ No | IF YES, IS THAT RELATIONSHIP:  ☑ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)  ☐ FAMILIAL  ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ☑ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

Class Action, Wage Payment Law + Consumer Fraud Act

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?  ☐ YES  ☑ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?  ☐ YES  ☑ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

---

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151   NAME CHANGE
- 175   FORFEITURE
- 302   TENANCY
- 399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502   BOOK ACCOUNT (debt collection matters only)
- 505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506   PIP COVERAGE
- 510   UM or UIM CLAIM (coverage issues only)
- 511   ACTION ON NEGOTIABLE INSTRUMENT
- 512   LEMON LAW
- 801   SUMMARY ACTION
- 802   OPEN PUBLIC RECORDS ACT (summary action)
- 999   OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305   CONSTRUCTION
- 509   EMPLOYMENT (other than CEPA or LAD)
- 599   CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605   PERSONAL INJURY
- 610   AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621   UM or UIM CLAIM (includes bodily injury)
- 699   TORT – OTHER

**Track III - 450 days' discovery**
- 005   CIVIL RIGHTS
- 301   CONDEMNATION
- 602   ASSAULT AND BATTERY
- 604   MEDICAL MALPRACTICE
- 606   PRODUCT LIABILITY
- 607   PROFESSIONAL MALPRACTICE
- 608   TOXIC TORT
- 609   DEFAMATION
- 616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617   INVERSE CONDEMNATION
- 618   LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303   MT. LAUREL
- 508   COMPLEX COMMERCIAL
- 513   COMPLEX CONSTRUCTION
- 514   INSURANCE FRAUD
- 620   FALSE CLAIMS ACT
- 701   ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**

| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 289 | REGLAN |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 278 | ZOMETA/AREDIA | 291 | PELVIC MESH/GYNECARE |
| 279 | GADOLINIUM | 292 | PELVIC MESH/BARD |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 282 | FOSAMAX | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 296 | STRYKER REJUVENATE/ABG II MODULAR  HIP STEM COMPONENTS |
| 286 | LEVAQUIN | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 287 | YAZ/YASMIN/OCELLA | 601 | ASBESTOS |
| 288 | PRUDENTIAL TORT LITIGATION | 623 | PROPECIA |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

**Please check off each applicable category**   ■ Putative Class Action   ☐ Title 59

---

MARCHETTI LAW, P.C.
Anthony L. Marchetti, Jr., Esquire (050531994)
900 N. Kings Hwy., Suite 306
Cherry Hill, NJ 08034
(856) 824-1001 fax: (856) 414-1806
amarchetti@marchettilawfirm.com
Attorneys for Plaintiffs

Harold l. Lichten, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston St #2000
Boston, MA 02114
(617) 994-5800 fax: (617) 994-5801
hlichten@llrlaw.com
Attorneys for Plaintiffs
(Pro hac vice to be submitted)

MAR 1 6 2016

| | |
|---|---|
| MICHAEL CARROW AND MICHAEL FENNELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEMS, INC.<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>CAMDEN COUNTY<br>LAW DIVISION<br><br>DOCKET NO. *L-1023-16*<br><br>CIVIL ACTION<br><br>CLASS ACTION COMPLAINT, JURY DEMAND, DESIGNATION OF TRIAL COUNSEL, NOTICE PURSUANT TO RULES 1:5-1(a) and RULE 4.5-1 CERTIFICATION |

1.     Plaintiffs, individually and on behalf of all others similarly situated within

the State of New Jersey, by way of Complaint against Defendant, allege as follows:

## INTRODUCTION

2.     This is a class action suit asserting claims for Consumer Fraud, rescission

and recovery for unjust enrichment, violation of the New Jersey Wage Payment Law, and

other claims relating to Defendant's misclassification of Delivery Truck drivers.

1

3.      Plaintiffs are truck and van drivers engaged in package delivery for the Defendant, Federal Express Ground Package Systems, Inc. (herein "Defendant" or "FXG") in the State of New Jersey.

4.      FXG induced the named Plaintiffs and Class Members (collectively, "Plaintiffs") to obtain a route and to purchase a delivery truck, to insure and maintain that truck, to purchase a "business support package" and other items required by FXG, and to deliver packages for FXG, all the while representing to them that they are or would be "independent business owners" and "business partners" with FXG, and that they had or would have proprietary interests in the delivery routes for which they contracted.

5.      These representations made both before an operating agreement is tendered and the OA itself were false. In reality, FXG micro-manages Plaintiffs' activities in such a manner that Plaintiffs are *de facto* employees of FXG.

6.      FXG has illegally shifted to Plaintiffs the burden of purchasing and maintaining trucks and equipment necessary to operate FXG's business, makes deductions from their pay, forces drivers to pay for their own workers' compensation insurance, and otherwise uses the independent contractor model to extract a competitive benefit against its competitors on the backs of its workers.

7.      FXG has avoided all state and federal employment taxes, workers' compensation and unemployment compensation obligations and other business expenses by forcing the Class Members, directly or through business entities that they required the Class members to create in order to obtain/retain their jobs, to pay those obligations.

8.      By this suit, the Plaintiffs seek compensatory and equitable relief/restitution as a result of FXG's illegal acts.

2

## THE PARTIES

9.     All Plaintiffs reside or work in the State of New Jersey and, during the past six years, were pick-up and delivery drivers at Defendant FXG's New Jersey terminals.

10.     Plaintiff Michael Carrow, a New Jersey resident/citizen, was a contract driver for FXG at its Barrington, Camden County, New Jersey terminal from May 21, 2013 through November 30, 2015. Mr. Carrow resides at 204 Stotesbury Ave., Newfield, New Jersey. Mr. Carrow performed this work through a corporate entity he formed at FXG's request known as Newfield Transportation, Inc. ("Newfield".)

11.     Newfield came into existence because FXG required that Mr. Carrow create a corporation before he could begin work with FXG.

12.     Newfield had no ongoing business and ceased to exist as an ongoing entity following Mr. Carrow's separation from FXG.

13.     Plaintiff Michael Fennell, a New Jersey resident/citizen, was a contract driver for FXG at its Barrington, Camden County, New Jersey terminal from September 2014 through October 16, 2015. Mr. Fennell resides at 201 Morris Turnpike, Branchville, New Jersey. Mr. Fennell performed this work through a corporate entity he formed at FXG's request known as Fennell Logistics Corporation.

14.     Fennell Logistics Corporation came into existence because FXG required that Mr. Fennell create a corporation before he could begin work with FXG.

15.     Fennell Logistics Corporation had no ongoing business, and ceased to exist as an ongoing entity following Mr. Fennell's separation from FXG.

3

16.     Defendant, FXG, is a Delaware corporation with its principal office in Moon Township, Allegheny County, PA. FXG operates several terminals in New Jersey that are the focus of this matter.

17.     At all times relevant to this action, Defendant has actively and continuously conducted business throughout the State of New Jersey, employing contractor/drivers such as Plaintiffs and the members of the proposed Class.

## FACTS COMMON TO ALL CAUSES OF ACTION

18.     Defendant is a national company employing thousands of drivers to pick up and deliver packages for its customers throughout the United States.

19.     FXG operates two divisions in New Jersey: The Ground division routinely (but not exclusively) picks up and delivers packages to businesses. The Home Delivery division routinely, but not exclusively, delivers packages to residential locations.

20.     During the time relevant to this action, FXG retained what is believed to be more than 300 delivery and pick-up drivers in New Jersey.  FXG retains these drivers for the purpose of providing its customers with timely and reliable pick-up and delivery of packages in a logistics-heavy system that is similar to its only real competitor, United Parcel Service.

21.     FXG has actively recruited drivers and creates a market for its routes by engaging in a marketing practice, first through advertisements and in person meetings and later through the internet (e.g., BuildaGroundbiz.com) extolling to the general public the benefits of becoming a "contractor," making, among others, the misrepresentation that persons who enter into the "Operating Agreement" either directly or through a

4

"business entity" will have their own independent business that will be a "partner" with FXG.

22.     FXG misrepresents to the public and to the Plaintiffs, that contract drivers have the right to run their own business; to "be your own boss," to "have the ability to grow your own business;" to "have the chance to partner with the fastest growing transportation company [FXG] in the country."

23.     FXG, maintains these misrepresentations in the Operating Agreement itself, as well as in post-contracting communications with the drivers. For example, the OA contains representations that suggests that the "contractor" will have sole control over how to run the business. This is untrue.

24.     FXG also misrepresents to the Plaintiffs and the public that they "have a proprietary interest as a FedEx Ground [or Home Delivery] contractor."

25.     In reality, whether the contracts are obtained through FXG or whether received from another "contractor," the entire relationship is a scam. The only thing that a "contractor" purchases is the right to operate a route at FXG's pleasure and FXG's control for a one-year period.

26.     Although FXG does not "sell" routes, it is an essential and knowing participant in the sale of routes – FXG must approve any route transfer, and creates various marketing materials such as the website referenced above in order to entice individuals to enter into route purchase transactions.

27.     FXG retained and exercised the power to require that drivers work through LLCs or corporations, else FXG would no longer permit the drivers to work.

28.    In the Summer of 2015, FXG declared that it would no longer permit single work area drivers, and proclaimed that it would no longer renew OAs for drivers who did not have 5 routes.  This action was in direct retaliation because New Jersey drivers, through the undersigned counsel, and drivers across the country, have challenged the misclassification business model FXG uses.

29.    FXG requires its drivers to sign an Operating Agreement ("Agreement" or "OA") that characterizes each driver as an "independent contractor" representing that the driver, through an entity that FXG requires be set up, will have a proprietary and entrepreneurial interest in the route.

30.    The existence of an intervening single-purpose LLC or corporation does not control the employment relationship under New Jersey law.  Under the ABC test, the relative nature of the work test, and any other employment test, the individual drivers here are, in law and in fact, employees of FXG.

## DEFENDANT'S OPERATING AGREEMENT

31.    All Class Members were required to sign an Operating Agreement either directly or through a business entity formed for this purpose. Although not identical, the Agreements for the Ground division and the Home Delivery division are substantially the same in all respects relevant to this action.

32.    Both the Ground and Home Delivery Agreements generally characterize the drivers as independent contractors.

33.    Among other things, the Agreements provide that:

  a. Plaintiffs must provide and maintain their own vehicle, paying for all costs and expenses incidental to its operation, including maintenance, gas, oil,

6

repairs, tax, licenses and tolls. Moreover, Plaintiffs must adorn the vehicle with specific colors, logos and marks, identifying it as "part of the FXG system."

b.  Plaintiffs must maintain liability insurance for operation of the vehicle without packages on board, naming FXG as an insured; Plaintiffs must prepare driver logs and inspection/maintenance reports, and such shipping documents "as FXG may from time to time designate;"

c.  Plaintiffs must wear "an FXG-approved uniform," and keep his/her personal appearance consistent with standards "promulgated from time to time by FXG;"

d.  FXG may change a driver's Primary Service Area, notwithstanding FXG's representation and promise that each driver has a proprietary interest in the customers he or she serves;

e.  The OA may not be altered, changed or amended in any respect unless in writing and signed by both parties; and

f.  FXG can terminate the Agreement, or can, for a perceived minor infraction, provide notice prior to termination. FXG may non-renew at will.

34.    The Agreement is and at all times mentioned herein has been a contract of adhesion, drafted by FXG and its legal counsel, printed by FXG, and distributed by FXG among drivers for mandatory signature. Plaintiffs have no opportunity to negotiate with FXG over the terms or conditions contained in the Agreement and FXG offers its drivers no meaningful choice of terms.

7

35.     The Agreement is, and at all material times has been, unlawful and unconscionable in form and effect.  The Third Circuit Court of Appeals, in the matter known as <u>Lucey v. FedEx Ground</u>, found the arbitration clause within the OA to be unenforceable as substantively and procedurally unconscionable.  The Arbitration Clause, which covers only terminations, does not preclude or affect Plaintiffs' claims asserted in this Complaint.

36.     Despite the Operating Agreement and despite repeated representations by FXG, Plaintiffs are, under New Jersey law, employees of FedEx Ground, for the reasons set forth herein.

## DEFENDANT'S CONTROL OF PLAINTIFFS AND OTHER WRONGFUL ACTS

37.     FXG exercises extensive control over the means by which Plaintiffs perform their jobs.

38.     Such control is exerted in part through the Operating Agreements and provisions described above, which Plaintiffs were required to sign as a condition of employment.

39.     FXG's complete control over Plaintiffs is also exercised by other rules and regulations, written and unwritten, including but not limited to the following:

   a. FXG requires Plaintiffs, directly or through an entity they are required to form to obtain the job, to obtain a vehicle that meets FXG's specifications;

   b. FXG requires Plaintiffs, directly or indirectly, to pay for the purchase or lease of such vehicle, as well as for its maintenance and upkeep. Other vehicle-related costs required to be paid by Plaintiffs include fuel, oil,

tires, repairs, taxes, insurance coverage, licenses, vehicle registration renewal fees, base plates and all highway, bridge and ferry tolls;

c. FXG requires that Plaintiffs' vehicles meet certain unique specifications, on both the inside and outside. Plaintiffs are required to paint the vehicle with FXG's colors and put FXG's logos on the vehicle;

d. Although Plaintiffs could technically use the vehicles for their own commercial and personal purposes, they are not permitted to do so without removing or covering all FXG identifying logos and marks. Additionally, the hours worked by the drivers generally exceed ten hours each day, leaving no time to use the vehicles for any other endeavor;

e. Plaintiffs and other drivers have no control over the prices FXG charges to FXG's customers for pick-up and delivery service;

f. Plaintiffs and other drivers do not have authority to reject deliveries or pick-ups. They are required to adhere to FXG's strict route schedules and their failure to make a pick up or delivery subjects them to discipline;

g. FXG mandates that Plaintiffs wear an FXG-approved uniform, and follow such other guidelines as FXG might promulgate regarding their personal appearance;

h. FXG instructs and controls drivers as to the appearance of their vehicles;

i. FXG requires that Plaintiffs perform specified maintenance on their vehicles according to a schedule set by FXG;

j. FXG requires that Plaintiffs and other drivers purchase or lease certain electronic communications equipment that complies with FXG's

9

specifications. That equipment includes a "scanner" which contains global positioning system ("GPS") capability, which allows FXG to monitor the location of the drivers at all times;

k. FXG prescribes forms to be used during the work, and required that Plaintiffs use same;

l. FXG requires Plaintiffs to provide services to FXG's customers on days and at times that are compatible with the customer's schedules and requirements as accepted by FXG;

m. FXG assigns Plaintiffs to the area each driver is to service;

n. FXG must first give approval for any helpers or substitutes, even though Plaintiffs are required to pay such substitutes' wages;

o. FXG retains the power to terminate drivers, and/or their "business entities" and/or to approve or disapprove helpers;

p. Plaintiffs may not carry non-authorized passengers or packages while on FXG business;

q. Plaintiffs must submit to a drug screen administered at whatever time and place and in whatever manner dictated by FXG;

r. FXG retains an exquisite level of control as to the methods and manner in which the work is performed and actively monitor's the drivers' compliance with these rules, such as how he or she drives and carries the packages;

s. FXG employs Terminal Managers, Pickup and Delivery Managers, Safety Managers and other supervisory personnel to manage the drivers, process

10

the drivers' paperwork and to give each driver his or her delivery and pick-up schedules;

t. FXG's assignment of packages and unilateral modification of pay structures effectively and efficiently controls Plaintiffs' earnings and ability to complete their work;

u. FXG does not compensate drivers for time spent loading the trucks;

v. FXG pays its drivers on a piece rate system, for the number of stops, deliveries and pick-ups made, together with certain fixed payments that ensure a minimum amount of income.

40. Plaintiffs' delivery of packages is an active, integral and indispensable part of FXG's business enterprise. By driving vehicles with FXG's colors and logos, by reliably serving FXG's customers, by following FXG's controlled delivery routes and delivery and pick-up methods and in other ways, Plaintiffs and other delivery drivers have rendered, and continue to render, valuable personal services to Defendant FXG. The personal services described immediately above:

a. confer substantial benefits on FXG;

b. are an integral part of the process which enables FXG to offer its customers timely and reliable pick-up and delivery services;

c. is performed at FXG's workplace, and at the locations of FXG's customers; and

d. do not involve the kind of expertise which requires entrustment to an independent professional, as opposed to an employee.

41.     Plaintiffs are not free from FXG control over the method and manner of how the work is performed.

42.     Plaintiffs work is not outside the ordinary course of FXG's business, and the work is performed at FXG's place of business, which includes pick up and deliveries at FXG's customer locations.

43.     Plaintiffs have no bona fide ongoing business entity that could or did survive the termination from FXG.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this class action on behalf of themselves and other similarly situated drivers/contractors."

45.     Specifically, Plaintiffs bring this action as a class action on behalf of all persons who worked, on a full time basis, for Defendant FXG at its Ground Division and/or Home Delivery Division terminals in New Jersey, from March 16, 2010 to the time of trial (the "Class Period") as package delivery drivers and/or package pick-up drivers, and who were signatory to an Operating Agreement with Defendant FXG, directly or on through a business entity.  This proposed class definition excludes drivers who first signed an OA prior to October 2007, and are therefore members of the certified class in the matter known as Tofaute v. Fedex Ground Package Systems, Inc. to the extent that their damage claims are addressed to conclusion in that matter.

46.     Upon information and belief, the number of members of the Plaintiff Class exceeds 300 during the Class Period.

47.     The Plaintiff Class is so numerous that their individual joinder into a single action is impracticable. Although the exact number of Class Members cannot be

12

properly determined without further discovery, the number and identity of the Class Members can easily be ascertained from Defendants' records.

48.     By classifying its drivers as Independent Contractors, FXG enjoys a significant savings over its competitors, in that the pay is less, there are no benefits, and the drivers incur the cost of the truck, among other things.

49.     In order to maintain this competitive advantage, FXG requires a steady stream of individuals to serve as "contractors." In order to do this, FXG engages and has, at all times relevant, engaged in a systematic marketing, advertising and recruiting campaign within the State of New Jersey, addressed at all times to the general public, to induce members of the public, such as Plaintiffs, to agree to obtain/purchase and service one of FXG's delivery routes.

50.     FXG advertises the supposed benefits of the relationship to the general public on its web site, Buildagroundbiz.com as well as in other places.

51.     While FXG does not directly "sell" the routes, they are an essential part of the chain of distribution, as no routes may be sold without FXG's explicit approval and FXG derives a benefit from the sale/purchase of the routes. FXG does, as part of the actual relationship, charge drivers for the use of certain equipment and consumables.

52.     Through the above-referenced campaign, FXG induces and has induced individuals, including Plaintiffs, to become drivers for FXG by representing that the drivers will be independent businesses in partnership with FXG, and that those businesses have value based upon a property interest. These representations are false and misleading, as FXG controls the routes and the drivers in such a manner that the routes have virtually no value and the drivers can not grow their business.

13

53.     FXG actively participates and profits from a scheme in which drivers spend tens of thousands of dollars to purchase a purported "business" that is nothing more than a job with piecework pay and a one year term.

54.     In its Operating Agreements, as in the marketing materials discussed above, Defendant conceals the true nature of the relationship between FXG and its drivers: that of employer and employee.

55.     FXG also misrepresents that it has and exercises exquisite control over the drivers, through wording that suggests FXG will not control the work of the drivers, when that is exactly what it does.

56.     As a result of Defendant's misrepresentations, the Plaintiffs pay substantial sums of money for the routes, purchase or lease of vehicles that meet FXG specifications, and pay all costs of operating and maintaining those vehicles.

57.     FXG does not pay for workers' compensation coverage or unemployment insurance, illegally shifting those costs to the "contractor."

58.     The purpose and intent of the misclassification is to shift the burden of the costs of running a delivery business upon the workers, to avoid worker protections, including the Law Against Discrimination, Family Leave, Unemployment and Worker's Compensation, and to otherwise obtain an unfair advantage over its competitors.

59.     As described above, FXG systemically controls virtually all aspects of the relationship with Plaintiffs in such a manner and extent that the drivers are in fact employees of FXG.

60.     Under the ABC test applicable to the Wage Payment Law, the relative nature of the work test applicable to Workers Compensation and all other tests utilized in

14

New Jersey, every driver who operates a FXG truck is, as a matter of New Jersey Law, a FXG employee.

61.    The Defendant's actions have inflicted the same types of harm upon each and every member of the Class.

62.    There are questions of law and fact that affect and are common to all Class Members. The central questions of law and fact involved in this action are of a common or general interest.

63.    Common legal and factual issues predominate over any questions affecting only individual members of the Class. Among the common questions of law and fact are the following:

   a.   Whether FXG violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et. seq., by participating in the marketing/sale of its routes and products to Plaintiffs;

   b.   Whether the contractor drivers are actually FXG employees;

   c.   Whether FXG unlawfully forced Plaintiffs to pay for business expenses that rightfully should have been paid for by their employer, FXG;

   d.   Whether FXG, by making unlawful deductions from the pay of Plaintiffs and/or their "business entities," violated the Wage Payment Law;

   e.   Whether FXG was unjustly enriched by failing to compensate the Class as employees, by shifting the cost of workers compensation insurance to its statutory employees, failing to provide employment benefits and emoluments of employees, by evading employment taxes, and by

wrongfully benefiting from its requirement that the Class pay for FXG's business expenses;

f.   Whether injunctive and declaratory relief are proper;

g.   Whether the agreement permitting FXG to shift the burden of employment expenses, taxes, workers' compensation and other insurances is illegal and therefore void; and,

h.   Whether Defendants' actions violate the implied covenant of good faith and fair-dealing.

64.   The claims of the named representative Plaintiffs are typical of the claims of other members of the Plaintiff Class. The named Plaintiffs share the same interests as other members of the Class in this action because, like other Class Members, they have each suffered financial loss of thousands of dollars due to FXG's conduct.

65.   The Class Representatives have an incentive and are committed to vigorously prosecuting this action because they have actually suffered loses as a result of Defendant's actions.

66.   Plaintiffs have retained qualified counsel, experienced in class action practice, especially with this Defendant, to represent them in this matter.   The undersigned has actively litigated misclassification and other employment-based cases against FXG for the past 11 years.

67.   A class action is the only realistic method available for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class Members may be relatively small, in comparison with the expense and burden of

individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct herein alleged.

68.     Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the court. The prosecution of separate actions would also create the risk of inconsistent rulings, which may be dispositive of the interest of Class Members who are not parties to the adjudication and/or may substantially impede Class Members' ability to protect their interests, and therefore would be contrary to the interest of justice and equity.

## COUNT I – VIOLATION OF THE CONSUMER FRAUD ACT

69.     Plaintiffs incorporate by reference the above Paragraphs of this Complaint as if fully set forth herein.

70.     Defendants, through the actions described above, have violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et. seq.

71.     Defendant's marketing and recruitment materials are offered and presented to members of the general public within the State of New Jersey.  Specifically, while FXG does not physically take the money from the sale of the routes, it serves as market maker and in an internal part of any route sale transaction.

72.     Part of Plaintiffs' consideration for route purchase was Plaintiffs' acquiring the delivery truck, purchase of the business support package and an agreement to provide services.  Further, FXG maintains and promotes the "sale" of routes between drivers through various internet vehicles which suggest the ability to "Build a Ground Business."

17

73.     When such transactions take place, FXG plays an integral role, and must approve the transfer and perform an investigation before the route can be purchased.

74.     This sale and transfer of routes benefits FXG, which uses these transfers to attempt to bolster its claim for contractor status, and ensures that FXG always has sufficient coverage for its routes.

75.     Defendant's representations to Plaintiffs and other members of the general public through their advertising, marketing and recruitment process were false and were false statements of intention, when made, and therefore constitute affirmative misstatements of material fact.

76.     FXG has engaged in unconscionable commercial practices of deception, fraud, false pretense, false promise, and misrepresentation in recruiting and retaining its drivers, the public at large, and the Class specifically, regarding the status of the Class Members as independent business owners as pled in this Complaint. Specifically, Defendant misled Plaintiffs to believe that they were going to be "partners" with FXG, that Plaintiffs would have an independent business, fully marketable and transferable, that Plaintiffs were investing in a business and would have a proprietary interest that would grow, along with their income, that the routes had and would have value, and other representations designed to convince Plaintiffs and members of the general public to acquire a truck and service Defendant's customers under the terms of a burdensome and nonnegotiable contract.

77.     Defendant knowingly concealed, suppressed or omitted the fact that it intended to micro-manage Plaintiffs' work and income, that Defendant's management and control utterly destroyed or would destroy any perceived value of the routes that

18

FXG had no intention of leaving the means and methods of the work to Plaintiffs, that other jurisdictions have found that driver-contractors were actually employees, not business owners, that Defendant intended to treat Plaintiffs as employees, not entrepreneurs, and other material facts regarding the transaction.

78.     Defendant's actions constitute an unconscionable commercial practice, deception, fraud, false pretense, violation of applicable regulations, false promise, misrepresentation, and/or the knowing concealment, suppression or omission of material facts with intent that the Plaintiffs, and those like them, rely upon its concealment, suppression or omission, in connection with the sale of the routes to Plaintiff.

79.     FXG failed to disclose to Plaintiffs the material fact that it intended to enact the ISP program, in which FXG unilaterally decided that as of September 1, 2015, it would no longer contract with drivers who did not have at least 4 or 5 routes.

80.     Defendant committed affirmative misrepresentations, knowing omissions, and regulation violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, entitling Plaintiff to the remedies under the Act.

81.     As a result of Defendant's conduct, Plaintiffs entered into the Operating Agreement as described above, purchased the routes and made the associated and required investments in the purchase of a truck and other equipment and purchased or leased equipment and services from FXG.

82.     As a result of Defendant's control, micro-management, and abuse thereof, Defendant has destroyed the potential financial value of the routes, causing losses under an out of pocket and benefit of the bargain theory.

19

83. Plaintiffs suffered ascertainable losses as a result of Defendant's actions, including but not limited to, the loss of value of the routes, lost opportunity to sell the routes, lost profits, additional insurance costs, taxes and other expenses that should have been paid by FXG as an employer, and other losses.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant for compensatory damages, injunctive and declaratory relief, consequential damages, treble damages, plus costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.

## COUNT II - MISREPRESENTATION

84. Plaintiffs incorporate by reference the above Paragraphs of this Complaint as if fully set forth herein.

85. Defendant's knowing misrepresentations and omissions also constitute legal and equitable fraud. Defendant's actions were willful, wanton and taken with reckless disregard to the harm they would cause Plaintiff.

86. Defendant engaged in misrepresentations and omissions described above as part of a systematic corporate policy.

87. Defendant made the representations set forth herein above.

88. Defendant knew, or should have known, or recklessly or negligently disregarded the truth of the representations, which were false when made, or which were promises of future action which Defendant did not intend to comply with at the time when they were made.

89. Defendant made said representations with the intent that Plaintiffs would rely on same.

20

90.   Plaintiffs relied upon Defendant's misrepresentations, actions and intentional omissions in deciding to enter into the Operating agreement.

91.   Plaintiffs suffered harm as a result of Defendant's misrepresentations.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant for compensatory damages, injunctive and declaratory relief, consequential damages, treble damages, rescission, plus costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.

### COUNT III– RECISSION OF OPERATING AGREEMENT

92.   Plaintiffs incorporate by reference the above Paragraphs of this Complaint as if fully set forth herein.

93.   Despite the express terms of the Operating Agreement, Plaintiffs' relationship with FXG satisfies every aspect of each New Jersey test for employment, and not for independent contractor status.

94.   The Operating Agreement illegally and unfairly advantages FXG, by mischaracterizing the status of the Plaintiffs in that FXG evades employment related obligations, such as social security contributions, workers' compensation coverage, and state disability and unemployment compensation, makes illegal wage deductions, illegally shifting the expense of workers' compensation coverage and other expenses to Plaintiffs.

95.   The Operating Agreement between FXG and each Plaintiff and member of the Class is void as being illegal and/or against public policy and therefore unenforceable.

96.   The OA is specifically void under the provisions of the Wage Payment Law. N.J.S.A. 34:11-4.7.

21

97.     The Operating Agreement between FXG and each Plaintiff is an unconscionable contract of adhesion, which is unenforceable as contrary to public interest, policy and law.

98.     The Operating Agreement illegally shifts upon Plaintiffs the burden of certain costs that an employer must pay.

99.     While acting on the direct instruction of FXG and discharging their duties for FXG, Plaintiffs and the Class Members incurred business expenses for, inter alia, the purchase or lease, maintenance, operating costs and adornment of vehicles; insurance; and uniforms.

100.    By misclassifying its employees as "independent contractors," and further by contractually requiring those employees to pay FXG's own expenses, FXG has been unjustly enriched.

101.    As a direct and proximate result of FXG's conduct, FXG has received substantial benefits to which it had no entitlement, at Plaintiffs and the Class Members' expense, including lost profits, self-employment taxes, premiums for insurance to replace workers' compensation and disability benefits, business expenses, compensation of replacement workers, and other expenses.

102.    Plaintiffs are entitled to restitution for all of the business expenses they were illegally required by FXG to bear, for all of the employment taxes, unemployment compensation and workers compensation that FXG should have but did not pay, and Plaintiffs are entitled to the quantum meruit value of their services as employees.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant rescinding the Operating Agreement, and awarding

restitution compensating for the reasonable value of the benefit provided to FXG, disgorging the profits improperly obtained by FXG, along with compensatory damages, punitive damages, consequential damages, declaratory judgment and injunctive relief, costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.

## COUNT IV – VIOLATION OF THE WAGE PAYMENT LAW

103.   Plaintiffs incorporate by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

104.   FXG is an employer within the meaning of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1(a).

105.   Each Class Member is an employee within the meaning of N.J.S.A. 34:11-4.1(b).

106.   FXG has paid to the Plaintiffs compensation for their services that are wages within the meaning of N.J.S.A. 34:11-4.1(c).

107.   Because of the closed nature of the so-called business entities, which FXG requires, a deduction from the entities is really a deduction of the Plaintiffs' wages.

108.   FXG has withheld and diverted from the Plaintiffs' wages amounts for workers' compensation, employment taxes, and business expenses such as vehicle insurance, vehicle maintenance, the "business support package" and other expenses.

109.   FXG's actions in mandating the payment of expenses, acts as a direct or indirect deduction from wages.

110.   FXG withheld and diverted the wages of the Plaintiffs as set forth above in violation of N.J.S.A. 34:11-4.4 et. seq.

23

111.    The Operating Agreement as described herein violates the Wage Payment Law, and is unlawful, null and void pursuant to N.J.S.A. 34:11-4.7.

112.    Pursuant to N.J.S.A. 34:11-4.7, Plaintiffs have a private right of action against FXG, their employer, for the full amount of wrongfully withheld or diverted wages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant for wrongfully withheld and diverted wage, compensatory damages, declaratory judgment holding the Operating Agreement to be null and void, plus costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.

### COUNT V – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

113.    Plaintiffs incorporate by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

114.    Under New Jersey law, each Operating Agreement contains a covenant of good faith and fair dealing that FXG owes each Plaintiff and Class Member.

115.    Defendant has breached that duty, acted in bad faith and has failed and refused to deal with the members of the Class fairly by:

> a.  intentionally misclassifying the Class Members as independent contractors when, because of the level of FXG's control, the Class Members are actually employees;
>
> b.  destroying the value of the plaintiffs' routes in such a manner as to render them of little or no value, thereby depriving the Plaintiffs of the value of their bargain;

24

c.  unilaterally restructuring routes to FXG's benefit and to the Plaintiffs' detriment, without adequate compensation;

d.  subjecting the drivers to an annual renewal process permitting the employer to terminate the agreement without cause, therefore destroying any intrinsic value to the route; making unilateral changes to the pay structure for the routes, therefore controlling Plaintiffs' income in order to increase their profits;

e.  Changing the business model to enact the ISP requirement; and,

f.  otherwise depriving Plaintiffs of the benefit of their bargain with FXG.

116.  Plaintiffs have suffered losses as a direct and proximate result of the Defendant's breaches, unfair business practices and actions described above.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant for compensatory damages, punitive damages, consequential damages, declaratory judgment and injunctive relief, plus costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.


Dated:  March 16, 2016                          **MARCHETTI LAW, P.C.**
                                                Attorneys for Plaintiffs


                                                _____
                                                ANTHONY L. MARCHETTI, JR.

LICHTEN LISS-RIORDAN, P.C.
Attorneys for Plaintiffs


_____

HAROLD L. LICHTEN, ESQ.
(PHV to be submitted)


## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury as to all issues so triable.

MARCHETTI LAW, P.C.
Attorneys for Plaintiffs

_____

ANTHONY L. MARCHETTI, JR.


## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that to my knowledge the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. There are multiple currently-pending actions against the Defendant for misclassification in other states for various time periods.

I know of no other parties who should be joined in this action, other than the members of the potential Class.

MARCHETTI LAW, P.C.
Attorneys for Plaintiffs

_____
ANTHONY L. MARCHETTI, JR.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Anthony L. Marchetti, Jr. is hereby designated as trial attorney in the above captioned litigation on behalf of the Plaintiffs.

MARCHETTI LAW, P.C.
Attorneys for Plaintiffs

_____
ANTHONY L. MARCHETTI, JR.

## NOTICE PURSUANT TO RULES 1:5-1(a) AND 4:17-4(c)

Take notice that the undersigned attorney, counsel for Plaintiffs, hereby demands pursuant to Rules 1:5-1(a) and 4:17-4(c) and any amendments thereto, that each party herein serving pleadings and interrogatories and receiving any answers thereto, serve copies of all such pleadings and answered interrogatories received from any party, including any documents, papers and other materials referred to therein, upon the undersigned attorney and take notice that this is a continuing demand.

MARCHETTI LAW, P.C.
Attorneys for Plaintiffs

ANTHONY L. MARCHETTI, JR.

28

# Marchetti Law, P.C.

A PROFESSIONAL CORPORATION



Anthony L. Marchetti, Jr. Esq.
Certified by the Supreme Court of New Jersey as a Civil Trial Attorney
Also admitted to practice in PA
www.MarchettiLawFirm.com
AMarchetti@MarchettiLawFirm.com

900 N. Kings Hwy., Suite 306
Cherry Hill, NJ 08034
856-824-1001
856-414-1800
856-414-1806 fax

**Via hand delivery**

March 16, 2016

Superior Court of New Jersey, Camden County
Clerk, Law Division
101 S 5th St.
Camden, NJ 08103

Re:     **Michael Carrow and Michael Fennel v. Fed Ex Ground Systems, Inc.**

Dear Sir/Madam:

Enclosed for filing please find the following documents:

1. Complaint
2. CIS

I have enclosed my firm's check in the amount of $250 to cover the filing fee and a return envelope for you to return a "filed" copy to my office.

Please do not hesitate to contact me if you should have any questions.

Very truly yours,

Anthony L. Marchetti, Jr.

ALM/dsc
Enclosure
Cc:     Michael Fennell
         Michael Carrow