NOT FOR PUBLICATION (Doc. No. 12)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Michael CARROW, Michael FENNELL, and Nicholas STEFANOU, *individually and on behalf of all others similarly situated*, | |
| | Case No. 16-3026 (RBK/JS) |
| Plaintiff(s), | **Opinion** |
| v. | |
| FEDEX GROUND PACKAGE SYSTEMS, INC., | |
| Defendant. | |

**KUGLER**, United States District Judge:

Plaintiffs Michael Carrow, Michael Fennell, and Nicholas Stefanou, individually and on behalf of all others similarly situated ("Plaintiffs"), bring claims against Defendant Fedex Ground Package Systems, Inc. ("Defendant") arising under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. 56:8-1 et seq., misrepresentation, rescission, New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. 34:11-4.1 et seq., and breach of the covenant of good faith and fair dealing. This matter is before the Court upon Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. No. 12). For the reasons set forth in this Opinion, Defendant's Motion is **GRANTED IN PART**.

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant is a national company that picks up and delivers packages. Am. Compl. ¶ 19. Defendant engages approximately three hundred truck and van drivers in New Jersey, among them Plaintiffs. *Id.* ¶¶ 3, 21. Drivers work for the Ground or Home Delivery division: the Ground

1

division picks up and delivers packages to businesses, and the Home Delivery division provides the same services to residential locations. *Id.* ¶ 20. The contract between Defendant and drivers, the Operating Agreement ("OA"), classifies drivers as independent contractors. *Id.* ¶ 29. For some agreements, Defendant allegedly first required the driver to create a limited liability company or corporation and sign the OA through the business entity. *See id.* ¶¶ 9–14, 28. Carrow and Fennell each created a corporate entity at Defendant's request. *Id.* ¶¶ 9–14. Each OA contains a choice of law clause that states the agreement "shall be governed by and construed in accordance with" Pennsylvania law. Def.'s Br., Daley Decl. Ex. 1, § 19.

Prior to and after entering into the OAs, Defendant allegedly makes several representations regarding the nature of the drivers' jobs. Am. Compl. ¶ 22. It tells drivers they can "be [their] own boss," "grow [their] own business," and "partner" with Defendant. *Id.* The OA states that drivers are independent contractors, have sole control over the business, and have a proprietary and entrepreneurial interest in the delivery routes. *Id.* ¶¶ 23, 26. In reality, Plaintiffs contend, Defendant treats drivers as employees. The OA regulates or controls vehicle appearance, vehicle maintenance, liability insurance, driver reports, driver uniforms, and driver service areas. *Id.* ¶ 30. Defendant also determines the prices charged for services, route schedules, electronic equipment used, forms for paperwork, and approval of substitutes and assistants. *Id.* ¶ 36. To ensure drivers are following policies, Defendant actively monitors how drivers operate their vehicles, carry packages, and complete paperwork. *Id.*

Plaintiffs brought a Complaint in the Superior Court of New Jersey, Camden County on March 17, 2016, bringing claims under the NJCFA, misrepresentation, rescission, NJWPL, and breach of the covenant of good faith and fair dealing. Defendant timely removed the Complaint

on May 25, 2016 (Doc. No. 1). Plaintiffs filed an Amended Complaint on June 15, 2016 (Doc. No. 10), and Defendant brought the present Motion to Dismiss on July 29, 2016 (Doc. No. 12).

## II.     LEGAL STANDARD

A motion to dismiss based on lack of standing must be brought under Federal Rule of Civil Procedure 12(b)(1) because standing is jurisdictional. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) may be brought at any time and may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In the second type of 12(b)(1) motion, the court does not presume that the allegations in the plaintiff's complaint are true, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Furthermore, the plaintiff has the burden of proving that the court has subject matter jurisdiction. *Id.* If a court lacks subject matter jurisdiction, it must dismiss the case without prejudice. *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155–56 (3d Cir. 1997).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits,

but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

In making this determination, the court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

Defendant moves to dismiss all Counts of the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court will address each count in turn, proceeding from the contract claims (breach of the covenant of good faith and fair dealing and rescission), to the statutory claims (NJCFA and NJWPL), and lastly to the tort claim (misrepresentation).

### A. Count V — Breach of the Covenant of Good Faith and Fair Dealing

#### 1. *Choice of Law*

A federal court sitting in a diversity case must "apply the substantive law of the state whose laws govern the action." *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1365 (3d Cir. 1993) (citations omitted). In order to determine which state's substantive law applies, a federal court exercising diversity jurisdiction will apply the conflict of law rules of the forum state. *Bayer Chems. Corp. v. Albermarle Corp.*, 171 F. App'x. 392, 398 (3d Cir. 2006). New Jersey generally upholds choice-of-law clauses, so long as the clause "does not violate New Jersey's public policy." *North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 847 (N.J. 1999) (citations omitted). A choice-of-law provision will be enforced unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* at 847–48 (citations omitted).

In this case, the OA contains a choice of law provision that states the contract is "governed by and construed in accordance with" Pennsylvania law. Def.'s Br., Daley Decl. Ex. 1, § 19. Plaintiffs are drivers in New Jersey, and the Court does not see any reason that the

selection of Pennsylvania law violates New Jersey's public policy. Thus, the Court will enforce the provision as to Plaintiff's claim for breach of the covenant of good faith and fair dealing. *See Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 15 (N.J. Super. Ct. App. Div. 1990) (holding that, in the employment context, breach of an implied covenant of good faith and fair dealing lies in contract and not tort law).

        2.     *Rule 12(b)(1)*

Defendant argues that Carrow and Fennell lack standing to bring contractual claims because they are not parties to the OAs. It is a basic principle of agency law that, "unless otherwise agreed, an agent for a disclosed principal is not a party to a contract that the agent enters on behalf of the principal." *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 858 (3d Cir. 1996). Where "the alleged contract is in the name of the agent, but the name of the principal is disclosed, there exists a strong presumption that it is the intention of the contracting parties that the principal and not the agent should be a party to the contract." *Viso v. Werner*, 369 A.2d 1185, 1187 (Pa. 1977). A principal is a disclosed principal if the plaintiff has "notice that the agent is acting for a principal and of the principal's identity." *Sweitzer v. Whitehead*, 173 A.2d 116, 119 (Pa. 1961) (quoting Restatement of Agency § 4(1)). Here, every page of the OAs signed by Carrow and Fennell contains the names of the entity formed by each respective Plaintiff. *See* Def.'s Br., Daley Decl. Exs. 1, 6. There thus exists a strong presumption that Carrow and Fennell signed as agents on behalf of their respective corporate entities, and Plaintiffs proffer no evidence to rebut that presumption.

It is a familiar principle that "[p]rivity of contract is generally required for enforcement of a contractual agreement." *Unique Techs., Inc. v. Micro Stamping Corp.*, No. Civ. 02-CV-6649, 2003 WL 21652284, at *2 (E.D. Pa. Apr. 15, 2003); *see also Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961). To have privity of contract, there must exist a contractual relationship

6

between the parties. *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1006 (Pa. 2003). Therefore, "[i]n the absence of a contractual relationship between [the parties], there is no basis for asserting the breach of good faith and fair dealing doctrine." *Southeastern Pa. Transp. Auth. v. Holmes*, 835 A.2d 851, 859 (Pa. Commw. Ct. 2003). In the present matter, Carrow and Fennell are not parties to the OAs and thus do not have a contractual relationship with Defendant. They have no basis to assert breach of the covenant of good faith and fair dealing, and their claims under Count V are dismissed.

        3.     Rule 12(b)(6)

Pennsylvania courts do not recognize an independent cause of action for breach of the covenant of good faith and fair dealing, except in "very limited circumstances." *See, e.g.*, *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000) (noting the duty is limited to "insurers' dealings with insureds, franchisors' dealings with franchisees and other narrow situations"). A breach of the covenant "is, in actuality, a claim for breach of contract." *Diehl v. Elec. Data Sys. Corp.*, No. Civ. 1:07-CV-1213, 2008 WL 2705540, at *2 (M.D. Pa. July 10, 2008) (citations omitted). To state a valid breach of contract claim under Pennsylvania law, the plaintiff must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Pa. Supply, Inc. v. Am. Ash Recycling Corp. of Pa.*, 895 A.2d 595, 600 (Pa. Super. Ct. 2006) (citations omitted). The Amended Complaint in this case fails to plead the breach of a contractual duty. *See* Am. Compl. ¶¶ 109–12. Because Plaintiffs cannot maintain an independent cause of action for breach of the covenant of good faith and fair dealing, and they do not make out a plausible breach of contract claim, the Court dismisses Count V with prejudice. The Court, however, will permit Plaintiffs to amend the Complaint to assert a breach of contract claim.

### B. Count III — Rescission

#### 1. Choice of Law

Plaintiffs also seek rescission of the contract. Rescission is designed "to restore the parties to the status quo ante" before the contract was formed, *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 662 (N.J. 1989)), and a choice of law clause assumes the existence of a valid agreement. A choice of law provision does apply to the remedy of rescission, however, where it states that the "validity . . . of [the] Policy will be governed by" a state's laws. *H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, No. 16-1447, 2017 WL 108006, at *3 (3d Cir. Jan. 11, 2017); *see also Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 596 (E.D. Pa. 1999). Here, the choice of law clause in the OA does not state that a specific state's laws will govern issues regarding validity. Thus, the Court finds that the choice of law provision does not apply to Count III.

When jurisdiction is based upon diversity of citizenship, federal district courts must apply the choice of law principles of the forum state. *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007). In contract disputes, New Jersey courts use the "most significant relationship" test set out in the Restatement (Second) of Conflict of Laws. *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171–72 (3d Cir. 2011), *as amended* (Dec. 9, 2011). The first step in a choice of law analysis is determining whether an actual conflict exists between the laws of the two states, which is done "by examining the substance of the potentially applicable laws to determine whether there is a distinction between them," *P.V. ex re T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008) (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)) (internal quotation marks omitted). If no conflict exists, then the court applies the law of the forum state and ends the conflicts inquiry. *See Rowe v. Hoffman–La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007). If a

conflict does exist, then the court must weigh the factors enumerated in the section of the Second Restatement that correspond to the cause of action. *See Camp Jaycee*, 962 A.2d at 460.

Defendant moves to dismiss Plaintiffs' rescission claim for lack of standing. New Jersey courts appear to limit the remedy of rescission to where a contractual agreement or privity exists between the plaintiff and defendant. *See Ventura v. Ford Motor Corp.*, 433 A.2d 801, 807 (N.J. Super. Ct. App. Div. 1981) (surveying cases). In Pennsylvania, a non-party to a contract is not entitled to sue for rescission. *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 551 (E.D. Pa. 2012). There does not appear to the Court any distinction between New Jersey and Pennsylvania's treatment of the availability of rescission as remedy. In this case, Plaintiffs are not parties to the OAs. They thus cannot bring a claim for rescission, and the Court dismisses Count III with prejudice.

    **C.**    **Count I — NJCFA**

        *1.*    *Choice of Law*

In addition to the contractual claims, the Complaint also alleges two statutory causes of action under the NJCFA and the NJWPL. The Third Circuit has hesitated to construe a plaintiff's assent to a choice of law provision to constitute waiver of the right to pursue statutory claims. A court should "require an employee to waive her statutory rights unambiguously in order to enforce a choice of law provision against her." *Nuzzi v. Aupaircare, Inc.*, 341 F. App'x 850, 852–53 (3d Cir. 2009). In *Nuzzi*, language that the contract was to be "governed and construed in accordance with" a state's laws did not clearly indicate the signee intended to waive her statutory claims. *Id.* Here, the OA's choice of law clause contains identical wording. The Court thus finds that the NJCFA claim can proceed despite the OA.

    2. *Rule 12(b)(6)*

  The NJCFA "is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 550 (N.J. 1997)). New Jersey courts have repeatedly emphasized that "the [NJ]CFA seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Id.* (quoting *Marascio v. Campanella*, 689 A.2d 852, 856–57 (N.J. Super. Ct. App. Div. 1997)). The NJCFA is "remedial legislation which should be construed liberally." *Real v. Radir Wheels, Inc.*, 969 A.2d 1069, 1075 (N.J. 2009) (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1079 n.1 (N.J. 2007)).

  In relevant part, the NJCFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2. "Merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1(c).

  The thrust of Plaintiffs' case is that they and Defendant had an employment relationship. *See* Am. Compl. ¶¶ 49, 50. The averments in the Amended Complaint, and Count I in particular, center around Defendant's control over Plaintiffs' jobs. *See generally* Am. Compl.; *id.* ¶¶ 65–79. The New Jersey Appellate Division, however, has specifically held that employment

relationships are not governed by the NJCFA. *Winslow v. Corp. Express, Inc.*, 834 A.2d 1037, 1046–47 (N.J. Super. Ct. App. Div. 2003) ("[P]laintiff's relationship with defendant was not governed by the CFA but rather by the myriad of statutory provisions designed to protect employees . . . ."). Plaintiffs' fraud allegations thus are not cognizable under the NJCFA.

Plaintiffs attempt to argue that Defendant sold and advertised merchandising by offering the "opportunity to obtain a FXG route." Pl.'s Opp'n 31. The Third Circuit, however, has held that business opportunities do not constitute merchandise under the NJCFA. *J & R Ice Cream Corp. v. Ca. Smoothie Licensing Corp.*, 31 F.3d 1259, 1272–74 (3d Cir. 1994). Some recent decisions by the New Jersey Appellate Division have rejected the restrictive interpretation in *J & R. See Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677, 679 (N.J. Super. Ct. App. Div. 2003). Third Circuit precedent, however, is binding on this Court. The Court grants Defendant's Motion to Dismiss as to the NJCFA claim and dismisses Count I with prejudice.

### D. Count IV — NJWPL

#### 1. Rule 12(b)(1)

The NJWPL "governs the time and mode of payment of wages due to employees." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 457 (N.J. 2015). Defendant argues at length that Plaintiffs cannot bring a claim under the NJWPL because they are not parties to the OAs. The NJWPL defines "employer" as "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, employing any person in this State." N.J. Stat. Ann. § 34:11-4.1(a). This provision does not require an entity to render payment directly to a person to qualify as an employer. Employee in turn is defined as a "person," but a person similarly need not receive wages directly from the employer to constitute an employee. N.J. Stat. Ann. § 34:11-4.1(b). Rather, courts "are obliged to look behind contractual language to the actual

11

situation-the status in which parties are placed by relationship that exists between them." *Feinsot v. Bd. of Review*, 2007 WL 561326, at *4 (N.J. Super. Ct. App. Div. Feb. 26, 2007) (citations omitted); *see also Echavarria v. Williams Sonoma, Inc.*, No. Civ. 15-6441, 2016 WL 1047225, at *6 (D.N.J. Mar. 16, 2016) (finding direct remuneration is not required for a claim under the New Jersey State Wage and Hour Law). Thus, this Court must analyze beyond the contract formed between Defendant and the corporate entities formed by Plaintiffs in order to determine whether Plaintiffs were employees. The Court will not dismiss the NJWPL claim at this juncture.

### E.  Count II — Misrepresentation

#### 1.  *Choice of Law*

The Third Circuit has not clarified whether a choice of law clause in a contract extends to govern tort claims, such as misrepresentation, that arise from the contract. In *Sullivan v. Sovereign Bancorp., Inc.,* the Third Circuit found that the language, "governed by and construed in accordance with," was "broad and all-encompassing" and thereby reached claims sounding in tort. 33 F. App'x 640, 642 (3d Cir. 2002) (quoting *Sullivan v. Sovereign Bancorp., Inc.*, No. Civ.A. 99-5990, 2001 WL 34883989, at *6 (D.N.J. Jan. 19, 2001)); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 178 (3d Cir. 1992) (applying the contractually chosen law to fraud and material misrepresentation claims without explaining why). In a more recent decision, however, the Third Circuit characterized the "will be governed by, and construed and enforced in accordance with" clause to be narrowly drawn. *Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005). The court decided to "limit[] [its] application to the underlying agreement itself, and not to related fraud or non-contractual claim." *Id.* Courts in this district have varied in their approach. Some courts have found the phrase "governed by and construed under" to be expansive, in reliance on *Sullivan*. *See Barton v. RCI, LLC*, No. Civ. 10-3657, 2011 WL 3022238, at *3 (D.N.J. July 22, 2011); *Demmick v. Cellco P'ship*, No. Civ. 06-2163 (JLL), 2010

WL 3636216, at *3 (D.N.J. Sept. 8, 2010). Other courts have refrained from applying such provisions to tort claims. *See Palladin Partners v. Gaon*, No. 05-CV-3305 (WJM), 2006 WL 2460650, at *16 (D.N.J. Aug. 22, 2006); *Axxa Commerce, LLP v. Digital Realty Trust, L.P.*, No. Civ. A. 09-653 (NLH)(JS), 2009 WL 3261945, at *4 n.6 (D.N.J. Oct. 8, 2009).

The Court notes that the most recent Third Circuit decision held that the language in the OA does not suffice to encompass tort claims. Furthermore, where the contract is ambiguous, "the words are construed against the drafter." *Matter of Cmty. Med. Ctr.*, 623 F.2d 864, 866 (3d Cir. 1980). For these reasons, the Court will not apply the OA's choice of Pennsylvania law to the tort claim of misrepresentation.

New Jersey courts use the "most significant relationship" test to determine which state's law applies in a tort case. *Camp Jaycee*, 962 A.2d at 460. Plaintiffs bring claims for common law and equitable fraud, which Defendant argues are barred by the economic loss doctrine and pleading standard under Rule 12(b)(6). The Court addresses each argument in turn.

### 2. *Economic Loss Doctrine*

The economic loss doctrine in New Jersey acts to bar tort claims that are based on economic or pecuniary losses arising from a breach of contract, or that are associated with the contractual relationship. *See* Jeffrey J. Shampo, Economic-Loss Doctrine—Effect of Doctrine, 74 Am. Jur. 2d *Torts* § 24 (2013). Simply put, "claims for fraud in the performance of a contract, as opposed to fraud in the inducement of a contract, are not cognizable under New Jersey law." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562–64 (D.N.J. 2002). Thus, "fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." *Network Commodities, LLC v. Golondrinas Trading Co.*, No. Civ. 11-3119, 2013 WL 1352234, at *7 (D.N.J. Apr. 1, 2013) (citing *Gleason v. Norwest Mortg. Inc.*, 243 F.3d 130, 144 (3d Cir. 2001)). New Jersey courts have recognized a fraud claim to be

extrinsic either where it involves pre-contractual misrepresentations, *Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 563, or where the misrepresentations concern conduct outside a warranty or guarantee contained in the four corners of the contract, *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 607 (D.N.J. 2002).

Pennsylvania courts also recognize the economic loss doctrine. Its purpose is to "maintain[] the separate spheres of the law of contract and tort." *N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925 (Pa. 1989). Thus, it "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). The Third Circuit predicted the Pennsylvania Supreme Court would carve out an exception "for fraud claims, but only where the claims at issue arise independent[ly] of the underlying contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 676 (3d Cir. 2002) (citations omitted). A fraud claim arises independently of the contract if it concerns matters outside the quality or character of the goods sold. *Id.* at 679.

The Court finds no relevant difference between New Jersey's and Pennsylvania's approaches to the economic loss doctrine, and therefore will refer interchangeably to the two states' laws. The Complaint states that Defendant represented Plaintiffs would be partners, have an independent business that was fully marketable and transferrable, and own a proprietary interest that would grow. Defendant also purportedly stated that the routes have value. Some of these issues are addressed in the OA. The OA states, for example, that drivers are "responsible for exercising independent discretion and judgment to achieve the business objective and results" and "no officer, agent or employee of [Defendant] shall have the authority to direct Contractor as to the manner or means employed to achieve such objectives and results." Def.'s Br., Daley

Decl. Ex. A, § 1.15. Nowhere in the OA, however, does Defendant promise that Plaintiffs' businesses will be fully marketable and transferrable, that their proprietary interests in the businesses will grow, or the routes have value. Because Plaintiffs allege that Defendant made these representations to induce people to enter into the OAs and the representations concern matters outside the contract, the misrepresentation claim may proceed despite the economic loss doctrine.

### 3. Rule 12(b)(6)

Defendant also argues that the misrepresentation claim fails to state a plausible claim for relief. To prevail on a claim of common law fraud, a plaintiff must prove: (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely upon it; (4) reasonable reliance thereon by the other person, and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367–68 (N.J. 1997). To prevail on a claim of common law fraud under Pennsylvania law, a plaintiff must prove that there is: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." *Savitz v. Weinstein*, 149 A.2d 110, 113 (Pa. 1959).

The Court finds no difference between the laws of New Jersey and Pennsylvania regarding common law fraud. The pleadings allege that Defendant made misrepresentations regarding the nature of the businesses and routes Plaintiffs were to acquire. *See* Am. Compl. ¶¶ 80–87. They also assert that Defendant knew of their falsity, Defendant intended Plaintiffs to rely on the statements, reliance by Plaintiffs was reasonable, and Plaintiffs suffered damages. *See id.* These allegations are sufficient to meet the standard under Rule 12(b)(6), and the Court denies the Motion to Dismiss the claim of legal fraud.

In New Jersey, the elements of equitable fraud are similar to that of common law fraud except that scienter, or "knowledge of the falsity and an intention to obtain an undue advantage therefrom," is not required. *Jewish Ctr. of Sussex Cty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981). Unlike in New Jersey, "equitable fraud is no longer a cause of action in Pennsylvania." *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 771 (M.D. Pa. 2008). Therefore, the Court finds there is an actual conflict between the laws of New Jersey and Pennsylvania with respect to equitable fraud. In determining which state has the most significant relationship to this dispute, the Court must weigh the factors listed in § 148 of the Second Restatement, which concerns fraud and misrepresentation. Specifically, "when the plaintiff's action in reliance on the defendant's false representations takes place in the same state where the false representations were made and received, there is a presumption the law of that state applies." *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010). Here, the Amended Complaint does not definitively assert where the false representations took place, and the Court cannot conclude that New Jersey law governs so that equitable fraud is a recognized cause of action. As such, the Court dismisses the claim for equitable fraud without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED IN PART**. Count II (equitable fraud) is **DISMISSED WITHOUT PREJUDICE**. Count I, Count III, and Count V are **DISMISSED WITH PREJUDICE**.

Dated:   3/30/2017                                                      s/ Robert B. Kugler

                                                                               ROBERT B. KUGLER

                                                                               United State District Judge