**MARCHETTI LAW, P.C.**
**Anthony L. Marchetti, Jr., Esquire (AM4302)**
**900 N. Kings Hwy., Suite 306**
**Cherry Hill, NJ 08034**
**(856) 824-1001 fax: (856) 414-1806**
**amarchetti@marchettilawfirm.com**
**Attorneys for Plaintiffs**

**Harold l. Lichten, Esq.**
**Matthew W. Thomson, Esq.**
**Lichten & Liss-Riordan, P.C.**
**729 Boylston St #2000**
**Boston, MA 02114**
**(617) 994-5800 fax: (617) 994-5801**
**hlichten@llrlaw.com**
**mthomson@llrlaw.com**
**Attorneys for Plaintiffs**
**(Pro Hac Vice)**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MICHAEL CARROW, MICHAEL FENNELL AND NICHOLAS STEFANOU, individually and on behalf of all others similarly situated,** | **CIVIL ACTION NO. 1:16cv3026-RBK-JS** |
| **Plaintiffs,** | **CIVIL ACTION** |
| **v.** | **PLAITIFFS' SECOND AMENDED CLASS ACTION COMPLAINT, JURY DEMAND, AND DESIGNATION OF TRIAL COUNSEL** |
| **FEDEX GROUND PACKAGE SYSTEMS, INC.** | |
| **Defendant.** | **LEAVE TO FILE GRANTED ON JUNE 6, 2017** |

1

1.      Plaintiffs, individually and on behalf of all others similarly situated within the State of New Jersey, by way of Complaint against Defendant, allege as follows:

## INTRODUCTION

2.      This is a class action suit asserting claims for misrepresentation, violation of the New Jersey Wage Payment Law, and other claims relating to Defendant's misclassification of its Delivery Truck drivers.

3.      Plaintiffs are truck and van drivers engaged in package delivery for the Defendant, Federal Express Ground Package Systems, Inc. (herein "Defendant" or "FXG") in the State of New Jersey.

4.      FXG induced the named Plaintiffs and Class Members (collectively, "Plaintiffs") to obtain a route and to purchase a delivery truck, to insure and maintain that truck, to purchase a "business support package" and other items required by FXG, to sign an "Operating Agreement" ("Agreement" or "OA"), and to deliver packages for FXG, all the while representing to them that they are or would be "independent business owners" and "business partners" with FXG, and that they had or would have proprietary interests in the delivery routes for which they contracted.

5.      These representations made to Plaintiffs both before an operating agreement is tendered and in the OA itself were false. In reality, FXG micro-manages Plaintiffs' activities in such a manner that Plaintiffs are employees of FXG under any test of employment status.

6.      The misrepresentations set forth in this Complaint were made by FXG to the Plaintiffs in New Jersey.

7.    FXG has illegally shifted to Plaintiffs the burden of purchasing and maintaining trucks and equipment necessary to operate FXG's business, makes deductions from their pay, and forces drivers to pay for their own workers' compensation insurance.

8.    By this suit, the Plaintiffs seek compensatory and equitable relief/restitution as a result of FXG's illegal acts.

## <u>THE PARTIES</u>

9.    All Plaintiffs reside or work in the State of New Jersey and, during the past six years, were pick-up and delivery drivers at Defendant FXG's New Jersey terminals.

10.    Plaintiff Michael Carrow, a New Jersey resident/citizen, was a full-time contract driver for FXG at its Barrington, Camden County, New Jersey terminal from May 21, 2013 through November 30, 2015.  Mr. Carrow resides at 204 Stotesbury Ave., Newfield, New Jersey.  Mr. Carrow performed this work through a corporate entity he formed at FXG's request known as Newfield Transportation, Inc. ("Newfield".)

11.    Newfield came into existence because FXG required that Mr. Carrow create a corporation before he could begin work with FXG.

12.    Newfield had no ongoing business and ceased to exist as an ongoing entity following Mr. Carrow's separation from FXG.

13.    Plaintiff Michael Fennell, a New Jersey resident/citizen, was a full-time contract driver for FXG at its Barrington, Camden County, New Jersey terminal from September 2014 through October 16, 2015.  Mr. Fennell resides at 201 Morris Turnpike,

Branchville, New Jersey.  Mr. Fennell performed this work through a corporate entity he formed at FXG's request known as Fennell Logistics Corporation.

14.     Fennell Logistics Corporation came into existence because FXG required that Mr. Fennell create a corporation before he could begin work with FXG.

15.     Fennell Logistics Corporation had no ongoing business, and ceased to exist as an ongoing entity following Mr. Fennell's separation from FXG.

16.     Plaintiff Nicholas Stefanou, a New Jersey resident/citizen, was a full-time contract driver for FXG at its Barrington, Camden County, New Jersey terminal from September 8, 2018 through September 2, 2013.   Mr. Stefanou resides at 19 Forest Lane, Tabernacle, New Jersey.

17.     All Plaintiffs personally drove for FXG on a full time basis during the course of their relationship and were subject to the wage deductions and other losses as set forth herein.

18.     Defendant, FXG, is a Delaware corporation with its principal office in Moon Township, Allegheny County, PA. FXG operates several terminals in New Jersey that are the focus of this matter.

19.     At all times relevant to this action, Defendant has actively and continuously conducted business throughout the State of New Jersey, employing contractor-drivers such as Plaintiffs and the members of the proposed Class.

**FACTS COMMON TO ALL CAUSES OF ACTION**

20.     Defendant is a national company employing thousands of drivers to pick up and deliver packages for its customers throughout the United States.

21.     FXG operates two divisions in New Jersey: the Ground division routinely (but not exclusively) picks up and delivers packages to businesses; the Home Delivery division routinely, but not exclusively, delivers packages to residential locations.

22.     During the time relevant to this action, FXG retained what is believed to be more than 300 delivery and pick-up drivers in New Jersey.   FXG retains these drivers for the purpose of providing its customers with timely and reliable pick-up and delivery of packages in a logistics-heavy system that is similar to its only real competitor, United Parcel Service, or "UPS".

23.     FXG misrepresents to the public and to the Plaintiffs that contract drivers have the right to run their own business, to "be your own boss," to "have the ability to grow your own business;" to "have the chance to partner with the fastest growing transportation company [FXG] in the country."

24.     FXG maintains these misrepresentations in the Operating Agreement itself, as well as in pre and post-contracting communications with the drivers.   For example, the OA contains representations that suggest that the "contractor" will have sole control over how to run the business.  This is untrue.

25.     These misrepresentations were made to the individual Plaintiffs, within the State of New Jersey.

26.     In reality, whether the contracted routes are obtained through FXG or whether received from another "contractor," the entire relationship is a scam.  The only thing that a "contractor" purchases is the right to operate a route at FXG's pleasure and FXG's control for a one-year period.

27.     FXG retained and exercised the power to require that drivers work through LLCs or corporations, or else FXG would no longer permit the drivers to work.

28.     The Operating Agreement characterizes each driver as an "independent contractor" representing that the driver, directly or through an entity that FXG requires be set up, will have a proprietary and entrepreneurial interest in the route.

29.     The existence of an intervening single-purpose LLC or corporation does not control the employment relationship under New Jersey law.  Under the ABC test, the relative nature of the work test, and any other employment test, the individual drivers here are, in law and in fact, employees of FXG.

## DEFENDANT'S OPERATING AGREEMENT

30.     All Class Members were required to sign an Operating Agreement either directly or through a business entity formed for this purpose. Although not identical, the Agreements for the Ground division and the Home Delivery division are substantially the same in all respects relevant to this action.

31.     Both the Ground and Home Delivery Agreements generally characterize the drivers as independent contractors.

32.     Among other things, the Agreements provide that:

    a.  Plaintiffs must provide and maintain their own vehicle, paying for all costs and expenses incidental to its operation, including maintenance, gas, oil, repairs, tax, licenses and tolls. Moreover, Plaintiffs must adorn the vehicle with specific colors, logos and marks, identifying it as "part of the FXG system."

b. Plaintiffs must maintain liability insurance for operation of the vehicle without packages on board, naming FXG as an insured; Plaintiffs must prepare driver logs and inspection/maintenance reports, and such shipping documents "as FXG may from time to time designate;"

c. Plaintiffs must wear "an FXG-approved uniform," and keep his/her personal appearance consistent with standards "promulgated from time to time by FXG;"

d. FXG may change a driver's Primary Service Area, notwithstanding FXG's representation and promise that each driver has a proprietary interest in the customers he or she serves;

e. The OA may not be altered, changed or amended in any respect unless in writing and signed by both parties; and

f. FXG can terminate the Agreement, or can, for a perceived minor infraction, provide notice prior to termination.  FXG may non-renew at will.

33.     The Agreement is and at all times mentioned herein has been a contract of adhesion, drafted by FXG and its legal counsel, printed by FXG and distributed by FXG among drivers for mandatory signature. Plaintiffs have no opportunity to negotiate with FXG over the terms or conditions contained in the Agreement and FXG offers its drivers no meaningful choice of terms.

34.     The Agreement is, and at all material times has been, unlawful and unconscionable in form and effect.  The Third Circuit Court of Appeals, in the matter known as <u>Lucey v. FedEx Ground</u>, found the arbitration clause within the OA to be

unenforceable as substantively and procedurally unconscionable.  The Arbitration Clause, which covers only terminations, does not preclude or affect Plaintiffs' claims asserted in this Complaint.

35.     Despite the Operating Agreement and despite repeated representations by FXG, Plaintiffs are, under New Jersey law, employees of FedEx Ground, for the reasons set forth herein.

## DEFENDANT'S CONTROL OF PLAINTIFFS AND OTHER WRONGFUL ACTS

36.     FXG exercises extensive control over the means by which Plaintiffs perform their jobs.

37.     Such control is exerted in part through the Operating Agreements and provisions described above, which Plaintiffs were required to sign as a condition of employment.

38.     FXG's complete control over Plaintiffs is also exercised by other rules and regulations, written and unwritten, including but not limited to the following:

a.  FXG requires Plaintiffs, directly or through an entity they are required to form to obtain the job, to obtain a vehicle that meets FXG's specifications;

b.  FXG requires Plaintiffs, directly or indirectly, to pay for the purchase or lease of such vehicle, as well as for its maintenance and upkeep. Other vehicle-related costs required to be paid by Plaintiffs include fuel, oil, tires, repairs, taxes, insurance coverage, licenses, vehicle registration renewal fees, base plates and all highway, bridge and ferry tolls;

c.  FXG requires that Plaintiffs' vehicles meet certain unique specifications, on both the inside and outside. Plaintiffs are required to paint the vehicle with FXG's colors and put FXG's logos on the vehicle;

d.  Although Plaintiffs could technically use the vehicles for their own commercial and personal purposes, they are not permitted to do so without removing or covering all FXG identifying logos and marks. Additionally, the hours worked by the drivers generally exceed ten hours each day, leaving no time to use the vehicles for any other endeavor;

e.  Plaintiffs and other drivers have no control over the prices FXG charges to FXG's customers for pick-up and delivery service;

f.  Plaintiffs and other drivers do not have authority to reject deliveries or pick-ups. They are required to adhere to FXG's strict route schedules and their failure to make a pick up or delivery subjects them to discipline;

g.  FXG mandates that Plaintiffs wear an FXG-approved uniform, and follow such other guidelines as FXG might promulgate regarding their personal appearance;

h.  FXG instructs and controls drivers as to the appearance of their vehicles;

i.  FXG requires that Plaintiffs perform specified maintenance on their vehicles according to a schedule set by FXG;

j.  FXG requires that Plaintiffs and other drivers purchase or lease certain electronic communications equipment that complies with FXG's specifications. That equipment includes a "scanner" which contains global

positioning system ("GPS") capability, which allows FXG to monitor the location of the drivers at all times;

k.  FXG prescribes forms to be used during the work, and required that Plaintiffs use same;

l.  FXG requires Plaintiffs to provide services to FXG's customers on days and at times that are compatible with the customer's schedules and requirements as accepted by FXG;

m.  FXG assigns Plaintiffs to the area each driver is to service;

n.  FXG must first give approval for any helpers or substitutes, even though Plaintiffs are required to pay such substitutes' wages;

o.  FXG retains the power to terminate drivers, and/or their "business entities" and/or to approve or disapprove helpers;

p.  Plaintiffs may not carry non-authorized passengers or packages while on FXG business;

q.  Plaintiffs must submit to a drug screen administered at whatever time and place and in whatever manner dictated by FXG;

r.  FXG retains an exquisite level of control as to the methods and manner in which the work is performed and actively monitor's the drivers' compliance with these rules, such as how he or she drives and carries the packages;

s.  FXG employs Terminal Managers, Pickup and Delivery Managers, Safety Managers and other supervisory personnel to manage the drivers, process

the drivers' paperwork and to give each driver his or her delivery and pick-up schedules;

t.   FXG's assignment of packages and unilateral modification of pay structures effectively and efficiently controls Plaintiffs' earnings and ability to complete their work;

u.   FXG does not compensate drivers for time spent loading the trucks;

v.   FXG pays its drivers on a piece rate system, for the number of stops, deliveries and pick-ups made, together with certain fixed payments that ensure a minimum amount of income.

39.   Plaintiffs' delivery of packages is an active, integral and indispensable part of FXG's business enterprise. By driving vehicles with FXG's colors and logos, by reliably serving FXG's customers, by following FXG's controlled delivery routes and delivery and pick-up methods and in other ways, Plaintiffs and other delivery drivers have rendered, and continue to render, valuable personal services to Defendant FXG. The personal services described immediately above:

a.   confer substantial benefits on FXG;

b.   are an integral part of the process which enables FXG to offer its customers timely and reliable pick-up and delivery services;

c.   are performed at FXG's workplace, and at the locations of FXG's customers; and

d.   Do not involve the kind of expertise which requires entrustment to an independent professional, as opposed to an employee.

40.     Plaintiffs are not free from FXG control over the method and manner of how the work is performed.

41.     Plaintiffs work is not outside the ordinary course of FXG's business, and the work is performed at FXG's place of business, which includes pick up and deliveries at FXG's customer locations.

42.     Plaintiffs have no bona fide ongoing business entity that could or did survive the termination from FXG.

## CLASS ACTION ALLEGATIONS

43.     Plaintiffs bring this class action on behalf of themselves and other similarly situated drivers/contractors."

44.     Specifically, Plaintiffs bring this action as a class action on behalf of all persons who worked, on a full time basis, for Defendant FXG at its Ground Division and/or Home Delivery Division terminals in New Jersey, from March 16, 2010 to the time of trial (the "Class Period") as package delivery drivers and/or package pick-up drivers, and who were signatory to an Operating Agreement with Defendant FXG, directly or on through a business entity.  This proposed class definition excludes drivers who first signed an OA prior to October 2007, and are therefore members of the certified class in the matter known as Tofaute v. Fedex Ground Package Systems, Inc. to the extent that their damage claims are addressed to conclusion in that matter.

45.     Upon information and belief, the number of members of the Plaintiff Class exceeds 300 during the Class Period.

46.     The Plaintiff Class is so numerous that their individual joinder into a single action is impracticable. Although the exact number of Class Members cannot be

properly determined without further discovery, the number and identity of the Class Members can easily be ascertained from Defendants' records.

47.     By classifying its drivers as Independent Contractors, FXG enjoys a significant savings over its competitors, in that the pay is less, there are no benefits, and the drivers incur the cost of the truck, among other things.

48.     In order to maintain this competitive advantage, FXG requires a steady stream of individuals to serve as "contractors."  In order to do this, FXG engages and has, at all times relevant, engaged in a systematic marketing, advertising and recruiting campaign within the State of New Jersey, addressed at all times to the general public, to induce members of the public, such as Plaintiffs, to agree to obtain/purchase and service one of FXG's delivery routes.

49.     FXG advertises the supposed benefits of the relationship to the general public on its web site, Buildagroundbiz.com as well as in other places.

50.     Through the above-referenced campaign, FXG induces and has induced individuals, including Plaintiffs, to become drivers for FXG by representing that the drivers will be independent businesses in partnership with FXG, and that those businesses have value based upon a property interest. These representations are false and misleading, as FXG controls the routes and the drivers in such a manner that the routes have virtually no value and the drivers can not grow their business.

51.     FXG actively participates and profits from a scheme in which drivers spend tens of thousands of dollars to purchase a purported "business" that is nothing more than a job with piecework pay and a one-year term.

52.   In its Operating Agreements, as in the marketing materials discussed above, Defendant conceals the true nature of the relationship between FXG and its drivers: that of employer and employee.

53.   FXG also misrepresents that it has and exercises exquisite control over the drivers, through wording that suggests FXG will not control the work of the drivers, when that is exactly what it does.

54.   As a result of Defendant's misrepresentations, the Plaintiffs pay substantial sums of money for the routes, purchase or lease of vehicles that meet FXG specifications, and pay all costs of operating and maintaining those vehicles.

55.   FXG does not pay for workers' compensation coverage or unemployment insurance, illegally shifting those costs to the "contractor."

56.   The purpose and intent of the misclassification is to shift the burden of the costs of running a delivery business upon the workers, to avoid worker protections, including the Law Against Discrimination, Family Leave, Unemployment and Worker's Compensation, and to otherwise obtain an unfair advantage over its competitors.

57.   As described above, FXG systemically controls virtually all aspects of the relationship with Plaintiffs in such a manner and extent that the drivers are in fact employees of FXG.

58.   Under the ABC test applicable to the Wage Payment Law, the relative nature of the work test applicable to Workers Compensation and all other tests utilized in New Jersey, every driver who operates a FXG truck is, as a matter of New Jersey Law, a FXG employee.

59.     The Defendant's actions have inflicted the same types of harm upon each and every member of the Class.

60.     There are questions of law and fact that affect and are common to all Class Members. The central questions of law and fact involved in this action are of a common or general interest.

61.     Common legal and factual issues predominate over any questions affecting only individual members of the Class. Among the common questions of law and fact are the following:

    a.  Whether the contractor drivers are actually FXG employees;

    b.  Whether FXG unlawfully forced Plaintiffs to pay for business expenses that rightfully should have been paid for by their employer, FXG;

    c.  Whether FXG, by making unlawful deductions from the pay of Plaintiffs and/or their "business entities," violated the Wage Payment Law;

    d.  Whether the agreement permitting FXG to shift the burden of employment expenses, taxes, workers' compensation and other insurances is illegal and therefore void; and,

    e.  Whether Defendants' actions violate the implied covenant of good faith and fair dealing.

62.     The claims of the named representative Plaintiffs are typical of the claims of other members of the Plaintiff Class. The named Plaintiffs share the same interests as other members of the Class in this action because, like other Class Members, they have each suffered financial loss of thousands of dollars due to FXG's conduct.

63.     The Class Representatives have an incentive and are committed to vigorously prosecuting this action because they have actually suffered loses as a result of Defendant's actions.

64.     Plaintiffs have retained qualified counsel, experienced in class action practice, especially with this Defendant, to represent them in this matter.   The undersigned attorneys have actively litigated misclassification and other employment-based cases against FXG for the past 11 years.

65.     A class action is the only realistic method available for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class Members may be relatively small, in comparison with the expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct herein alleged.

66.     Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the court. The prosecution of separate actions would also create the risk of inconsistent rulings, which may be dispositive of the interest of Class Members who are not parties to the adjudication and/or may substantially impede Class Members' ability to protect their interests, and therefore would be contrary to the interest of justice and equity.

## COUNT I – MISREPRESENTATION

67.     Plaintiffs incorporate by reference the above Paragraphs of this Complaint as if fully set forth herein.

68.     Defendant's marketing and recruitment materials are offered and presented to members of the general public within the State of New Jersey.  FXG serves as market maker and as an integral part of any route transaction.

69.     Part of Plaintiffs' consideration for route acquisition was Plaintiffs' acquiring the delivery truck, purchase of the business support package and an agreement to provide services.  Further, FXG maintains and promotes the "sale" of routes between drivers in New Jersey through various internet vehicles which suggest the ability to "Build a Ground Business."

70.     When such transactions take place, FXG plays an integral role, and must approve the transfer and perform an investigation before the route can be purchased.

71.     This sale and transfer of routes benefits FXG, which uses these transfers to attempt to bolster its claim for contractor status, and ensures that FXG always has sufficient coverage for its routes.

72.     Defendant misled Plaintiffs to believe that they were going to be "partners" with FXG, that Plaintiffs would have an independent business, fully marketable and transferrable, that Plaintiffs were investing in a business and would have a proprietary interest that would grow, along with their income, that the routes had and would have value, and other representations designed to convince Plaintiffs to acquire a truck and service Defendant's customers under the terms of a burdensome and nonnegotiable contract.

73.     Defendant knowingly concealed, suppressed or omitted the fact that it intended to micro-manage Plaintiffs' work and income, that Defendant's management and control utterly destroyed or would destroy any perceived value of the routes that

17

FXG had no intention of leaving the means and methods of the work to Plaintiffs, that other jurisdictions have found that driver-contractors were actually employees, not business owners, that Defendant intended to treat Plaintiffs as employees, not entrepreneurs, and other material facts regarding the transaction.

74.    FXG failed to disclose to Plaintiffs the material fact that it intended to enact the ISP program, in which FXG unilaterally decided that as of September 1, 2015, it would no longer contract with drivers who did not have at least 4 or 5 routes.

75.    Defendant's knowing misrepresentations and omissions constitute legal and equitable fraud. Defendant's actions were willful, wanton and taken with reckless disregard to the harm they would cause Plaintiff.

76.    Defendant engaged in the misrepresentations and omissions described above as part of a systematic corporate policy.

77.    Defendant made the representations set forth herein within the State of New Jersey.

78.    Defendant knew, or should have known, or recklessly or negligently disregarded the truth of the representations, which were false when made, or which were promises of future action which Defendant did not intend to comply with at the time when they were made.

79.    Defendant made said representations with the intent that Plaintiffs would rely on same.

80.    Plaintiffs relied upon Defendant's misrepresentations, actions and intentional omissions in deciding to enter into the Operating agreement.

81.     Plaintiffs suffered harm as a result of Defendant's actions, including but not limited to, the loss of value of the routes, lost opportunity to sell the routes, lost profits, additional insurance costs, taxes and other expenses that should have been paid by FXG as an employer, and other losses.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant for compensatory damages, injunctive and declaratory relief, consequential damages, treble damages, rescission, plus costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.

## COUNT II – VIOLATION OF THE WAGE PAYMENT LAW

82.     Plaintiffs incorporate by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

83.     FXG is an employer within the meaning of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1(a).

84.     Each Class Member is an employee within the meaning of N.J.S.A. 34:11-4.1(b).

85.     FXG has paid to the Plaintiffs compensation for their services that are wages within the meaning of N.J.S.A. 34:11-4.1(c).

86.     Because of the closed nature of the so-called business entities, which FXG requires, a deduction from the entities is really a deduction of the Plaintiffs' wages.

87.     FXG has withheld and diverted from the Plaintiffs' wages amounts for workers' compensation, employment taxes, and business expenses such as vehicle insurance, vehicle maintenance, the "business support package" and other expenses.

88.     FXG's actions in mandating the payment of expenses, acts as a direct or indirect deduction from wages.

89.     FXG withheld and diverted the wages of the Plaintiffs as set forth above in violation of N.J.S.A. 34:11-4.4 et. seq.

90.     The Operating Agreement as described herein violates the Wage Payment Law, and is unlawful, null and void pursuant to N.J.S.A. 34:11-4.7.

91.     Pursuant to N.J.S.A. 34:11-4.7, Plaintiffs have a private right of action against FXG, their employer, for the full amount of wrongfully withheld or diverted wages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant for wrongfully withheld and diverted wage, compensatory damages, declaratory judgment holding the Operating Agreement to be null and void, plus costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant for compensatory damages, punitive damages, consequential damages, declaratory judgment and injunctive relief, plus costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.


Dated:  June 7, 2017                                **MARCHETTI LAW, P.C.**
Attorneys for Plaintiffs


<u>/s Anthony L Marcheti, Jr. AM4302</u>
ANTHONY L. MARCHETTI, JR.

**LICHTEN LISS-RIORDAN, P.C.**
Attorneys for Plaintiffs

HAROLD L. LICHTEN, ESQ.
MATTHEW THOMSON, ESQ.
(*pro hac vice*)

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury as to all issues so triable.

**MARCHETTI LAW, P.C.**
Attorneys for Plaintiffs


 /s Anthony L Marcheti, Jr. AM4302
ANTHONY L. MARCHETTI, JR.


**LICHTEN LISS-RIORDAN, P.C.**
Attorneys for Plaintiffs

HAROLD L. LICHTEN, ESQ.
MATTHEW THOMSON, ESQ.
(*pro hac vice*)


## DESIGNATION OF TRIAL COUNSEL


Anthony L. Marchetti, Jr. and Harold Lichten are hereby designated as trial attorney in the above captioned litigation on behalf of the Plaintiffs.


**MARCHETTI LAW, P.C.**
Attorneys for Plaintiffs


/sAnthony L Marcheti, Jr. AM4302
ANTHONY L. MARCHETTI, JR.

**LICHTEN LISS-RIORDAN, P.C.**
Attorneys for Plaintiffs

HAROLD L. LICHTEN, ESQ.
MATTHEW THOMSON, ESQ.
(PHV to be submitted)