IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Michael CARROW, Michael FENNELL, and Nicholas STEFANOU, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br> v. <br><br> FEDEX GROUND PACKAGE SYSTEMS, INC., <br><br> Defendant. | Civil No. 16-3026 (RBK/JS) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter is before the Court on the motion of Plaintiffs Michael Carrow, Michael Fennell, and Nicholas Stefanou, individually and on behalf of all others similarly situated (collectively, "Plaintiffs") for class certification under Federal Rule of Civil Procedure 23. As have others before them, Plaintiffs, a group of delivery drivers, allege that Defendant FedEx Ground Package Systems Inc. misclassified them as independent contractors when they were actually employees. This misclassification allegedly resulted in unlawful deductions from Plaintiffs' wages under the New Jersey Wage Payment Law ("NJWPL") N.J.S.A. 34:11–4.1, *et. seq.* For the reasons below, Plaintiffs' motion for class certification is **DENIED WITHOUT PREJUDICE**.

I. **BACKGROUND**

Defendant FedEx is a national company that picks up and delivers packages. (Doc. No. 41 ("Compl.") at ¶ 20.) Defendant relies on truck and van drivers in New Jersey like Plaintiffs to

1

provide these services for its customers. (*Id.* at ¶¶ 3, 20.) This case concerns the precise relationship between Defendant and these drivers.

According to Nathan Mollenhauer, a region Senior Manager in Defendants' Contractor Relations Department, Defendant entered into contracts known as Operating Agreements ("OA") (Doc. No. 67-3) with individuals and incorporated companies until 2010. (Mollenhauer Dec. (Doc. No. 82) at ¶¶ 2–7.) Mollenhauer states that before May 2010, Defendant considered individuals who entered OAs with Defendant in their individual capacities to be independent contractors. (*Id.* at ¶ 6.) After 2010, however, Defendant only contracted with incorporated businesses. (*Id.* at ¶ 7.) By June 2011, about a year into the proposed Class Period, every New Jersey business with which Defendant contracted for pickup and delivery services was an incorporated business. (*Id.* at ¶ 8.) These incorporated businesses are known as Contracted Service Providers ("CSPs"), whose "Officers" ordinarily signed the OA on the CSP's behalf. (*Id.* at ¶¶ 7, 14.) A CSP could hire individuals to drive for it, its Officers could drive, or both. (*Id.* at ¶¶ 9, 11, 33.) According to Mollenhauer, under the OA, all of a CSPs' drivers are required to be employees of those CSPs and not Defendant, and Defendant did not classify any of the drivers as independent contractors. (*Id.* at ¶¶ 12, 25.) Plaintiffs appear to dispute this contention, stating that Defendant "uniformly classified every Ground and Home Delivery driver as an independent contractor." (Pls.' Br. at 5.)

Plaintiffs drove for Defendant under OAs. Plaintiffs Carrow and Fennell each formed corporate entities to create a CSP and signed OAs as the CSPs' Officers. (*See* Carrow Dep. (Doc. No. 74-2) at 79:20–81:1; *see also* Fennell Dep. (Doc. No. 74-5) at 55:24–56:2; *accord* Doc. No. 67-8.) Plaintiff Stefanou, by contrast, initially purchased a CSP from another individual around 2008. (Stefanou Dep. (Doc. No. 74-15) at 54:17–56:3.) In 2010, Plaintiff

Stefanou, like Carrow and Fennell, created a corporation and transferred the OA to it. (*Id.* at 70:7–13.)

Plaintiffs contend that Defendant "micro-manages" their activities through the terms of the OA in such a way that Plaintiffs are really Defendant's employees. (Compl. at ¶ 5.) One such term of the OA concerns payment in regards to Plaintiffs claim that Defendant wrongfully withheld from Plaintiffs' wages amounts for "workers' compensation, employment taxes, and business expenses" like "vehicle insurance, vehicle maintenance, the 'business support package' and other expenses." (Compl. at ¶¶ 86–87.) Under the OA, Defendant has not paid any individual for pickup and delivery services since transitioning to the all-incorporated model, which completed in June 2011; since that time, Defendant has made all payments to the incorporated CSP entities. (Mollenhauer Dec. at ¶ 13.) In doing so, Defendant issued weekly settlement statements and settlement checks to the corporate entity CSPs. (OA at § 4.2; *see also* Mollenhauer Dec. at ¶ 13.) Defendant agreed that the settlement statements would include an itemized listing of all deductions from the CSPs' settlements. (OA at § 4.2.) Defendant concedes, for example, that although it never deducted employment taxes from payments to CSPs, Defendant did—with the authorization of each CSP—deduct amounts from CSPs' settlements for certain insurance premiums and equipment like scanners that CSPs elected to use under the OA. (*See* Def.'s Br. at 34.)

Under the OA, however, Defendant does not appear to have authority to make deductions from the pay of any individual who worked for a CSP. The OA states that Defendant "shall have no responsibility to make deductions for, or to pay wages, benefits, health, welfare and pension costs, withholding for income taxes, unemployment insurance premiums, payroll taxes, disability insurance premiums, social security taxes, or any other similar charges with respect to" the CSPs

3

or a CSPs employees. (OA at § 4.2.) Rather, according to Mollenhauer, each CSP decides "when, how, and how much to pay their drivers, helpers, and other employees." (Mollenhauer Dec. at ¶ 35.) When asked about the deductions reflected in their paychecks or W2 forms, Plaintiffs Carrow, Fennell, and Stefanaou all testified that the CSPs that wrote their checks did not deduct amounts from their wages beyond normal employment taxes. (Carrow Dep. at 212:25–213:5; Fennell Dep. at 265:5–266:21; Stefanou Dep. at 178:5–23.) Nevertheless, Plaintiffs declare that "all contractors had the same deductions taken from their pay." (Stefanou Dec. (Doc. No. 67-4) at ¶ 8; Carrow Dec. (Doc. No. 67-5) at ¶ 9; Fennell Dec. (Doc. No. 67-6) at ¶ 9.)

Based on the OA's alleged micro-managing and other alleged representations surrounding the Plaintiffs' contracting, Plaintiffs brought this suit, contending that Defendant misclassified them as independent contractors when they were actually employees under the NJWPL. In a previous Opinion, this Court dismissed several claims but declined to dismiss Plaintiffs' NJWPL claim. (Doc. Nos. 33, 34.) The Court explained that the NJWPL did not "require an entity to render payment directly to a person to qualify as an employer," and that the Court needed to "analyze beyond the contract formed between Defendant and the corporate entities formed by Plaintiffs in order to determine whether Plaintiffs were employees," a determination that was not proper at the motion to dismiss stage. *See Carrow v. Fedex Ground Package Sys., Inc.*, No. 16-cv-3026, 2017 WL 1217119, at *6 (D.N.J. Mar. 30, 2017). Plaintiffs now seek to certify a class to pursue this NJWPL claim for allegedly wrongful wage deductions.

II. **STANDARD OF REVIEW**

To certify a class under Rule 23, a plaintiff must satisfy Rule 23(a)'s four requirements and one of Rule 23(b)'s three subsections. *See In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010). Under Rule 23(a), the plaintiff must show:

(1) numerosity (a "class so large that joinder of all members is impracticable");
(2) commonality ("questions of law or fact common to the class");
(3) typicality (named parties' claims and defenses "are typical . . . of the class"); and
(4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Id.* at 341 n.14 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) (alterations omitted). Under Rule 23(b)(3), which Plaintiffs invoke here, certification is proper if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition to these explicit requirements, the class must also be clearly defined and objectively ascertainable. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

A plaintiff must show that these requirements are met by a preponderance of the evidence, and a court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008). Thus, a court should certify a class only if the court finds, after a "rigorous analysis," that Rule 23's requirements are met. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

### III. DISCUSSION

The Court finds that Plaintiffs have not met their burden to obtain class certification. Plaintiffs allege that Defendant violated the NJWPL by deducting from their wages amounts for workers' compensation, employment taxes, and business expenses. (Compl. at ¶¶ 82–91.) Plaintiffs claim that when Defendant deducted amounts from payments to CSPs, those deductions really operated as a deduction on Plaintiffs' wages because of the closed-nature of

CSPs. (*Id.* at ¶ 86.) Based on these allegedly improper wage deductions, Plaintiffs' seek to certify a class of:

> All persons who: (1) entered into a FedEx Ground or Home Delivery Operating Agreement, either personally or through a corporate entity; (2) drove a vehicle on a full-time basis to provide package pick-up and delivery services pursuant to the Operating Agreement in any week from April 13, 2010 to June 1, 2017; (3) were dispatched out of a terminal in the state of New Jersey; and (4) who first signed an Operating Agreement after October 15, 2007, or excluded themselves from the certified class in *Tofaute v. FedEx Ground Package System, Inc.*, No. 05-595 (N.D. Ind.).

(Pls.' Br. at 4.) Defendant disputes Plaintiffs' ability to satisfy each portion of Rule 23, including the predominance requirement. Under that requirement, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311 (citation omitted). A plaintiff must show that the elements are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.* at 311–12.

To establish a claim under the NJWPL, which governs the time and mode of payment of wages due to employees, Plaintiffs must show that Defendant deducted monies from their earned wages and that such deductions were not permissible, which Plaintiffs contend is true if they are deemed employees as opposed to independent contractors. *See Rodriguez v. Canada Dry Bottling Co., L.P.*, No. 14-cv-6897, 2015 WL 5770502, at *3 (D.N.J. Sept. 30, 2015) (citing *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 596–97 (E.D.N.Y. 2007)). Thus, an issue of predominance is "whether each [class] member was actually a victim of deductions." *Bachrach v. Chase Inv. Servs. Corp.*, No. 06-cv-2785, 2007 WL 3244186, at *3 (D.N.J. Nov. 1, 2007) (denying class certification because no evidence existed that defendant "deducted money from any members' paychecks but Plaintiffs'").

Defendant also focuses on the proposed class's ascertainability, claiming that the class is unascertainable for many reasons, including because Plaintiff has offered no way to determine whether all putative class members experienced the same allegedly improper wage deductions. (Def.'s Br. at 26–35.) A class is ascertainable if it is (1) "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).

Defendant correctly notes that a plaintiff's failure to propose a reliable and administratively feasible mechanism to determine whether putative class members experienced the same wage deductions has recently contributed to the denial of class certification. *See Hargrove v. Sleepy's, LLC*, No. 10-cv-01138, 2018 WL 1092457, at *8 (D.N.J. Feb. 28, 2018) ("*Sleepy's III*").[1] In *Sleepy's*, Sleepy's, a bedding company, entered into delivery contracts with delivery carriers, which were classified as independent contractors under the agreement, and the delivery companies' personnel were classified as "not employees" of Sleepy's. *See Hargrove v. Sleepy's LLC*, No. 10-cv-1138, 2012 WL 1067729, at *1 (D.N.J. Mar. 29, 2012) (*Sleepy's* I). The plaintiffs, who drove for Sleepy's, alleged that when Sleepy's made contract payments to the contracted carriers, Sleepy's wrongfully deducted amounts that were then passed down to drivers in the form of improper wage deductions. *Sleepy's III*, 2018 WL 1092457, at *3; *see also Sleepy's*, No. 10-cv-01138, Doc. Nos. 151 at 25; 204 at 3. Like here, the delivery drivers sued, claiming that Sleepy's misclassified them as independent contractors as opposed to employees and violated the NJWPL by wrongfully withholding money from their wages. *Sleepy's III*, 2018 WL 1092457, at *1.

---

[1] The Court notes that Plaintiffs' counsel here also litigated *Sleepy's III*.

In denying class certification without prejudice, the court held that it could not "resolve all disputes regarding the definition" of the class, including which putative class members experienced the alleged wage deductions. 2018 WL 1092457, at *7–8. Although the plaintiffs offered data from which they attempted to show who among putative class members experienced the allegedly wrongful deductions, the court reasoned that there was no way to tell from the data "whether any carrier reduced any drivers pay by deducting Sleepy's listed deductions." *Id.* at *8. In other words, the methodology for determining which members of the putative class experienced the allegedly improper wage deduction did not actually show whether carriers "reacted to those deductions by taking money out of the wages" paid to drivers. *Id.* at *3.

Such uncertainties as to whether putative class members experienced the same wage deduction also impacts Rule 23's numerosity requirement. In *Sleepy's III*, the court noted that with "gaps" in the record, including whether class members experienced the same wage deduction, "assessing the size" of the class would be "tenuous or speculative." *Id.* at *8. The same was true in *Snyder v. Dietz & Watson, Inc.*, where the court denied class certification for a proposed class of delivery drivers because the "threshold issue of numerosity" was not clear: although the plaintiff suggested that the class would consist of at least 49 drivers, the court found that the plaintiff did not meet his burden to obtain class certification because it was "unclear whether all of those drivers were subject to the deduction policy or had deductions taken out of their paychecks." 2013 WL 395875, at *4 (D.N.J. Jan. 30, 2013).

Whether the issue here is properly characterized as one of ascertainability (as Defendant argues based on *Sleepy's*), numerosity (as in *Snyder*), predominance (as in *Bachrach*), or a combination, the Court finds that Plaintiffs have not met their burden to obtain class certification. Plaintiffs offer no analysis, guidance, or methodology to determine whether putative class

members experienced the same allegedly improper wage deductions. Plaintiffs' briefs offer only conclusory assertions—without the benefit of record citation—that Plaintiffs and putative class members were "subject to the same types of deductions." (Pls.' Br. at 24; *see also* Pls.' Rep. Br. at 16.)[2] Plaintiffs' declarations offer similarly threadbare assertions that "all contractors had the same deductions taken from their pay." These conclusory assertions do not actually permit the Court to engage in the rigorous analysis required to determine if facts or evidence exist to discern whether all putative class members experienced the same wage deductions in a way that meets the various aspects of Rule 23. While such evidence may exist and ultimately suffice, Plaintiffs' "take-our-word-for-it" approach does not. *See Marcus*, 687 F.3d at 594 ("We caution, however, against approving a method that would amount to no more than ascertaining by potential class members' say so."); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 318 ("A party's assurance to the court that it intends or plans to meet [Rule 23's] requirements is insufficient.").

In addition, Plaintiffs' briefs fail to suggest that common or objective records exist from which it can be determined whether a CSP reacted to Defendant's settlement payment deductions by passing them down to putative class members in the form of wage deductions. In fact, Defendant suggests that such records may not exist. Defendant contends that under the OA, it has no power to make a deduction from the wages of any individual who worked for a CSP. (*See* OA at § 4.2.) Because it was each CSP, ostensibly through its Officer, that determined when, how, and how much to pay in wages to an individual who worked for a CSP, and "[n]one of the corporate entities that employed the Plaintiffs, for instance, took any deductions from wages

---

[2] Although in one spot, Plaintiffs assert that Defendant determines "the amounts to be deducted from the drivers' pay each week" and cites weekly settlement statements to the corporations of Carrow and Fennell and a provision of the OA (Pls.' Br. at 9), it is not clear, absent any elaboration, how Plaintiffs believe this supports their claim, particularly when the provision cited in the OA states that Defendant "shall have no responsibility to make deductions for, or to pay wages . . . with respect to Contractor or Contractor's employees." (OA at § 4.2.)

9

beyond the employment taxes," Defendant contends that "the only way to know" if a putative class member experienced the wage deductions that Plaintiffs seek to recover is "to ask each one." (Def.'s Br. at 35; *see also* Carrow Dep. at 212:25–213:5; Fennell Dep. at 265:19–266:21; Stefanou Dep. at 178:5–23.)

Plaintiffs do not clearly respond to this argument. Although the Court takes no position on whether this is actually "the only way to know" who experienced the wage deductions at issue, the Court notes that it is Plaintiffs' burden to properly support their claim. Yet they have not. Plaintiffs' motion for class certification is denied, without prejudice. *Id.*[3]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is **DENIED**, without prejudice.

Dated: 12/19/2018               /s/ Robert B. Kugler
                                ROBERT B. KUGLER
                                United States District Judge

---

[3] The Court's previous Opinion declining to dismiss Plaintiffs' NJWPL claim does not impact its holding here. Although the Court noted that the NJWPL did not require an entity to render payment directly to a person to qualify as an employer and that it needed to analyze beyond the contract formed between Defendant and Plaintiffs' corporate entities to determine if Plaintiffs were employees, the issue here is entirely separate. In other words, whether Plaintiffs are ultimately deemed employees of Defendant under the NJWPL is distinct from whether Plaintiffs have met their burden to show that putative class members experienced the same wage deductions here, or if common evidence exists to prove that claim.