**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| Michael CARROW, Michael FENNELL, and Nicholas STEFANOU, *individually and on behalf of all others similarly situated*, | : : : : : | Civil No. 16-3026 (RBK/JS) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| FEDEX GROUND PACKAGE SYSTEMS, INC., | : : : | |
| Defendant. | : : | |

**KUGLER**, United States District Judge:

This matter is before the Court upon the Renewed Motion (Doc. No. 98) of Plaintiffs Michael Carrow, Michael Fennell, and Nicholas Stefanou, individually and on behalf of all others similarly situated (collectively, "Plaintiffs") for Class Certification under Federal Rule of Civil Procedure 23. Plaintiffs are delivery drivers who contend that they were employees of Defendant FedEx Ground Package Systems, Inc. ("FedEx"); FedEx contends that they were only employees of separate corporations that contracted with FedEx. If Plaintiffs are correct, Defendant may have taken unlawful deductions from Plaintiffs' wages under the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1, *et seq*; if Defendant is correct, Plaintiffs have no viable claim. Because the case boils down to this central issue, the Court finds that class treatment is appropriate and therefore **GRANTS** Plaintiffs' Motion.

## I.  BACKGROUND

Defendant FedEx is a national company that picks up and delivers packages. (Doc. No. 41 ("Compl.") at ¶ 20). Defendant relies on truck and van drivers in New Jersey like Plaintiffs to

provide these services for its customers. (*Id.* at ¶¶ 3, 20). This case concerns the precise relationship between Defendant and these drivers.[1]

According to Nathan Mollenhauer, a region Senior Manager in Defendants' Contractor Relations Department, Defendant entered into contracts known as Operating Agreements ("OAs") (Doc. No. 99-3) with individuals and incorporated companies until 2010. (Mollenhauer Dec. (Doc. No. 82) at ¶¶ 2–7). Mollenhauer states that before May 2010, Defendant considered individuals who entered OAs with Defendant in their individual capacities to be independent contractors. (*Id.* at ¶ 6). After 2010, however, Defendant only contracted with incorporated businesses, and not individuals. (*Id.* at ¶ 7). By June 2011 every New Jersey business with which Defendant contracted for pickup and delivery services was an incorporated business. (*Id.* at ¶ 8). These incorporated businesses are known as Contracted Service Providers ("CSPs"), whose "Officers" ordinarily signed the OA on the CSP's behalf. (*Id.* at ¶¶ 7, 14). A CSP could hire individuals to drive for it, its Officers could drive, or both. (*Id.* at ¶¶ 9, 11, 33). According to Mollenhauer, under the OA, all of a CSP's drivers are required to be employees of those CSPs and not Defendant, and Defendant did not classify any of the drivers as independent contractors. (*Id.* at ¶¶ 12).

Plaintiffs drove for Defendant under OAs. Plaintiffs Carrow and Fennell each formed corporate entities to create a CSP and signed OAs as the CSPs' Officers. (*See* Carrow Dep. (Doc. No. 74-2) at 79:20–81:1; *see also* Fennell Dep. (Doc. No. 74-5) at 55:24–56:2; *accord* Doc. No. 67-8). Plaintiff Stefanou, by contrast, initially purchased a CSP from another individual around 2008. (Stefanou Dep. (Doc. No. 74-15) at 54:17–56:3). In 2010, Plaintiff Stefanou, like Carrow and Fennell, created a corporation and transferred the OA to it. (*Id.* at 70:7–13).

---

[1] The Court has already set forth much of the factual background in its prior opinions in this case; it does so again to highlight the facts underlying the present decision.

Plaintiffs contend that Defendant controls the drivers such that they are its employees rather than independent contractors. (Compl. at ¶ 5). According to Plaintiffs, such control is manifest in the terms of the OA, including its provisions requiring the drivers to operate vehicles displaying the FedEx logo (OA at § 1.5), wear approved FedEx uniforms (OA at § 1.12), and meet Defendant's "Standard of Service" (OA at § 1.10), and to allow Defendant's personnel to ride with them in order to gather data on the drivers' routes (*id*. at § 6.2). Further, Defendant determined the size and composition of the routes, (*id*.) established the formulas by which drivers were paid, negotiated all prices paid by customers (*id*. at § 4.1) and required the drivers to cover the FedEx logo on their equipment if they wished to transport goods for other parties (*id*. at §§ 1.4–1.5).

Plaintiffs also assert that Defendant's control extended beyond the terms of the OAs. All drivers began their days at Defendant's terminals where they would have to wait for their vehicle to be loaded before they could go out and make deliveries. (Mollenhauer Dep. (Doc. No. 99-9) at 69:2–13). Drivers were required to carry scanners while making deliveries, recording all of their pick-ups and deliveries, allowing Defendant to track the status of every package. (Norton Dep. (Doc. No. 99-2) at 100:15–101:19, 104:23–105:11; Mollenahuer Dep. at 39:18-40:3). Through these scanners, drivers received instructions on how to release packages to customers. (Norton Dep. (Doc. No. 99-2) at 74:7-18). Defendant would also send personnel on "van audits" to ensure that drivers' vehicles were properly locked and secured. (Sonsini Dep. (Doc. No. 99-1) at 45:22–46:11; Mollenahuer Dep. At 77:5–78:9).

Plaintiffs claim that Defendant wrongfully withheld from Plaintiffs' wages amounts for "workers' compensation, employment taxes, and business expenses" like "vehicle insurance, vehicle maintenance, the 'business support package' and other expenses." (Compl. at ¶¶ 86–87). Under the OA, Defendant has not directly paid any individual for pickup and delivery services

since transitioning to the all-incorporated model, which was completed in June 2011; since that time, Defendant has made all payments to the incorporated CSP entities. (Mollenhauer Dec. at ¶ 13). In doing so, Defendant issued weekly settlement statements and settlement payments to the corporate entity CSPs. (OA at § 4.2; *see also* Mollenhauer Dec. at ¶ 13). Defendant agreed that the settlement statements would include an itemized listing of all deductions from the CSPs' settlements. (OA at § 4.2). Defendant did take deductions from settlement payments to CSPs during the class period, including for worker's compensation insurance, worker's accident insurance, a variety of "business support" expenses, the "business support package," physical damage insurance, and liability insurance. (Dec. Rebecca Shuford (Doc. No. 99-31) at Attach. A).

Based on the OA's alleged micro-managing and other alleged representations surrounding the Plaintiffs' contracting, Plaintiffs brought this suit, contending that Defendant misclassified them as independent contractors when they were actually employees under the NJWPL. In a previous Opinion, this Court dismissed several claims but declined to dismiss Plaintiffs' NJWPL claim. (Doc. Nos. 33, 34). Subsequently, Plaintiffs brought a motion for class certification, which the Court denied without prejudice. (Doc. Nos. 91, 92). The Court concluded that Plaintiffs had not met their burden on ascertainability, numerosity, or predominance because they did not provide any "analysis, guidance, or methodology to determine whether putative class members experienced the same allegedly improper wage deductions." *Carrow v. Fedex Ground Package Sys., Inc.*, No. 16-3026, 2018 WL 6630512, at *4 (D.N.J. Dec. 19, 2018).

## II.  STANDARD OF REVIEW

Defendant contends that Plaintiffs' present Motion is actually an untimely Motion for Reconsideration. (Doc. No. 103 ("Def. Brief") at 9). As such the Court must first decide whether to apply the demanding motion for reconsideration standard or only the usual requirements of Federal Rule of Civil Procedure 23.

Courts may alter or amend class certification orders at any time "before final judgment." Fed. R. Civ. Pro. 23(c)(1)(C); *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 199 n. 12 (3d Cir. 2008). As such, district courts have discretion over whether to consider a successive motion for class certification, and accordingly how to construe that motion. *In re Tropicana Orange Juice Marketing & Sales Practices Litig.*, 2018 WL 6819331, at *2 (D.N.J. Dec. 28, 2018) (citing *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007). But courts typically will not exercise their discretion to hear such motions unless the plaintiffs point to something new, such as "developments in the factual background, a modified proposed class definition, new class representatives, or any other changes which may cure defects earlier found by the court." *Gutierrez v. Johnson & Johnson*, 269 F.R.D. 430, 434 (D.N.J. July 30, 2010) (citing *Zenith Labs., Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976)). Such a curative change may include relying on "different evidence or legal theories." *In re Tropicana*, 2018 WL 6819331, at *2.

Defendant contends that Plaintiffs' Motion seeks to overturn the legal conclusions of the Court's prior Opinion, and therefore must be viewed as a motion for reconsideration. Defendant seems to think that the prior Opinion was a disguised ruling on the merits, holding that Plaintiffs must show that any deductions from the settlement payments from the CSPs were passed on by the CSPs in the wages they paid to Plaintiffs. (Def. Brief at 9). Defendant is mistaken; the Court's prior Opinion holds no such thing. Instead, the Court dismissed Plaintiffs' motion because their legal theory was unclear and their showing was insufficient for class certification. Indeed, the Court took pains to make clear that the issue it decided was "entirely separate" from the merits question of whether Plaintiffs were employees of Defendant. *Carrow*, 2018 WL 6630512, at *5 n.3.

Consequently, the prior Opinion left the door open for Plaintiffs to pursue a different or more clearly defined theory of NJWPL liability. On this motion, Plaintiffs walk through that door. Their theory is not that Defendant caused any improper deductions from Plaintiffs' wages earned as CSP employees. Rather, they contend that the CSPs are a sham, and the settlement payments themselves were Plaintiffs' rightful wages. (Doc. No. 99 ("Pl. Brief") at 11). Under this theory, Plaintiffs need only establish that they were Defendant's employees and that Defendant took deductions from settlement payments to their CSP; whether the CSP then passed along the deduction in the wages it paid out is simply irrelevant. While Defendant clearly disagrees with this theory, it has no say in choosing which theory Plaintiffs pursue. *See Palmer v. Univ. of Medicine & Dentistry of N.J.*, 605 F. Supp. 2d 624, 631 (D.N.J. 2009) (noting that "the plaintiff is the master of the complaint" (internal quotation omitted)).

Because the concerns highlighted in the Court's prior Opinion do not apply to Plaintiffs' present theory of liability, the Court believes the best course of action is to treat the present Motion like any other for class certification, and to apply the usual Rule 23 standard. To certify a class under Rule 23, a plaintiff must satisfy Rule 23(a)'s four requirements and one of Rule 23(b)'s three subsections. *See In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010). Under Rule 23(a), the plaintiff must show:

> (1) numerosity (a "class so large that joinder of all members is impracticable");
> (2) commonality ("questions of law or fact common to the class");
> (3) typicality (named parties' claims and defenses "are typical . . . of the class"); and
> (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Id.* at 341 n.14 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) (alterations omitted). Under Rule 23(b)(3), which Plaintiffs invokes here, certification is proper if "the court finds that the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition to these explicit requirements, the class must also be clearly defined and objectively ascertainable. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

A plaintiff must show that these requirements are met by a preponderance of the evidence, and a court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008). Thus, a court should certify a class only if the court finds, after a "rigorous analysis," that Rule 23's requirements are met. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Further, courts must be careful to properly analyze each of Rule 23's requirements separately, rather than conflating two or more requirements together. *See Byrd v. Aaron's*, 784 F.3d 154, 172 (3d Cir. 2015) (emphasizing that "[p]recise analysis of *relevant* Rule 23 requirements will always be necessary").

## III.    DISCUSSION

Plaintiffs seek to certify the following class on their NJWPL claim:

> All persons who: 1) entered into a FedEx Ground or Home Delivery Operating Agreement, either personally or through a corporate entity; 2) drove a vehicle on a full-time basis to provide package pick-up and delivery services pursuant to the Operating Agreement in any week from April 13, 2010 to June 1, 2017 ("the Class Period"); 3) were dispatched out of a terminal in the state of New Jersey; and 4) who first signed an Operating Agreement after October 15, 2007, or excluded themselves from the certified class in *Tofaute v. FedEx Ground Package System, Inc.*, No. 05-595 (N.D. Ind).

(Pl. Brief at 13). Under the NJWPL, "[n]o employer may withhold or divert any portion of an employee's wages" unless another New Jersey or United States law applies or the deduction fits into a statutory list of exceptions. N.J.S.A. 34:11-4.4. As both parties seem to recognize, the key

issue in this case is whether the potential class members were Defendant's employees.[2] The NJWPL defines employee broadly as "any person suffered or permitted to work by an employer, except that independent contractors and subcontractors shall not be considered employees." N.J.S.A. 34:11-4.1.

When distinguishing between an employee and an independent contractor for NJWPL claims, courts must use the "ABC" test. *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 465 (N.J. 2015) ("*Sleepy's I*"). Under the ABC test, the employer bears the burden of proving that the plaintiff is an independent contractor by showing that:

(A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

N.J.S.A. 43:21-19(i)(6); *Sleepy's I*, 106 A.3d at 305.

If the potential class members were Defendant's employees, the next issue will be whether the settlement payments from Defendant to the CSPs were class members' wages. The NJWPL defines wages as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J.S.A. 34:11-4.1(c).

---

[2] If the class members were Defendant's employees, "a trier of fact will decide (1) whether Defendants withheld wages from Plaintiff; (2) the purpose for withholding such wages; and (3) whether the purpose for withholding wages is one of the itemized reasons set forth in the NJWPL." *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 445 (D.N.J. Dec. 22, 2011).

Many of Defendant's objections to class certification appear to be based on the premise that it is legally impossible for the class members to have been Defendant's employees because they formally signed the OAs on behalf of their CSPs, rather than on behalf of themselves. Because this premise is systemic to Defendant's position, the Court must resolve it in order to properly decide whether certification is appropriate. *See Marcus*, 687 F.3d at 591 (explaining that "the court cannot be bashful. It must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action").

This premise is incorrect. In an earlier Opinion (Doc. No. 33), the Court noted that the NJWPL "does not require an entity to render payment directly to a person to qualify as an employer." *Carrow v. FedEx Ground Package Sys., Inc.*, No. 16-3026, 2017 WL 1217119, at *6 (D.N.J. Mar. 30, 2017). To be clear, under New Jersey's ABC test employers cannot avoid the legal responsibilities of the employee relationship by forcing their employees to incorporate. *See Hargrove v. Sleepy's, LLC*, No. 10-1138, 2016 U.S. Dist. LEXIS 156697 (D.N.J. Oct. 25, 2016) (granting partial summary judgment and finding that plaintiff delivery drivers who entered into contracts with defendant on behalf of businesses they owned or controlled were defendant's employees under New Jersey ABC test) ("*Sleepy's II*"); *see also DaSilva v. Border Transfer of MA, Inc.*, 377 F. Supp. 3d 74, 86 (D. Mass. 2019) (holding that under Massachusetts's ABC test "the mere fact of incorporation does not defeat a [wage] claim"); *Martins v. 3PD Inc.*, 2013 WL 1320454, at *17 (D. Mass. Mar. 28, 2013) (same) ("*Martins I*"); *Padovano v. FedEx Ground Package Sys., Inc.*, No. 16-17, 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016) (explaining that "[i]f any business could avoid [wage and hour law] by simply classifying their workers as independent contractors and compensating them through corporations rather than paying them directly, [wage and hour law] would be rendered useless").

Fundamentally, the NJWPL is not on the books to enforce private contractual arrangements, but to void those arrangements that defy the public policy it embodies. N.J.S.A. 34:11-4.7 ("Every agreement made in violation of this section shall be deemed to be null and void."). If, as Plaintiffs claim, the CSPs are a sham, then the legal fiction of incorporation upon which they rest must give way. *See Hargrove I*, 106 A.3d at 457 (noting that "[a]s a remedial statute, the [NJ]WPL should be liberally construed"). Alternatively, Defendant may yet succeed in proving that Plaintiffs were not its employees, whether due to aspects of the CSP arrangement or otherwise. But the existence of the CSPs neither bars Plaintiffs' claims on the merits, nor does it prevent class certification. With the relevant legal background now established, the Court turns to the substantive requirements of Rule 23.

### A. Ascertainability

A class is ascertainable if it is (1) "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). Further, "a plaintiff [need not] be able to identify all class members at class certification—instead, a plaintiff need only show that class members *can* be identified." *Id*. (internal quotation omitted). Importantly, ascertainability is a distinct inquiry from predominance, as "the ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Id*. (internal quotation omitted).

There is no dispute that individuals who entered into an OA with Defendant, were dispatched out of a New Jersey terminal, and were not included in the *Tofaute* class are readily ascertainable. Rather, the parties' dispute centers on the second prong of the proposed class

definition, limiting the class to individuals who drove "full-time." Plaintiffs contend that "full-time" means individuals who drove at least thirty hours per week, and that those individuals can be readily discovered by analyzing Defendant's records. (Pl. Brief at 33).

While making deliveries for FedEx, drivers use an electronic scanner to record their progress throughout the day. The data includes the time that the driver first activates the scanner each day, indicating that they are on duty, and the time that the driver ceases scanner activity for the day, indicating that they are off duty. (Stuckwisch Dec. (Doc. No. 76) at 4). Assuming that the time between the initial scan and the final scan represents the period of time in which the driver was working, Plaintiffs' expert, David M. Breshears, was able to identify 215 putative class members who worked thirty or more hours per week in at least one week during the class period. (Breshears Report (Doc. No. 99-24) at ¶¶ 10–12).[3]

Defendant's principal objection to Breshears's approach is that the drivers may not have been working during the entire period between the initial scan and the final scan—rather, they may have been taking breaks or running personal errands. (Def. Brief at 26). Although the scanner data is extensive, it obviously cannot account for what each driver was doing during every minute of every day throughout the class period. But the concern that the drivers could take a break or run personal errands during their "on duty" time really strikes at the merits of Plaintiffs' claims, as it collapses onto the issue of whether Defendant exercised actual control over the drivers' conduct. That is, Defendant wants to engage in an abstract debate about what it means to "work," which is

_____

[3] Rebecca Shuford, a paralegal for Plaintiffs' counsel, was subsequently able to identify 157 potential class members who had deductions taken from the settlement payments to their CSP during the class period. (Shuford Dec. at Attach. A). At this time, the Court does not believe that restricting the class to these 157 individuals would be appropriate because Plaintiffs are also pursuing a theory that Defendant exacted indirect deductions from the class members' pay by shifting certain expenses to the CSPs via the OA. (Pl. Brief at 10 n.3).

not the purpose of the ascertainability requirement. Given that Plaintiffs can objectively show the duration of the drivers' "on duty" time, this issue does not raise ascertainability concerns.

Defendant attempts to rely on *Hargrove v. Sleepy's LLC*, No. 10-1138, 2018 WL 1092457 (D.N.J. Feb. 28, 2018) ("*Sleepy's III*"), and its sequel, *Hargrove v. Sleepy's LLC*, No. 10-1138, slip op., (D.N.J. May 10, 2019) (Doc. No. 239) ("*Sleepy's IV*") for the proposition that the existence of gaps in the records of delivery driver's daily activities is fatal to ascertaining a class. In *Sleepy's III*, the plaintiffs attempted to certify a class of "full-time" delivery drivers, relying in part on time logs of when trucks entered and exited the defendant's facility in order to calculate the length of the driver's workday. *Sleepy's III*, 2018 WL 1092457 at *7. However, the logs were incomplete, such that the entrance or exit time for some trucks was not recorded on certain days. *Id*. Further, plaintiffs were only able to produce gate logs for two years out of their nine-year class period and were unable to indicate whether such gaps existed in the records for the other years. *Id*. Given this systemic uncertainty about when the drivers' workdays started and ended, the court concluded that the plaintiffs had not satisfied the ascertainability requirement. *Id*. at *7–8.

In *Sleepy's IV*, the plaintiffs attempted to certify a modified version of their proposed class but retained the "full-time" requirement. However, the Court found that plaintiffs had not addressed the concerns it set forth in *Sleepy's III*. *Sleepy's IV*, slip op., at *9–10. Further, the Court indicated that the records gathered by the plaintiffs did not provide sufficient information about the driver's activities during the day; the plaintiffs could point to records showing when drivers arrived and departed the defendant's facility, and separate records of the stops made by each truck during the day, but could not conclusively establish which driver was operating the truck during the day. *Id*. at *10.

The concerns articulated by the court in *Sleepy's III* and *Sleepy's IV* are not present here. The scanner data covers the entirety of the class period, and although there are certain instances where a scanner registered an on duty scan but no off duty scan, these incidents occurred in less than 0.05% of the daily records, and as Defendant's expert's report indicates, alternative methods may be used to estimate driving time for these records. (Stuckwisch Dec. at ¶ 11). Consequently, the "gaps" Defendant points to here are not gaps in the records of when the drivers began and ended their workdays, as in *Sleepy's III*, but "gaps" in the record of what the drivers did during their workdays.

*Sleepy's IV* did raise concerns about what the drivers were doing during their workdays, but only because the plaintiffs could not show who was driving each truck throughout the day. By contrast, because the scanner data here is linked to specific drivers, it does indicate what individual drivers were doing throughout the day. (Norton Dep. at 98:17–100:9; Mollenhauer Dep. at 39:18–40:3). As such, the issues raised by the court in *Sleepy's III* and *Sleepy's IV* are not present in this case.

Defendant is also concerned that because the class definition only requires drivers to have been working "full-time" in a given week, class members will float in and out of the class over time. (*Id*. at 26). Again Defendant is collapsing the merits onto the ascertainability inquiry; it may be that the class members' employment status depends on the number of hours they worked each week, but whether the class members are later found to be employees or independent contractors does not present any bar to identifying who they are at this time. As such, the methodology proposed by Breshears demonstrates that the class can be defined by objective criteria and there is an administratively feasible mechanism for determining which class members meet the class

definition. In order to remove any ambiguity, the shall amend the class definition to specify that "full-time basis" means thirty or more hours.[4]

### B. Numerosity

Numerosity is presumed if "the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). The proposed class consists of 215 individuals. (Breshears Rep. at ¶ 12). As such, numerosity is satisfied.

### C. Commonality

When, as here, an action is brought under Rule 23(b)(3), Rule 23(a)(2)'s commonality requirement "is subsumed by the predominance requirement" of Rule 23(b)(3). *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (quoting *Amchem Prods.*, 521 U.S. at 627). Thus, the predominance discussion below also accounts for the commonality requirement.

### D. Typicality

Rule 23(a)(3) requires the plaintiff to show that the claims or defenses of the representative parties are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). When comparing the claims of the representative plaintiffs and the class as a whole, courts must address

> three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009). In this case the second and third concerns pose little issue for Plaintiffs. Defendant has not identified any defenses that

---

[4] The Court notes that courts have on several occasions certified classes of FedEx drivers that were defined, in part, on whether the drivers were working "full-time." *See, e.g.*, *Scovil v. FedEx Ground Package Sys., Inc.*, 886 F. Supp. 2d 45, 47 (D. Me. 2012); *In re FedEx Ground Package Sys., Inc.*, 283 F.R.D. 427, 460 (N.D. Ind. 2008).

apply to Plaintiffs that do not apply to the class as a whole, nor any reason why the interests and incentives of the representative plaintiffs would differ markedly from the rest of the class, and the Court on its own can see no issue on either front.

Rather, Defendant's objection lies with the first concern. Although the representative Plaintiffs undisputedly articulate the same legal theory as the rest of the class—that Defendant misclassified its drivers as independent contractors and illegally took deductions from their wages—Defendant highlights several factual differences between the representative Plaintiffs and the class as a whole. (Doc. No. 72 at 55–56). These include: (1) that the representative Plaintiffs never expanded beyond a single route; (2) that they rarely or never employed others to drive their route; and (3) that they drove more hours than other class members. (*Id*).

While these factual differences do exist, "factual differences between the proposed representative and other members of the class do not render the representative atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members." *In re Schering Plough Corp.*, 589 F.3d at 598 (internal quotation omitted). The claims of the representative plaintiffs concern the same OAs and the same types of deductions as the remaining class members, and Defendant has not highlighted any ways in which its conduct towards the representative Plaintiffs differed from its conduct towards the rest of the class. The typicality requirement in satisfied.

### E. Adequacy

The fourth requirement of Rule 23(a) requires a plaintiff to show that as class representative, she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "adequacy" requirement has two components: (1) whether counsel is qualified, experienced, and able to conduct the litigation; and (2) whether any conflicts of interest exist between the named parties and the class they seek to represent. *See In re Prudential Ins. Co. Am.*

*Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). Although Defendant does not raise an adequacy argument, the Court must still satisfy itself that the requirement is met.

The Court finds that the representative Plaintiffs and their counsel will fairly and adequately represent the class. As discussed above, Plaintiffs Carrow, Stephanou, and Fennell are pursuing claims on the same legal theory as the other members of the class, and all seek damages directly from Defendant. Similarly, Plaintiffs' counsel has substantial experience litigating wage and hour class actions, particularly on behalf of delivery drivers. *See, e.g.*, *Badia v. HomeDeliveryLink, Inc.*, 2015 WL 566077, at *8 (D.N.J. Sept. 25, 2015) (approving class settlement and noting that "Class Counsel, notably Messrs. Lichten and Marchetti, are accomplished attorneys with considerable experience in wage and hour cases"). With that, all the Rule 23(a) requirements are satisfied, and the Court turns to the more demanding requirements of Rule 23(b).

### F. Predominance

In order for a Rule 23(b)(3) class to be certified, "[i]ssues common to the class must predominate over individual issues" such that the class is "sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311 (internal quotation omitted). Although courts may not decide cases on the merits at the class certification stage, the merits are very much at issue, as courts "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate." *Id.* (internal quotation omitted). Ultimately, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (internal quotation omitted).

On Plaintiffs' theory, there are two common issues tying the class members together: (1) if the class members were Defendant's employees under the ABC test; and (2) if the settlement payments from Defendant to the CSPs were Plaintiffs' wages under N.J.S.A. 34:11-4.1(c). The second is a highly abstract question, and there does not appear to be any dispute that it may be resolved on common evidence. Rather, Defendant's primary objection is that proof of the essential elements of the ABC test requires individual treatment. (Def. Brief at 27–30). Defendant further contends that the complexity of assigning particular deductions to particular individuals overwhelms the misclassification issue.[5]

### a. The ABC Test

In cases concerning the alleged misclassification of delivery drivers in other jurisdictions using ABC tests, federal courts have repeatedly found common evidence sufficient to satisfy all three prongs of the test. *See, e.g.*, *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060–61 (7th Cir. 2016) (finding prongs A and B of Illinois ABC test could be satisfied through common evidence); *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 400–404 (D. Mass. 2017) (finding prongs A and C of Massachusetts test could be satisfied through common evidence); *Martins I*, 2013 WL 1320454, at *5–9 (same).[6] There is no real dispute that Prong B turns on common

---

[5] Defendant also asserts that Plaintiffs must establish that Defendant was their employer, and that this inquiry will require individualized treatment because the majority of Plaintiffs signed their OAs on behalf of their CSPs, not themselves. (Def. Brief at 23–24). Notably, the court in *Sleepy's II* did not engage in any such analysis before concluding that drivers who signed contracts on behalf of their own corporations were employees of the defendant in that case. 2016 U.S. Dist. LEXIS 156697, at *3; *see also Veras v. Interglobo N. Am., Inc.*, No. A-3313-16T1, 2018 WL 5316459, at * 5 (N.J. Super. Ct. App. Div. Oct. 29, 2018) (casting doubt on the necessity of such an inquiry where plaintiff signed agreement with defendant on behalf of his own company). *But see Echavarria v. Williams Sonoma, Inc.*, No. 15-6441, 2016 WL 1047225, at *3–4 (D.N.J. Mar. 16, 2016) (finding that delivery drivers who never signed a contract of any sort with defendant would need to meet this threshold requirement in order to bring misclassification claim under New Jersey law). In this case, every potential class member did sign an OA with Defendant and did subsequently make deliveries on Defendant's behalf. As such, even if New Jersey law does require a threshold inquiry into the identity of the employer before applying the ABC test, that inquiry here can be decided on common evidence.
[6] Illinois's misclassification test is identical to New Jersey's, 820 ILCS 115/2; prong B of the Massachusetts test is more restrictive, because the employer must show that "the service is performed outside the usual course of the business of the employer," M.G.L.A. 149 § 148B(a)(2), while Illinois and New Jersey permit employers to alternatively prove that the work was performed outside of its places of business.

evidence, because the questions it raises—about the nature of the service provided, the usual course of business of the employer, and whether the service was performed at the employer's place of business—are fairly abstract, and do not vary by individual. The same is true in this case. However, some courts have concluded that prongs A and C always require individual inquiry, defeating class certification. *See, e.g.*, *Schwann v. FedEx Ground Package Sys., Inc.*, No. 11-11094, 2013 WL 1292432, at *2–3 (D. Mass. April 1, 2013) (denying class certification on Massachusetts misclassification claim).

To satisfy Prong A of the New Jersey test, the employer must show both that it did not have a contractual right of control and that it did not exercise actual control. *Hargrove I*, 106 A.3d at 459. The first part of this inquiry will center on interpreting the OA, the substantive provisions of which were the same for all class members. (Mollenhauer Dep. at 31:2–21). As such, assessing Defendant's right of control is clearly provable through common evidence. *See Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 321–22 (3d Cir. 2016) (finding right of control inquiry under Pennsylvania law resolvable through evidence of common franchise agreement, policies manual, and training manual).

The second part of the inquiry, looking at control in fact, may in certain cases require an individualized inquiry. However, Plaintiffs have demonstrated here that "evidence of common practices can establish common answers as to control as a matter of fact." *DaSilva*, 296 F. Supp. 3d at 401 (finding sufficient evidence of common policies requiring class members to attend morning meetings, be subject to a customer rating system, wear uniforms, and make deliveries in specified order and timeframes). Here, the drivers were required to wear uniforms approved by Defendant, display the FedEx logo on their vehicles, use the scanners to record their pick-ups and deliveries, and allow FedEx personnel to ride along with them to review their performance.

Defendant fails to offer any indication that the implementation of these policies and practices varies substantially from class member to class member. As such, Prong A is resolvable through common evidence.

Finally, Defendant contends that prong C requires individual analysis of whether each class member was operating an independent business. (Def. Brief at 29). The thrust of prong C is determining whether the "individual has a profession that will plainly persist despite the termination of the challenged relationship." *Hargrove I*, 106 A.3d at 459. When defining the scope of this inquiry, the New Jersey Supreme Court relied upon *Trauma Nurses Inc. v. Board of Review*, 576 A.2d 285 (N.J. Super. Ct. App. Div. 1990). *Id*. When concluding that the defendant's nurses were engaged in an independent profession, the *Trauma Nurses* court did not look to any individualized evidence, but rather relied upon evidence common to all "nurses," namely that all nurses must meet certain educational and licensure requirements, and that most nurses worked at institutions not operated by the defendant. 576 A.2d at 292. As such, New Jersey law clearly does not require an individualized inquiry under prong C in every case. Rather, the inquiry can be satisfied by evidence common to either the members of the class or all such similarly situated persons.

Plaintiffs' argument on Prong C is that certain FedEx policies prevented the class members from operating the CSPs as truly independent businesses, specifically the policies that allowed FedEx to negotiate all prices paid by customers, to determine the size and composition of the driver's route, and to restrict the ability of the drivers to use their vehicles to make deliveries for parties other than FedEx. (Pl. Brief at 16–17). Defendant protests that it wishes to introduce evidence about how each CSP was run in order to show that it was an independent business, but the personal choices of the service-providing individual are not the main concern of the test. *See*

*Feinsot v. Bd. of Review*, 2007 WL 561326, at *3 (N.J. Super. Ct. App. Div. Feb. 26, 2007) (finding that employer's requirements rather than claimant's personal choices were determinative of whether individual had an independently established business). However, Defendant may be able to make use of such evidence on the theory that it shows that its policies provided sufficient flexibility to class members as to make the CSPs truly independent.[7] Either way, the analysis of prong C will rise and fall on common evidence. Consequently, no aspect of the ABC test requires individualized assessments that would preclude satisfaction of the predominance requirement.

### b. The Deductions Issue

Defendants effectively argue that the damages calculation in this case will be so complex as to make class certification inappropriate. They have a point. Recall Plaintiffs' theory that the CSPs are a sham, meaning that the settlement payments were truly the class members' wages. If this theory holds, and the class members were the CSPs' sole employees and sole owners, then the damages calculation would be easy—damages would be the full amount of any improper deductions Defendant took from the settlement payments. But Defendant argues that damages would be more complicated because the CSPs had multiple employees and multiple owners. As such, the class members may not be the only parties entitled to any improper deduction, and the settlement payments may reflect more than the class members' personal work. Further, because many class members only drove "full-time" in certain weeks during the class period, they may only be entitled to deductions taken in those weeks, rather than for the entirety of the class period.[8] (Def. Brief at 16–23).

---

[7] The Court is not ruling on the admissibility of any such evidence, much less on the merits of this theory.
[8] This would be true if the Court were to conclude that the class members must be driving "full-time" in order to be employees under New Jersey law, such that they may have been employees during certain weeks in the class period and independent contractors in others.

At this stage it would be inappropriate for the Court to decide the scope of any damages that Plaintiffs may be entitled to. But at the same time, the Court cannot ignore the likelihood that at least some of these issues will be relevant. *See Martins v. 3PD Inc.*, No. 11-11313, 2014 1271761, at *13 (Mar. 27, 2014) (finding that class of delivery drivers was "only permitted to recover deductions attributable to services they personally performed" on Massachusetts misclassification claim) ("*Martins II*"). If they bear out, a laborious deduction-by-deduction inquiry may be necessary for each class member in order to determine damages.

Although the act of calculating damages may be supremely complex, in this circuit "obstacles to calculating damages may not preclude class certification" if the class can show "the fact of damages [] on a common basis." *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 306 (3d Cir. 2016) (internal quotation omitted); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (noting that predominance can still be found "even though other important matters will have to be tried separately, such as damages"). Plaintiffs have presented evidence that Defendant directly took allegedly improper deductions from the settlement payments for 157 class members (Shuford Dec. at Attach. A). Further, they contend that Defendant indirectly took deductions from all class members by improperly placing the burden for certain expenses on them. If this legal theory holds up, then all class members have indeed suffered damages on a common basis.

As such, Plaintiffs have met their burden on damages for purposes of the predominance inquiry. If Defendant is found liable and complex damages issues present themselves, the Court has a number of tools it may avail itself of, including: "appointing a magistrate judge or special master to preside over individual damages proceedings; decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages;

creating subclasses; or, altering and amending the class." *Martins II*, 2014 WL 1271761, at *12

(citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001).

### G. Superiority

As to superiority, Rule 23(b)(3) provides a four-factor list that a court may use to assess

whether class adjudication is superior to other forms of adjudication:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

All four factors support class adjudication here. The Court is not aware of any claims filed

by potential class members under the NJWPL other than those filed by the named Plaintiffs in this

case. As there is no parallel litigation to be concerned about, "no class member's interests in

independently prosecuting his or her claim would be frustrated by certifying the class at issue

here." *Stair ex rel. Smith v. Thomas & Cook*, 254 F.R.D. 191, 201 (D.N.J. 2008). Further, as

discussed through this Opinion, the main issues in this case turns on analysis of policies common

to the class. Consequently, class treatment is both practicable and desirable. *See Scovil*, 886 F.

Supp. 2d at 56 (finding superiority satisfied for class of drivers bringing misclassification claims

against FedEx because "there will be one central question to resolve: were the drivers independent

contractors or employees?").

## IV.    CONCLUSION

For the forgoing reasons, Plaintiffs' Renewed Motion for Class Certification is

**GRANTED** and the following class is certified under Rule 23(b)(3):

1. All persons who: 1) entered into a FedEx Ground or Home Delivery Operating Agreement, either personally or through a corporate entity; 2) drove a vehicle on a full-time basis to provide package pick-up and delivery

services pursuant to the Operating Agreement in any week from April 13, 2010 to June 1, 2017 ("the Class Period"); 3) were dispatched out of a terminal in the state of New Jersey; and 4) who first signed an Operating Agreement after October 15, 2007, or excluded themselves from the certified class in *Tofaute v. FedEx Ground Package System, Inc.*, No. 05-595 (N.D. Ind).

2. "Full-time basis" means thirty or more hours.


An Order follows.

Dated:  December 26, 2019                     /s/ Robert B. Kugler
                                              ROBERT B. KUGLER
                                              United States District Judge