**ANTHONY L. MARCHETTI, JR. (AM4302)**
**MARCHETTI LAW, P.C.**
**317 Delsea Drive**
**Sewell, NJ 08080**
**(856) 414-1800**
**amarchetti@marchettilawfirm.com**
**Attorney for Plaintiffs**

**Harold Lichten, Esq.**
**Matthew W. Thomson, Esq.**
**Lichten & Liss-Riordan, P.C.**
**729 Boylston St., #2000**
**Boston, MA 02116**
**(617)994-5800 fax: (617)994-5801**
**hlichten@llrlaw.com**
**mthomson@llrlaw.com**
**Attorneys for Plaintiffs**
**(Pro Hac Vice)**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL CARROW, MICHAEL FENNEL, AND NICHOLAS STEFANOU,** individually and on behalf of all others similarly situated,<br><br>        **Plaintiffs,**<br><br>              **v.**<br><br>**FEDEX GROUND PACKAGE SYSTEMS, INC.,**<br><br>        **Defendant.** | **CIVIL ACTION**<br><br><br>**C.A. No.: 1:16cv3026-RBK-JS** |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

I.  BACKGROUND ............................................................................................................. 2

    A.  Factual Background ............................................................................................ 2

    B.  Relevant Provisions of N.J. Labor Law ........................................................... 2

    C.  Procedural History ............................................................................................. 3

    D.  Potential Damages ............................................................................................. 5

II.  THE TERMS OF THE PROPOSED SETTLEMENT ................................................. 6

    A.  Monetary Terms ................................................................................................ 6

    B.  Procedures for Calculating Settlement Shares and Distributing Settlement
        Funds ................................................................................................................. 7

    C.  Release .............................................................................................................. 7

III.  PRELIMINARY APPROVAL IS WARRANTED ..................................................... 8

    A.  Standard Governing Preliminary Approval ...................................................... 8

    B.  The Court will likely be able to approve the settlement at final approval ........ 8

        a.  Rule 23(e)(2)(A): The class representatives and class counsel have
            adequately represented the class. .................................................... 9

        b.  Rule 23(e)(2)(B):  The proposal was negotiated at arm's length. ................. 11

        c.  Rule 23(e)(2)(C)(i):  The relief provided for the class is adequate,
            taking into account the costs, risks, and delay of trial and appeal. ................. 12

        d.  Rule 23(e)(2)(C)(ii):  The relief provided for the class is adequate,
            taking into account the effectiveness of any the proposed method of
            distributing relief to the class including the method of processing
            class-member claims if required. ..................................................... 13

        e.  Rule  23(e)(2)(C)(iii):   The  terms  of  any  proposed  award  of
            attorney's fees, including the timing of payment. ............................................ 13

        f.  Rule 23(e)(2)(C)(iv):  Any agreement required to be identified under
            Rule 23(e)(3). ................................................................................. 14

        g.  Rule  23(e)(2)(D):   The  proposal  treats  class  members  equitably
            relative to each other. ..................................................................... 14

IV.   CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

Badia v. HomeDeliveryLink, Inc.,
  2015 WL 5666077 (D.N.J. Sept. 25, 2015) ........................................................................ 15

Carlson v. FedEx Ground Package Sys., Inc.,
  C.A. No. 2:05-cv-00085-SHE (D. Mont.) .......................................................................... 10

Dominguez v. Galaxy Recycling Inc.,
  2017 WL 2495406 (D.N.J. June 9, 2017) ..................................................................... 13, 14

Galt v. Eagleville Hospital,
  310 F. Supp. 3d 483 (E.D. Pa. April 19, 2018) .................................................................. 13

Hargrove v. Sleepy's LLC,
  974 F.3d 467 (3d Cir. 2020) ................................................................................................ 11

Hargrove v. Sleepy's, LLC,
  220 N.J. 289, 106 A.3d 449 (2015) ..................................................................................... 3

In re Austrian & German Bank Holocaust Litig.,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................................. 9

In re Cendant Corp. PRIDES Litigation,
  243 F.3d 722 (3d Cir. 2001) ............................................................................................... 14

In re Cendant Corp. Securities Litigation,
  109 F. Supp. 2d 235 (D.N.J. 2000) .................................................................................... 12

In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,
  55 F.3d 768 (3d Cir. 1995) ..................................................................................... 8, 12, 13, 14

In re Janney Montgomery Scott LLC Financial Consultant Litigation,
  2009 WL 2137224 (E.D. Pa. July 16, 2009) ...................................................................... 15

In re Nat. Football League Players' Concussion Injury Litigation,
  307 F.R.D. 351 (E.D. Pa. 2015) ......................................................................................... 11

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,
  148 F.3d 283 (3d Cir. 1998) ............................................................................................... 10

In re Warfarin Sodium Antitrust Litig.,
  391 F.3d 516 (3d Cir. 2004) ............................................................................................... 9

Scovil v. FedEx Ground Package System, Inc.,
    C.A. 1:10-cv-00515-DBH (D. Me.) ................................................................ 10

Silveira v. FedEx Ground Package Sys., Inc.,
    C.A. No. 3:11-cv-01159-JBA (D. Conn.) ........................................................ 10

Tofaute v. FedEx Ground Package System, Inc.,
    No. 05-595 (N.D. Ind.) ............................................................ 7, 10, 12

**Statutes**

Fed. R. Civ. P. 23, "Rule 23" ............................................................... 8, 9, 14

New Jersey Wage Payment Law ("NJWPL"),
    N.J.S.A. 34:11-4.1, *et seq* ............................................................ 1, 2, 3

**Other Authorities**

Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) ............................................. passim

This action was brought by three individuals who performed delivery services for FedEx Ground Package System, Inc. (hereinafter "FedEx" or "FXG") alleging that they were misclassified as independent contractors when they were in fact employees for purposes of New Jersey's wage laws.  Plaintiffs alleged that as a result of that misclassification, FedEx Ground illegally deducted amounts from their wages in violation of New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1, *et seq.*  Plaintiffs brought these claims on behalf of a proposed class of all similarly situated drivers pursuant to Rule 23 of the Federal Rules of Civil Procedure. FedEx Ground denies these allegations and has asserted a number of affirmative defenses.

After several years of hard-fought litigation, the Parties have reached a proposed class action settlement in this action that would resolve the state law wage deductions claims of all individuals who performed delivery services for FedEx Ground in New Jersey pursuant to an Operating Agreement during the relevant statutory period, a group that consists of approximately 192 individuals.  The proposed class action settlement creates a non-reversionary fund of $2,470,000.  The proposed Agreement is attached hereto as Exhibit 1.  The settlement also proposes an award of attorney's fees of 32.25% of the settlement fund and reasonable incentive payments to the three named Plaintiffs.  After accounting for attorney's fees and incentive payments, and costs of settlement administration, Plaintiffs estimate that more than $1.6 million will be paid to the participating members of the settlement class; even at full participation, the settlement would pay on average approximately $8,400 per class member.  The settlement is non-reversionary, and under no circumstances will any of the funds revert to Defendant.

Plaintiffs, and their counsel who have litigated these types of cases against FXG and others across the country for decades, believe that this is an excellent result given risks and delays of continued litigation, and they believe that the settlement is fair, reasonable, and adequate.

Plaintiffs ask that the Court 1) grant preliminary approval of the proposed class action settlement so that Plaintiffs may initiate notice (in the form attached hereto as Exhibit 2) to members of the proposed class and 2) set a date for a final fairness hearing on or after March 25, 2021 (or 120 days after preliminary approval is granted), at which the Parties will report the results of the notice process and seek final approval of the settlement.   While this Motion is unopposed, the legal discussion is Plaintiffs' position.  FedEx Ground does not necessarily agree with all of Plaintiffs' legal characterizations, but for purposes of this Motion only does not dispute them.

## I.      BACKGROUND

### A.      Factual Background

The factual background of this case has been summarized by this Court in its Order and Opinion for class certification on December 26, 2019. See Dkt. 120 and 121. Plaintiffs and class members performed deliveries for Defendants' FedEx Ground pursuant to Operating Agreements, some of which were entered into individually by Plaintiffs and class members, and most of which were executed on behalf of corporate entities.  The OA's classified Plaintiffs and class members as independent contractors, as opposed to employees.   In this Action the Plaintiffs and class members alleged that they were misclassified, that they were FedEx's employees, and they sought to recover unpaid wages under New Jersey law.  At all times, FedEx has denied these allegations.

### B.      Relevant Provisions of N.J. Labor Law

This Court has summarized the relevant provisions of the NJWPL in its Order and Opinion on class certification on December 26, 2019. Id.  Under the NJWPL, "[n]o employer may withhold or divert any portion of an employee's wages" unless another New Jersey or United States law applies or the deduction fits into a statutory list of exceptions. N.J.S.A. 34:11-4.4.  The central issue in this case is whether Plaintiffs and class members were "employees" entitled to the protections of the NJWPL.  When distinguishing between an employee and an independent

contractor for NJWPL claims, courts use the "ABC" test set forth by the New Jersey Supreme Court in Hargrove v. Sleepy's, LLC, 220 N.J. 289, 106 A.3d 449, 465 (2015).  Under the ABC test, the employer bears the burden of proving that the plaintiff is an independent contractor by showing that:

> (A)  Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
>
> (B)  Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (C)  Such individual is customarily engaged in an independently established trade, occupation, profession or business.

N.J.S.A. 43:21-19(i)(6); Sleepy's, 106 A.3d at 458.  As summarized in the Court's December 26, 2019 Opinion, Plaintiffs' alleged that they were employees under the ABC test, and sought to establish that the amounts FedEx paid to them (or their corporate entities) were "wages", and sought to collect any deductions therefrom.  FedEx argued that these amounts were not wages as defined by the statute and asserted various other defenses.

### C.    Procedural History

The initial Class Action Complaint in this Action was filed on March 16, 2016 in the Superior Court of New Jersey, and the action was then removed to this Court on May 25, 2016.  The First Amended Class Action Complaint was filed June 15, 2016, Plaintiffs initially brought several claims for relief against FXG, including: (1) Violation of the New Jersey Consumer Fraud Act; (2) Misrepresentation; (3) Rescission of Operating Agreement; (4) Violation of the New Jersey Wage Payment Law; and (5) Breach of Duty of Good Faith and Fair Dealing.  FedEx Ground denied all of the allegations.

On July 29, 2016, FedEx Ground filed a motion to dismiss the First Amended Class Action Complaint, and by Order dated March 20, 2017, the Court dismissed Plaintiffs' claims for

Violation of the New Jersey Consumer Fraud Act, Rescission of the Operating Agreement, and Breach of Duty of Good Faith and Fair Dealing.  In the operative Second Amended Class Action Complaint, filed June 7, 2017, Plaintiffs asserted two claims for relief against FXG: (1) Misrepresentation; and (2) Violation of the New Jersey Wage Payment Law.  FedEx Ground again denied these allegations and asserted various affirmative defenses.

Following the ruling on the Motion to Dismiss, the Parties exchanged substantial written discovery.  All three Plaintiffs sat for full-day depositions.  Defendants' deposed Plaintiffs' expert witness who had analyzed data provided by FedEx related to the putative class members. Plaintiffs also deposed five current or former managers who worked for FedEx, including corporate designees.  There was significant litigation over the changes FXG made over time to its business model and the Operating Agreement.

This Court originally denied Plaintiffs' motion for Class Certification without prejudice. Dkt. 91.  The parties met and conferred, and the Court permitted Plaintiffs to take additional discovery to attempt to meet the Court's concerns regarding Certification.  After this discovery, Plaintiffs filed a renewed motion for class certification, which was vigorously opposed by FXG. Dkt. 99, 104.

On December 26, 2019, the Court granted Plaintiffs' renewed motion for class certification regarding Plaintiffs' claim for violation of the Wage Payment Law.  Plaintiffs did not seek to certify their claims for Misrepresentation.

Following the ruling on class certification, class notice was distributed to the certified class of approximately 193 individuals.  One request for exclusion was received, and therefore the final class consists of 192 individuals.

The parties then completed briefing on cross motions for summary judgment throughout

the Spring of 2020.  While the parties' respective motions for summary judgment were pending, the Parties agreed to attend mediation and informed the Court of their agreement to mediate by Letter dated June 11, 2020.

The Parties attended non-binding mediation with Michael Dickstein, Esq. on September 1, 2020.  Mr. Dickstein is nationally renowned as a mediator of employment class-actions and had worked with the parties previously in other cases.  After a full-day's mediation, the parties were unable to reach resolution.  However, subsequent negotiations facilitated by Mr. Dickstein resulted in the Parties entering into the proposed Agreement discussed below.

### D.    Potential Damages

Prior to mediation, Plaintiffs obtained and reviewed detailed data related to all putative class members, the time periods that they contracted with FXG, and any alleged deductions from their wages.  Plaintiffs also received electronic data generated by the FXG "scanner" for each putative class member, which shows their first "scan" on each day and their last "scan" of each day, which has been used in similar cases as a means to approximate the amount of hours worked by class members as well as the number of workweeks of each class member.

Based on this data, Plaintiffs were able to not only calculate the amount of alleged deductions (and sort the alleged deductions by type / description), Plaintiffs engaged an expert, David Breshears, to analyze and organize this data to inform Plaintiffs' counsel of the precise number of "full-time" weeks worked by class members during the relevant time period, and the number of "part-time" weeks worked during the time period (defined as weeks in which putative class member's scanner data showed between 15 and 30 hours of "work").  In total, there were 13,755 full-time weeks and 2,307 part-time weeks worked by a group of approximately 192 class members who are exclusively class members to this action.  Utilizing the scanner data and deductions data and Plaintiffs' expert report, Plaintiffs' counsel estimated which deductions

5

occurred during "full-time" weeks and estimated the potential deductions damages that could have been recovered. Plaintiffs counsel's analysis showed that there were approximately $8 million in deductions during full-time workweeks, assuming of course that all 192 class members had established their status as "employees" of FedEx Ground, and if all deductions from class members' pay during weeks in which they worked "full-time" were recoverable.[1]   However, these gross calculations do not account for the fact that many of the class members may have simultaneously operated two or three routes for FXG, and therefore the deductions reflected on the settlement sheet was not formally related to the work of the class member, but instead related to the work performed by a secondary driver whom he hired to assist him in his work.  Arguably, it would have been more difficult for Plaintiffs to recover deductions related to the work of someone else, as opposed to the deductions directly attributable to their own full-time work.

## II.       THE TERMS OF THE PROPOSED SETTLEMENT

### A.  Monetary Terms

The settlement creates a non-reversionary fund of $2,470,000.  The settlement funds would be distributed as follows:

$1,618,425 - funds to be distributed to all participating class members

$796,575- attorney's fees and costs

$45,000 - comprised of three incentive payments of $15,000 each to the three named

Plaintiffs;

---

[1]       The total deductions showing in the data are approximately $11 million.  However, many of these deductions were taken in weeks when the class member did not work full-time, and therefore arguably it would be more difficult to establish that the amount earned by the class member in that week constituted "wages."  In addition, more than $2.3 million of the deductions analyzed were for a "maintenance fund" and "service fund," and FXG intended to vigorously argue that these were not truly "deductions" from the class members' compensation.

$10,000 - approximate costs of Third Party Settlement Administration[2]

**B.      Procedures for Calculating Settlement Shares and Distributing Settlement Funds**

Plaintiffs will use the data provided prior to mediation to determine each participating class members share of the settlement fund.  Those class members who submit a claim form will receive (net of all fees and costs) approximately $54 for each part-time week that they worked (after accounting for attorney's fees), and approximately $108 for each full-time week that they worked, assuming full participation in the settlement fund.[3]   This same method for compensating class members has been approved in previous class action settlements involving Defendant, most notably the settlement in Tofaute v. FedEx Ground Package System, Inc., No. 05-595 (N.D. Ind.) a previous case asserting New Jersey state wage claims against FedEx Ground that covered the time period before the current matter.  At full participation, that settlement provided approximately $72 for each full-time week and $25 for each part-time week.

**C.      Release**

Upon the effective date, all class members and their related business entities (including those individual class members who do not submit a claim form to participate) would release all statutory or common law claims asserted in the initial Complaint or that could have been brought arising out of or related to the allegations of misclassification as independent contractors.  The release period covers March 16, 2010 through the date of the Court's preliminary approval order.

---

[2] As discussed below, Plaintiffs' counsel will perform many of the settlement administration tasks "in-house," such as mailing all settlement notices, tracking claim forms and participation, and calculating all settlement shares.  The third-party administrator will only be used to create a Qualified Settlement Fund to actually cut checks from the settlement fund and perform all tax reporting.  By performing as many administrative tasks in-house as possible, Class Counsel will preserve more of the settlement funds to be distributed to class members.

[3]      This assumes full participation of the 192 individuals eligible for participation in the class.

The named Plaintiffs and their related entities (Newfield Transportation, Inc., Fennell Logistics Corporation, and ENDND Inc.), have agreed to a general release of all claims.

### III.   PRELIMINARY APPROVAL IS WARRANTED

#### A.  Standard Governing Preliminary Approval

Class action settlements are favored, though court approval is required in order to ensure that settlements are fair, reasonable, and adequate.  See generally In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 784-785 (3d Cir. 1995).  Rule 23 specifically addresses the standard for *preliminary* review of class action settlements in order to permit settlement notice to putative class members.  Where a class settlement is proposed, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.  Fed. R. Civ. P. 23 (e)(1).  Here, the second factor has been established, as this Court has already certified the class in this case in its December 26, 2019 Order and Opinion. See Dkt. 120 and 121. As such this Court has already answered the second question in the affirmative and this motion only addresses the first question raised in Rule 23(e).  Thus, at the preliminary approval stage in this case, settlement notice should be distributed where the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2).  As discussed below, this question is answered in the affirmative.

#### B.     The Court will likely be able to approve the settlement at final approval

Rule 23(e)(2) states as follows:

> *(2) Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)  the class representatives and class counsel have adequately

represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  At the final approval stage, Plaintiffs and Class Counsel suggest all of these factors will favor approval of the settlement.

> ### a.   Rule 23(e)(2)(A): The class representatives and class counsel have adequately represented the class.

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes").  Here, this factor is likely to be satisfied because Plaintiff's counsel has zealously advocated for the class for more than four years, filing amended pleadings, conducting full discovery as to merits and damages, briefing class certification, obtaining class certification, briefing summary judgment, and analyzing substantial classwide electronic data with the assistance of an expert in order to assess potential classwide damages.  This provided class counsel with "an adequate appreciation of the merits of the case before negotiating," In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 531 (3d Cir. 2004) (citations omitted), and enabled them to "ferret out facts helpful to the prosecution of the suit," In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations and citation omitted); see, e.g., In re

Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 319 (3d Cir. 1998) (granting settlement approval where, even in absence of formal discovery, "'[c]lass [c]ounsel's knowledge of this case are unquestionably adequate to support this settlement.'"). Thus, throughout this proceeding Plaintiffs' counsel have effectively represented the class members' interests, and the class representatives have likewise dedicated significant time and effort into prosecuting this action on the class members' behalf, sitting for depositions, responding to written discovery, advising Plaintiffs' counsel in conjunction with mediation, and providing their counsel with invaluable guidance through this litigation and the negotiation of the proposed settlement. Class counsel is also uniquely experienced in wage and hour class action litigation, particularly on behalf of FedEx Ground drivers asserting wage claims against this same Defendant. For example, Attorney Lichten has previously represented hundreds of FedEx Ground drivers across the country in similar lawsuits challenging FedEx Ground's practice of classifying its drivers as independent contractors. See, e.g., Silveira v. FedEx Ground Package Sys., Inc., C.A. No. 3:11-cv-01159-JBA (D. Conn.) (filed July 25, 2011); Scovil v. FedEx Ground Package System, Inc., C.A. 1:10-cv-00515-DBH (D. Me.) (filed Dec. 16, 2010); Carlson v. FedEx Ground Package Sys., Inc., C.A. No. 2:05-cv-00085-SHE (D. Mont.) (filed Dec. 9, 2005). Attorney Marchetti was counsel to the Plaintiffs in the Tofaute matter in the MDL, as well as the Plaintiffs in the North Carolina and Louisiana matters that were resolved in the MDL. Mr. Marchetti was also Class counsel in the Florida (Carlson) and Arkansas matters that were resolved after remand in the MDL, with the Carlson case having been the subject of an appeal to the Eleventh Circuit Court of Appeals, reversing summary judgment that had been granted to FXG on employment status. After the closure of the Cureton Clark law firm in 2010, after FXG had obtained summary judgment on all of the cases remaining in the MDL, Mr. Marchetti maintained the firm's seat on the MDL

Plaintiffs' Steering Committee, and has also been counsel in numerous individual or multi-plaintiff cases in District Courts in New Jersey, Montana, and the Eastern District of Virginia.    Mr. Marchetti and Mr. Lichten are co-counsel in the matter of <u>Hargrove v. Sleepy's</u>, in which the New Jersey Supreme Court first established the ABC test for employment status under the Wage Payment Law, and most recently in which the Third Circuit refined the doctrine of ascertainability in wage and hour class action cases.  <u>Hargrove v. Sleepy's LLC</u>, 974 F.3d 467 (3d Cir. 2020). Class counsel was able to draw on this prior experience to achieve a settlement that is in line with the settlements that have been approved as fair and reasonable in previous cases asserting similar claims against this same Defendant, and that in many ways exceeds the per week recovery in similar cases.

    **b.**  <u>**Rule 23(e)(2)(B)**</u>**:  The proposal was negotiated at arm's length.**

   This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests."  Advisory Committee Notes.  Here, this factor is likely to be satisfied because the settlement was achieved after arm's-length negotiations at an all-day mediation session with renowned mediator Michael Dickstein, Esq.  <u>See</u> <u>In re Nat. Football League Players' Concussion Injury Litigation</u>, 307 F.R.D. 351, 377 (E.D. Pa. 2015) (presence of mediator helps guarantee class members claims are not compromised).  Moreover, the settlement achieves substantial money recoveries for the class members and calls for an attorney's fee award from the non-reversionary common fund of 32.25%, substantially less than the often higher awards approved in similar class action settlements.  Moreover, Plaintiffs' counsel does not seek any additional award of costs above the 32.25% fee, although they incurred significant litigation expenses throughout discovery, mediation, and in retaining an expert witness to review and process the massive amount of data provided by FXG to come up with a damages model.  In sum, the arms-length nature of the settlement negotiations is reflected in both the process by which the

settlement was reached and the resulting settlement terms.

> c.      <u>Rule 23(e)(2)(C)(i)</u>:  **The relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal.**

This factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome."  Advisory Committee Notes.  "Often, courts may need to forecast the likely range of possible class-wide recoveries and the likelihood of success in obtaining such results.  That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure."  <u>Id</u>.[4]  This factor is likely to be satisfied for the following reasons:

First, the settlement provides substantial money payments to the class members.  Many class members who worked the longest will likely receive settlement shares of more than $10,000 each.  In the previous <u>Tofaute</u> settlement, which was approved as fair and reasonable, class members received less on a per workweek basis than has been recovered here.

Second, the settlement enables class members to avoid real litigation risks.  Defendant has at all times contested Plaintiffs' misclassification and wage claims, asserting a number of affirmative defenses.  The incorporation defense here, as the Court noted in granting class certification, was basically an all or nothing proposition – either Plaintiffs would have been able to overcome the defense, or the Class would receive nothing.

Finally, the settlement enables the class members to avoid significant delay.  At the time

---

[4]    <u>See also</u> <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation</u>, 55 F.3d 768, 806 (3d Cir. 1995) ("courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery…and a range in light of all the attendant risks of litigation."); <u>In re Cendant Corp. Securities Litigation</u>, 109 F. Supp. 2d 235, 256 (D.N.J. 2000) (settlement's reasonableness is "a yielding of the highest hopes in exchange for certainty and resolution").

of settlement, Plaintiff and FedEx Grounds' motions for summary judgment were pending. Following the resolution of those motions there may have been additional discovery and eventually trial. It is also likely that either side may have sought an appeal of any unfavorable decisions or trial verdict, as has happened in previous litigation in which counsel have been involved with this Defendant.

> **d.      Rule 23(e)(2)(C)(ii):  The relief provided for the class is adequate, taking into account the effectiveness of any the proposed method of distributing relief to the class including the method of processing class-member claims if required.**

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. This factor is likely to be satisfied because, the settlement notice process is straightforward and class members can participate in the settlement by signing a simple one-page form and returning it to Class Counsel.

> **e.      Rule 23(e)(2)(C)(iii):  The terms of any proposed award of attorney's fees, including the timing of payment.**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes. Here, this factor is likely to be satisfied because Plaintiffs' counsel's requested fee falls within Third Circuit norms. In particular, Plaintiffs' counsel seek combined attorney's fees and expenses representing 32.25% of the common settlement fund. These fees and expenses will be paid at the same time as the payments to class members. The above fee is neither surprising nor excessive. First, in the Third Circuit, the "percentage of recovery" method is the predominant method of assessing attorney's fees in class action settlements. See General Motors Corp., 55 F.3d at 822; Galt v. Eagleville Hospital, 310 F. Supp. 3d 483, 497 (E.D. Pa. April 19, 2018); Dominguez v. Galaxy Recycling Inc., 2017 WL 2495406, at *7 (D.N.J. June 9, 2017). Second, under the

percentage-of-recovery method, district courts within the Third Circuit have approved fees equaling as high as 45% of the common settlement fund.  See, e.g., In re Cendant Corp. PRIDES Litigation, 243 F.3d 722, 736 (3d Cir. 2001); Gen. Motors Corp., 55 F.3d at 822; Dominguez, 2017 WL 2495406 at *8.  Given that this case has been hotly litigated for more than four years, through discovery, full briefing on Defendant's motions to dismiss and Plaintiffs' motion for class certification and summary judgment, and mediation accompanied by detailed, classwide damages analysis, the fee here is eminently reasonable.  This is especially true here where the combination of the smaller class and shorter period, and the fact that every class member was required to form a corporation (and potentially subject to the incorporation defense), made this case more risky than the prior cases.

### f.        Rule 23(e)(2)(C)(iv):  Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal."  Here, the accompanying Settlement Agreement is the *only* agreement connected to this settlement.  Therefore, this factor is likely to be satisfied.

### g.        Rule 23(e)(2)(D):  The proposal treats class members equitably relative to each other.

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others."   Advisory Committee Notes.   "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Id.  Here, all class members asserted identical claims for unlawful wage deductions and will receive settlement shares based on the same formula. As a result, this factor is likely to be satisfied here.  Though the named Plaintiffs will receive incentive payments, the requested amounts are within the range regularly approved in similar wage and hour cases.

See, e.g., In re Janney Montgomery Scott LLC Financial Consultant Litigation, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) ($20,000 incentive payments in FLSA and Pennsylvania wage and hour case); Badia v. HomeDeliveryLink, Inc., 2015 WL 5666077, at *9 (D.N.J. Sept. 25, 2015) ($15,000 incentive payments in NJWPL wage and hour case).

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs request that the Court grant Plaintiffs' Motion for Preliminary Approval of the Proposed Class Action Settlement by entering the Proposed Order attached hereto as Exhibit 3.


Dated: December 15, 2020                    /s/ *Anthony L. Marchetti, Jr.*
                                            Anthony L. Marchetti, Jr. (AM4302)




## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was electronically served on all counsel of record for Defendant through the Court ECF system on December 15, 2020.


                                            /s/ *Anthony L. Marchetti, Jr.*
                                            Anthony L. Marchetti, Jr. (AM4302)