Exhibit 1

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

---

**MICHAEL CARROW, MICHAEL FENNELL, and NICHOLAS STEFANOU, individually and on behalf of others similarly situated,**

        **Plaintiffs,**

        -against-

**FEDEX GROUND PACKAGE SYSTEM, INC.,**

        Defendant.

No. 16-cv-03026-RBK-JS

---

## CLASS ACTION SETTLEMENT AGREEMENT

---

    This Agreement shall constitute the full Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") between Michael Carrow, Michael Fennell, and Nicholas Stefanou (the "Plaintiffs"), on behalf of themselves and the Certified Class, as defined below, and Defendant FedEx Ground Package System, Inc. ("FXG"), collectively, the "Parties," to settle, fully and finally, all of the Released Claims (as defined below).

    A.    Certain disputes and differences have arisen between the Parties concerning FXG's alleged classification of package delivery drivers as independent contractors instead of employees. Plaintiffs allege that based upon this employment classification, they and the members of the Certified Class were, among other things, unlawfully deprived of the benefits of various employment and/or consumer protection laws, were deprived of various rights under the common law, were not paid all wages due, and bore expenses that should have been borne by FXG.

    B.    *Michael Carrow, et al. v. FedEx Ground Package System, Inc.,* No. 16-cv-03026-RBK-JS (the "Lawsuit"), is currently pending in the United States District Court for the District of New Jersey. In the initial Class Action Complaint filed March 16, 2016 and the First Amended Class Action Complaint filed June 15, 2016, Plaintiffs brought six claims for relief against FXG: (1) Violation of the New Jersey Consumer Fraud Act; (2) Misrepresentation; (3) Rescission of Operating Agreement; (4) Violation of the New Jersey Wage Payment Law; and (5) Breach of Duty of Good Faith and Fair Dealing. On July 29, 2016, FXG filed a motion to dismiss the First Amended Class Action Complaint, and by order dated March 20, 2017, the Court dismissed Plaintiffs' claims for Violation of the New Jersey Consumer Fraud Act, Rescission of the

Operating Agreement, and Breach of Duty of Good Faith and Fair Dealing.

C.     In the operative Second Amended Class Action Complaint, filed June 7, 2017 (the "Operative Complaint"), Plaintiffs brought two claims for relief against FXG: (1) Misrepresentation; and (2) Violation of the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1 et seq.. FXG denies all of the allegations asserted in the Lawsuit and denies that it has committed any violation of law, misconduct, wrongdoing, or any other actionable conduct, and also denies that it has misclassified the Plaintiffs or the members of the Settlement Class.

D.     On December 26, 2019, the Court granted Plaintiffs' renewed motion for class certification regarding Plaintiffs' claim for violation of the Wage Payment Law. Plaintiffs did not seek to certify their claims for Misrepresentation.

E.     The Parties attended non-binding mediation with Michael Dickstein, Esq. on September 1, 2020, and subsequent negotiations facilitated by Mr. Dickstein resulted in the Parties entering into this Agreement.

F.     This Agreement is made in consideration of the facts and recitals set forth herein. The Parties understand, acknowledge, and agree that this Agreement constitutes a compromise of all the disputed claims at issue in the Lawsuit and that it is the desire and intention of each of the Parties to effect a final and complete resolution of the Lawsuit and of the Released Claims of the Named Plaintiffs individually and of the Certified Class, including all costs and attorneys' fees incurred.

G.     Plaintiffs and Class Counsel: (1) have examined and considered the benefits to be provided to Class Members under the settlement provided for in this Agreement (the "Settlement," as defined below); (2) have considered the applicable law and the claims that have been and could have been asserted in the Operative Complaint arising out of or relating to the allegations of misclassification of the members of the Certified Class as independent contractors; and (3) believe the Settlement to be fair, reasonable, and adequate, and in the best interest of the Certified Class, taking into account the benefits provided to the members of the Certified Class through the terms of the Settlement Agreement, the decisions rendered in the Lawsuit, the risks of litigation, and the length of time that would be required to complete the litigation and any appeals.

H.     The Parties further acknowledge that this Settlement is a compromise of disputed claims and that FXG is not in any way admitting liability by entering into this Agreement. FXG has at all times disputed, and continues to dispute, the allegations in the Lawsuit and denies any liability for any of the claims that have or could have been raised in the Lawsuit regarding the alleged classification of the Plaintiffs and the members of the Certified Class as independent contractors, but believes that the Settlement as provided in this Agreement will avoid the substantial expense and disruption of continued litigation.

I.     The Parties believe that the Settlement is fair, reasonable, and adequate. The Settlement was arrived at through arm's-length negotiations, taking into account all relevant factors, and will materially benefit the members of the Certified Class. The Parties recognize the uncertainty, risk, expense, and delay attendant to continuing the Lawsuit through discovery and trial, and any further appeals following trial. Accordingly, the Parties desire to fully, finally, and

forever settle, compromise, and discharge all disputes and claims arising from or relating to the Lawsuit.

Therefore, in consideration of the promises and agreements contained herein, and intending to be legally bound, the Parties agree and covenant as follows:

## I.   DEFINITIONS

As used in this Agreement, the following definitions (in addition to those set forth elsewhere herein) shall apply:

A.      "Claiming Class Members" means all those individuals included in the Certified Class (defined herein) who timely submit both a fully completed and executed Claim Form to receive funds under the terms of this Agreement and a fully completed and executed Form W-9. Class Members who fail to timely submit both such documents will receive no payment under this Settlement Agreement but will be bound to the terms of this Settlement Agreement, including without limitation the release of claims provided in this Agreement.

B.      "Claim Form" means the Form attached hereto as Exhibit 2, and must be submitted by any member of the Certified Class in order to receive payment under the terms of this Agreement.

C.      "Certified Class," or "Class," means: All persons who: 1) entered into a FedEx Ground or Home Delivery Operating Agreement, either personally or through a corporate entity; 2) drove a vehicle on a full-time basis to provide package pick-up and delivery services pursuant to the Operating Agreement in any week from April 13, 2010 to June 1, 2017 ("the Class Period"); 3) were dispatched out of a terminal in the state of New Jersey; and 4) who first signed an Operating Agreement after October 15, 2007, or excluded themselves from the certified class in *Tofaute v. FedEx Ground Package System, Inc.*, No. 05-595 (N.D. Ind). "Full-time basis" means thirty or more hours.

The Class specifically excludes claims arising from the provision of package pick-up and delivery services exclusively under an Independent Service Provider ("ISP") agreement.

D.      "Class Counsel" means Anthony Marchetti of Marchetti Law, P.C., and Harold Lichten and Matthew Thomson of Lichten & Liss-Riordan, P.C.

E.      "Class Member" means, individually or collectively depending on whether the singular or plural is used, any individual meeting the qualifications set forth in Section I.C. above, and/or any individual or Related Entity who was a signatory to an FXG Operating Agreement during the Class Period whom the Parties otherwise agree shall be considered a member of the Class. A preliminary list of Class Members in the Lawsuit is attached to this Agreement as **Exhibit 3**. Notwithstanding the list attached to the Agreement, nothing shall

3

prevent the Parties, through their counsel, from mutually agreeing to subsequently modify the list of Class Members to correct errors or omissions therein.

F.    "Class Period" refers to the time period from April 13, 2010 through June 1, 2017.

G.    "Class Settlement Fund" means the fund that will be established and maintained to resolve the claims at issue, as described in Section III.A. below, and which is intended to be a qualified settlement fund within the meaning of Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1.

H.    "Effective Date" means the first business day after the following has occurred: (i) 35 days have elapsed from the entry by the Court of the Final Approval Order in the Lawsuit and the judgment thereon, and no notice of appeal of the judgment or any Order in the Lawsuit has been filed, the time provided for in Rule 4 of the Federal Rules of Appellate Procedure to take any such appeal has expired, and any right to take any such appeal from the judgment or from any such Order has been waived or otherwise lost; or (ii) if an appeal has been taken, 35 days have elapsed since each such appeal has been finally adjudicated and the Final Approval Order and judgment have been upheld in all respects by each such final adjudication, and either the time for initiation of the next step in the appellate process (e.g., a petition for writ of certiorari) has expired without any action by appellant(s) or the next step in the appellate process was invoked and has been concluded without any impact on the Final Approval Order or judgment.

I.    "Related Entity" means any business entity (whether partnership, limited liability company, sole proprietorship, corporation, or any other business structure): (i) which was a party to an Operating Agreement with FXG at any time during the Class Period, including but not limited to an entity which assumed an assignment or substitution of an FXG Operating Agreement, and (ii) in which a Named Plaintiff or Class Member was the authorized officer of, and/or had an ownership interest in (in full or in part), at any time during the Class Period.

J.    "Fairness Hearing" means the final approval hearing, to be held after notice has been provided to the Class Members in accordance with Section II.C of this Agreement, to determine whether the Settlement should obtain final approval.

K.    "Final Approval Order" means the order to be entered in the Lawsuit granting final approval to the Settlement, attached hereto as Exhibit 5.

L.    "Form W-9" means the current version of the Internal Revenue Service's Form W-9 (Request for Taxpayer Identification Number and Certification).

M.    "Named Plaintiffs" means Michael Carrow, Michael Fennell, and Nicholas Stefanou.

N.    "Named Plaintiffs' Released Claims" means, with respect to the Named Plaintiffs in their individual, as opposed to representative, capacity, any and all claims, actions, causes

4

of action, administrative claims, demands, charges, debts, damages, penalties, interest, costs, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, that a Plaintiff, on behalf of himself or herself and on behalf of any Related Entity(ies) (including any entity for or through which Plaintiff has provided pickup and delivery services to FXG, including but not limited to Newfield Transportation, Inc., Fennell Logistics Corporation, and ENDND Inc.), had, has or could have had against the Releasees by reason of any act, omission, harm, matter, cause, or event whatsoever, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law or contract, arising or accruing at any time in the Release Period, for any type of relief, including without limitation wages, pay, unpaid/unreimbursed costs, deductions, penalties, general damages, compensatory damages, liquidated damages, punitive damages, interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief. The Named Plaintiffs' Released Claims are further defined under "Released Claims" below.

O.      "Preliminary Approval Order" means the order to be entered in the Lawsuit granting preliminary approval to the Settlement, attached hereto as Exhibit 4.

P.      "Releasees" means: (a) FXG, and its consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and employees; and (b) FXG's past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers.

Q.      "Release Period" refers to the time period from March 16, 2010 through the date of the Court's preliminary approval order.

R.      "Released Claims" means all claims released pursuant to this Agreement, including without limitation the Named Plaintiffs' Released Claims and the Class Member Released Claims. The Released Claims include any known or unknown claims for damages or injunctive relief relating to claims described herein. Specifically Plaintiffs and all Class Members in exchange for the valuable consideration offered herein, on their own behalf, and on behalf of any Related Entity(ies), hereby expressly waives any and all rights and benefits conferred upon them by Section 1542 of the California Civil Code and expressly consents that this Agreement (including, without limitation, the Release set forth herein) shall be given full force and effect according to each and all of its express terms and provisions, including those related to unknown and unsuspected claims, if any, as well as those relating to any other claims hereinabove specified. Section 1542 provides:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

S.      "Service Award(s)" shall have the meaning set forth in Paragraph VII.B of this Agreement.

5

T.    "Settlement" means collectively the rights and duties of the Parties under this Agreement and the processes for approval and payment to Class Members described in this Agreement.

U.    "Settlement Administrator" means Rust Consulting, which the parties designate as the qualified firm to be approved by the Court to administer the Settlement and the Class Settlement Fund as described in Sections III.E and III.G of this Agreement.

V.    "Class Member Released Claims," as to Named Plaintiffs and all Class Members in this Lawsuit, means all claims, actions, causes of action, administrative claims, demands, debts, damages, penalties, costs, interest, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, which: (i) are owned or held by Named Plaintiffs and Class Members and/or by their Related Entities (if any), or any of them, as against Releasees, or any of them; (ii) arise under any statutory or common law claim which was asserted in the Lawsuit or, whether or not asserted, could have been brought arising out of or related to the allegations of misclassification of Named Plaintiffs and Class Members as independent contractors set forth in the Operative Complaint, and (iii) pertain to any time in the Release Period. The Released Claims include any known or unknown claims for damages and injunctive relief. The Released Claims include but are not limited to claims under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et seq.*,, the Declaratory Judgment Act, 28 U.S.C. § 2201; and common law claims for fraud, breach of contract, rescission, unjust enrichment, or declaratory judgment. The Class Member Released Claims are further defined under "Released Claims" above.

W.    "Settlement Notice" means, individually or collectively as the context may indicate, the proposed written notice attached hereto as **Exhibit 1**, to be approved by the Court and mailed to Class Members in accordance with Section IV of this Agreement.

X.    "Settlement Payment" means the amount set forth in Section III.A. of this Agreement that FXG will transfer to the Class Settlement Fund to resolve the Released Claims.

## II.    REQUIRED EVENTS

The events set forth in this Section II, in addition to the occurrence of the "Effective Date" as described in Section I.H, are conditions precedent to this Agreement becoming effective.

A.    As soon as practicable after the execution of the Agreement by the Plaintiffs and FXG, the Plaintiffs shall file the Agreement with the Court and move for an Order granting Preliminary Approval of the Class Action Settlement, substantially in the form of **Exhibit 4** hereto. The Preliminary Approval Order shall by its terms accomplish all of the following:

6

1.      Preliminarily approve this Settlement as fair, reasonable, and adequate to the Class Members.

2.      Approve Class Counsel to perform the Settlement administration duties set forth in Section III.D below.

3.      Designate Rust Consulting as the Settlement Administrator and approve it to perform the Settlement administration duties set forth in Section III.E below.

4.      Approve reasonable compensation and costs to the Settlement Administrator in accordance with the terms of Exhibit 6.

5.      Approve the "§ 1.468B-3 Statement" for the Class Settlement Fund that FXG will provide to the Settlement Administrator by February 15 of the year following the calendar year in which FXG transfers the Settlement Payment to the Class Settlement Fund.

6.      Approve the form, contents and methods of notice to be given to the Class Members as set forth in Section IV below.

7.      Establish procedures and deadlines for Class Members to return Claim Forms and Form W-9's, to object to the Settlement, and/or to challenge the Payment Calculations, all consistent with the terms of this Agreement.

8.      Schedule deadlines for the filing of objections to the Settlement and the filing of papers in support of final approval of the Settlement.

9.      Schedule the Fairness Hearing.

B.      [Intentionally left blank.]

C.      At the Fairness Hearing, the Plaintiff will request the Court to enter the Final Approval Order for the Lawsuit, substantially in the form of **Exhibit 5** hereto, which: (1) grants final approval of the Settlement and this Agreement as fair, reasonable, and adequate to the Class Members; (2) provides for the release of all Released Claims and enjoins any and all Class Members from asserting, filing, maintaining, or prosecuting any of the Released Claims in the future; (3) orders the dismissal with prejudice of all Released Claims, and incorporates the releases, indemnities, and covenant not to sue stated in this Agreement, with each of the Parties to bear its, his, or her own costs and attorneys' fees (except as provided in Sections VII.A and VII.E of this Agreement); (4) authorizes the Settlement Administrator to issue settlement payments to Class Members in accordance with the terms of this Agreement; (5) authorizes the payment of the Service Awards to the Named Plaintiffs as detailed in Section VII.B of this Agreement; and (6) retains the Court's jurisdiction over the administration of the Settlement and enforcement of this Agreement.

D.      The Settlement Administrator will sign a written acknowledgement and acceptance of its duties in the form of **Exhibit 6** hereto.

7

Named Plaintiffs, Class Counsel, and FXG will cooperate and take all reasonable actions to accomplish the above. If the Court fails to grant Preliminary Approval of the Settlement or the Final Approval Order in the form submitted by the Parties, Plaintiffs, Class Counsel, and FXG will use all reasonable efforts that are consistent with this Agreement to cure any defect identified by the Court. If, despite such efforts, the Court does not enter an Order granting Preliminary Approval and/or Final Approval of the Settlement, the Parties will return to their prior positions in the Lawsuit in accordance with Sections XII.A. of this Agreement.

## III. PAYMENT TO CLASS SETTLEMENT FUND AND PROCEDURES FOR PROVIDING PAYMENTS TO CLASS MEMBERS

### A. Payment to Class Settlement Fund

The Settlement Payment that FXG will transfer to the Class Settlement Fund for this Lawsuit is $2,470,000.00 (the "Settlement Payment"). No later than fifteen business days after the Effective Date, and in accordance with the other terms of this Agreement and its exhibits, FXG shall transfer the Settlement Payment to the Class Settlement Fund to resolve the Released Claims of Named Plaintiff and Class Members for this Lawsuit.

The Parties intend the Class Settlement Fund to be a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1. Accordingly, FXG shall retain no rights or reversionary interests in the Settlement Payment once transferred to the Class Settlement Fund. Furthermore, FXG's obligation to make the Settlement Payment is contingent on (i) the Court's entry of the Preliminary Approval Order appointing the Settlement Administrator and approving the Settlement Administrator to establish and maintain the Class Settlement Fund for the Lawsuit; and (ii) the court's entry of the Final Approval Order releasing and dismissing with prejudice all of the Released Claims. Under no circumstances shall FXG be required to pay more under this Settlement than the amount of the Settlement Payment as set forth herein. The Class Settlement Fund is a common fund that includes respective Class Counsel's fees and costs as described more fully in Sections V and VII. of this Agreement as well as the service award payments to Named Plaintiffs as described more fully in Section VII.B of this Agreement.

### B. Payment Calculations for Class Members

1. Class Counsel shall make and submit to the Settlement Administrator and FXG their final Payment Calculations no later than thirty (30) days after entry by the Court of the Final Approval Order. The Payment Calculations shall take into account available information regarding the length of time each claimant provided services under contract to FXG during the Release Period, and the amount of each claimant's *pro rata* share of the attorneys' fees and costs to be paid to Class Counsel. Class counsel shall use a workweeks formula for workweeks in which Claiming Class Members drove a vehicle on a full-time basis to provide package pick-up and delivery services pursuant to the Operating Agreement, and shall allocate a lower amount for other workweeks. The minimum payment to each Claiming Class Member is $250. Class Counsel assume and accept all responsibility and liability associated with their Payment Calculations.

2. A reserve of $30,000 shall be held back from the first round distribution to account for the possibility that one or more late claims may be accepted after the date of the first round

distribution. If this reserve amount is not distributed to one or more Class Members who submit a late claim, it shall be added to the amount of unclaimed funds described below and redistributed in the second distribution to those Claimant Class Members who cashed their settlement payment check, as described below.

3. If any Claiming Class Member does not collect his or her settlement payment by cashing the settlement payment check sent to him or her by the Settlement Administrator within 90 days after the date the check is issued, and does not request reissuance of the settlement payment pursuant to subsection 4 below, then the amount of the Class Settlement Fund allocable to that Claiming Class Member shall be re-allocated on a *pro-rata* basis to the Claiming Class Members who do collect their settlement payments by cashing their settlement payment checks within 90 days after the date the checks are issued, which sum shall be remitted to such Claiming Class Members in a second round distribution of the Class Settlement Fund. For purposes of the second round distribution, each eligible Claiming Class Member's *pro rata* portion of the unclaimed funds shall be equal to that Claiming Class Member's proportionate share of the Class Settlement Fund allocable to all Claiming Class Members who collected their settlement payments during the first round distribution by cashing their settlement payment checks within 90 days. Although Claiming Class Members who do not cash the settlement checks sent to them within 90 days will not receive a settlement payment under this Agreement, they shall still be bound by the other provisions of this Agreement, including without limitation the release of claims provided in this Agreement.

4. If a Claiming Class Member informs Class Counsel or the Settlement Administrator within 75 days of either the first or second round distribution that his or her settlement payment check was misplaced, lost in the mail, or otherwise could not be cashed, the Settlement Administrator shall cancel the check containing the settlement payment and re-issue the settlement payment to the Claiming Class Member, and said Claiming Class Members funds shall not be subject to the redistribution described elsewhere in this Agreement.

### C. *Cy Pres*

Upon occurrence of the Effective Date, the Settlement Administrator shall distribute settlement payments in accordance with Section III of the Agreement. To the extent checks from the second distribution are not cashed within ninety (90) days following the second distribution, these funds shall be deposited with Legal Services of New Jersey, as *cy pres* beneficiary.

### D. Class Counsel's Settlement Administration Duties

Class Counsel shall be solely responsible for the following functions in accordance with the terms of this Agreement, and with the Preliminary Approval Order and Final Approval Order in the Lawsuit:

1. Mailing, by first-class United States Mail, the Settlement Notice (with the Fairness Hearing date and deadlines established by the Court in the Preliminary Approval Order), Claim Form, and a blank Form W-9 to all Class Members who can be identified through a reasonable effort. Plaintiffs shall obtain the Settlement Administrator's approval of the Form W-9 prior to mailing.

2. Providing to FXG a list identifying all Claiming Class Members.

9

3.    [Intentionally left blank.]

4.    Providing FXG a list identifying all Settlement Class Members who submit an Objection pursuant to Section IV of this Agreement and copies of all papers received by any such objectors.

5.    Processing objections to the Settlement, including challenges to the Payment Calculations.

6.    Submitting the Named Plaintiffs' and Claiming Class Members' executed Form W-9's to the Settlement Administrator.

7.    Submitting Payment Calculations to the Settlement Administrator and FXG.

## E. Settlement Administrator's Duties

The Settlement Administrator shall be solely responsible for the following functions in accordance with the terms of this Agreement, and with the Preliminary Approval Order and Final Approval Order in the Lawsuit:

1.    Submitting the Named Plaintiffs' and Claiming Class Members' taxpayer identification numbers, as provided in the executed Form W-9's, to the Internal Revenue Service taxpayer identification number matching service, and obtaining (prior to issuing payment) a corrected Form W-9 from each Named Plaintiff and/or Claiming Class Member whose taxpayer identification number does not result in a match in the above-referenced IRS process.

2.    Providing the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, substantially in the form attached hereto as Exhibit 7, to be mailed in accordance with the provisions of CAFA to the appropriate federal and state officials identified in Exhibit 7.

3.    Mailing, by first-class United States Mail, settlement payments to Named Plaintiff and Class Members in accordance with the Payment Calculations for each such Class Member provided to the Settlement Administrator by Class Counsel.

4.    Mailing, by first-class United States Mail, payment(s) for attorneys' fees and costs to Class Counsel.

5.    Mailing, by first-class United States Mail, incentive awards to Named Plaintiffs.

6.    Mailing payments of unclaimed settlement funds to the designated *cy pres* beneficiaries, if any.

10

7.      Establishing, designating, and maintaining the Class Settlement Fund as a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1, for the purpose of resolving the contested claims of Named Plaintiff and Class Members.

8.      Maintaining the assets of the Class Settlement Fund in a non-interest-bearing escrow account segregated from the assets of FXG and any person related to FXG.

9.      Obtaining an employer identification number (EIN) for the Class Settlement Fund pursuant to Treasury Regulation § 1.468B-2(k)(4).

10.     Preparing and filing federal income tax returns in the name of the Class Settlement Fund, as well as any other tax filings the Class Settlement Fund must make under federal, state, or local law.

11.     Cooperating with FXG to jointly file a relation-back election under Treasury Regulation § 1.468B-1(j)(2), if necessary, to treat the Class Settlement Fund as coming into existence as of the earliest possible date.

12.     Paying and depositing the federal taxes owed by the Class Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Class Settlement Fund.

13.     Preparing, filing, and issuing all necessary tax reporting forms in the name of the Class Settlement Fund, including IRS Forms 1099 regarding the distribution of payments to Class Members, Class Counsel, and Named Plaintiff.

14.     Providing FXG with copies of all tax reporting and filings made for the Class Settlement Fund, including copies of the checks and IRS Forms 1099 issued to Class Members, Class Counsel, and Named Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities.

15.     Paying any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the Class Settlement Fund. Any such tax payment shall be made solely from the assets of that Class Settlement Fund without any recourse against FXG for additional monies.

16.     Providing the Final Accounting to FXG and Class Counsel.

17.     Liquidating any remaining assets of the Class Settlement Fund after all payments to the Class Members, Class Counsel, and Named Plaintiffs have been made and all tax obligations have been satisfied, and distributing such assets as directed by the Court.

18.     Petitioning the Court for termination of the Class Settlement Fund once all of the duties listed above in subsections (1) to (14) have been completed.

### F.     Payments to Named Plaintiffs and Class Members

Upon occurrence of the Effective Date, the Settlement Administrator shall, as soon as thereafter reasonably practicable, but within no more than 20 additional business days, mail, by first-class United States Mail, to Named Plaintiffs and Class Members checks in the amounts determined by Class Counsel pursuant to Section III.B. of this Agreement and drawn on the account of the Class Settlement Fund. To the extent checks are not cashed within ninety days, the remaining funds shall be distributed to Named Plaintiffs and Class Members who cashed their settlement checks within the 90-day period in *pro rata* shares, as described in Section III.B. above in a second-round distribution. To the extent checks issued in the second-round distribution are not cashed within ninety days, amounts remaining in the Class Settlement Fund shall be deposited with the *cy pres* recipient specified in Section III.C. of this Agreement.

Nothing in this paragraph shall prohibit the Settlement Administrator from cancelling and/or re-issuing a settlement payment check to a Claiming Class Member whose settlement payment check is lost in the mail or is otherwise unable to be cashed.

### G.     Settlement Administrator's Acceptance of Duties and Compensation

The Settlement Administrator will sign an agreement acknowledging its responsibilities under this Agreement and setting forth the price of its services. If FXG or Class Counsel reasonably believes or suspects that the Settlement Administrator is failing to perform its duties, FXG or Class Counsel shall have a right to petition the Court for a remedy.

## IV.   SETTLEMENT NOTICE

The proposed Settlement Notice and Claim Form are attached hereto as Exhibit 1 and 2 respectively. The parties agree that the Settlement Notice and Claim Form together provide information sufficient to inform the Class Members of the material terms of this Settlement, the appropriate means for obtaining additional information regarding this Agreement and the Lawsuit, the appropriate means for and information about obtaining a settlement payment pursuant to the Settlement, and the appropriate means to object to the Settlement. To facilitate the efficient administration of this Settlement, and to facilitate the making of settlement payments to Class Members under the Settlement, Class Counsel will provide all Class Members with copies of the Settlement Notice and Claim Form pertaining to the Lawsuit, as well as contact information for the appropriate Class Counsel in the event they have questions. Plaintiffs will request the Court to approve the Settlement Notice and Forms in the Preliminary Approval Order.

As soon as practicable, but no later than 20 days after the Court's entry of the Preliminary Approval Order unless otherwise ordered by the Court, Class Counsel shall send or cause to be sent, by first-class United States Mail, a copy of the Settlement Notice, Claim Form, and Form W-9 to every Class Member who can be identified through reasonable effort. Before the mailing of these documents, Lichten & Liss-Riordan, P.C. will obtain or cause to be obtained address updates utilizing a national change of address database.

Within 30 days after the initial mailing of the Settlement Notice, Claim Form, and Form W-9, Class Counsel shall distribute a "reminder notice" to all Class Members who have not yet submitted a Claim Form or otherwise responded to the Settlement Notice. If necessary, Class

12

Counsel may use telephone numbers or email addresses to confirm that Class Members have received the Notice and to inquire whether they have any questions regarding the Settlement.

The Parties agree that the dissemination of the Settlement Notice by First Class Mail in the manner specified in this Section IV satisfies the notice requirements of due process and Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs will request the Court to approve, in the Preliminary Approval Order, the direct mailing of the Settlement Notice, Claim Form, and Form W-9 as set forth in this Section IV.

## V. COSTS OF NOTICE AND CLAIMS ADMINISTRATION

The Parties agree that all costs of preparing and disseminating the Settlement Notices provided for in this Agreement, and all costs of performing the Payment Calculations, shall be paid by Class Counsel, but that Class Counsel shall seek no additional award of fees or costs from the Class Settlement Fund related to these costs.

All other fees and expenses incurred in administering this Agreement, including payments made for the services of the Settlement Administrator for the duties set forth in Section III.E above, shall be paid from the Class Settlement Fund. Unless otherwise specifically agreed in writing, FXG shall not be responsible for any cost that may be incurred by, on behalf of, or at the direction of Plaintiffs or Class Counsel in (a) defending the Agreement or the Settlement against any challenge to them, (b) defending against any challenge to any order or judgment entered pursuant to the Agreement, or (c) for any other reason.

## VI. PROCEDURES FOR SETTLEMENT APPROVAL

### A. Preliminary Approval

Plaintiffs shall, as soon as practicable following the execution of this Agreement by all Parties, move the Court to enter the Preliminary Approval Order. The proposed deadlines to be established in the Preliminary Approval Order are as follows, unless otherwise ordered by the Court:

1. [Intentionally left blank.]

2. 20 days after entry of the Preliminary Approval Order: Date on or before which Class Counsel shall distribute the Settlement Notice, Claim Form, and Form W-9 to Class Members via First Class Mail.

3. 30 days after the initial mailing of the Settlement Notice, Claim Form, and Form W-9: Lichten & Liss-Riordan, P.C. shall distribute a "reminder notice" to all Class Members who have not yet submitted a Claim Form and Form W-9 or otherwise responded to the Settlement Notice. In Class Counsel's discretion, Class Counsel may, thirty days after Notice is mailed, make follow-up telephone calls to Class Members who have not responded to the Settlement Notice. The purpose of these telephone calls will be solely to confirm that the Class Member received the Notice and to offer to answer any questions of the Class Member.

13

4.     60 days after mailing of the Settlement Notices: Date on or before which objections to the Settlement, the Agreement, or the amount of fees that Class Counsel has requested, must be submitted (consistent with the instructions in the Settlement Notice); Date on or before which Class Members must submit completed Claim Forms and Form W-9's in order to participate in the Settlement and receive a share of the Settlement Payment, except that late claims may be accepted based on a showing of excusable neglect, and only in the event that the late claim will not delay distribution of the Class Settlement Fund under the terms of this Agreement.

5.     The Parties will coordinate with the Court to set a date for the Fairness Hearing that is no sooner than 120 days after the Court enters a Preliminary Approval Order.

## B.     Final Approval

At least seven (7) calendar days prior to the Fairness Hearing scheduled by the Court, or on such other date as the Court may require, Class Counsel will file with the Court an unopposed motion, in a form agreeable to Counsel for FXG, seeking entry of an order granting Final Approval of the Settlement.

At the Fairness Hearing, Plaintiff shall request the Court to enter the Final Approval Order, substantially in the form of **Exhibit 5** to this Agreement.

## VII.   CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS

A.     FXG shall not oppose Class Counsel's request for attorneys' fees and costs of up to $796,575 or approximately 32.253% of the Class Settlement Fund covering all legal services provided by Class Counsel in the past and future to the members of the Settlement Class in connection with the Lawsuit, the settlement of the Lawsuit, any appeal in connection with the Settlement, implementation of the Settlement, or otherwise.

B.     FXG shall not oppose Class Counsel's request for an incentive award to Named Plaintiffs for up to $15,000 each above what each is otherwise eligible to receive under Section III of this Agreement. The incentive award shall be paid from the common Class Settlement Fund.

C.     The agreed amounts set forth above in this Section will be subject to Court approval, which approval shall be stated in the Final Approval Order of the Court.

D.     Upon occurrence of the Effective Date, the Settlement Administrator shall, as soon as thereafter reasonably practicable, but within no more than 20 additional business days, mail, by first-class United States Mail, to Named Plaintiffs and Class Counsel checks drawn on the account of the Class Settlement Fund in the amounts specified above, as approved by the Court. Class Counsel shall provide to the Settlement Administrator in a timely manner all information needed with respect to the issuance of the checks for attorney's fees and Service Awards, including Form W-9's. The Settlement Administrator shall have no obligation to make payments under this Section until such information is received.

14

E.     Upon transferring the Settlement Payment to the Class Settlement Fund created for this Lawsuit, FXG will have no further responsibility or liability for any amount of attorneys' fees or costs for work performed or expenses incurred in connection with the Lawsuit to any of the Class Counsel or to any other counsel for Plaintiffs or any Class Member. In the event any claim for attorneys' fees or costs in connection with the Lawsuit is made by any counsel other than Class Counsel, the parties agree that FXG has no obligation of any kind to satisfy any such claim. In the event of any claim for attorneys' fees or costs brought against FXG in connection with the Lawsuit, Class Counsel agree to indemnify FXG against any payment on claims for fees or costs made by other counsel for work performed in connection with the Lawsuit. Class Counsel represent that there are no liens related to any fees associated with the claims of the Class Members as of the execution date of this Agreement. Any attorneys' fees or costs dispute between Class Counsel and any other attorney(s) will not interfere with the Settlement, the provisions of this Settlement Agreement, the dismissal of the Lawsuit, or the releases obtained pursuant to the Settlement Agreement. FXG is hereby released from potential liability for statutory attorneys' fees upon transferring the Settlement Payment to the Class Settlement Fund.

## VIII. RELEASE

All Class Members will be bound by the release of all Class Member Released Claims, regardless of whether they submit a Claim Form.

By executing this Agreement, Plaintiffs, on behalf of themselves and all Class Members (including their Related Entities, if any), acknowledge that, upon entry of the Final Approval Order by the Court, the Lawsuit shall be dismissed with prejudice, an order of dismissal with prejudice shall be entered, and all Released Claims, including Class Member Released Claims and Named Plaintiff Released Claims (as defined herein), shall thereby be conclusively settled, compromised, satisfied, and released as to the Releasees.

In connection with such release of claims, Named Plaintiffs and the Class Members hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, that they may have against Releasees. In furtherance of such intention, the release herein given to the Releasees by the Named Plaintiff and Class Members shall be and remain in effect as a full and complete release of all Released Claims.

Notwithstanding the above, the Court shall retain jurisdiction over the Parties, the Class Members and the Settlement with respect to the future performance of the terms of this Settlement Agreement, and to assure that all payments and other actions required by the Settlement are properly carried out.

## IX.     COVENANT NOT TO SUE

Plaintiffs, on behalf of themselves, the Class Members, and their Related Entities (if any), (a) covenant and agree that neither Plaintiffs nor any of the Class Members, nor any of Plaintiffs' or Class Members' Related Entities (if any), nor anyone authorized to act on behalf of any of them,

15

will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Settlement, against Releasees, or any of them, in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees, or any of them, in connection with the Released Claims; (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them; and (c) agree that this Settlement shall be a complete bar to any such action.

## X.   REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

A.    Plaintiffs and Class Counsel, FXG's in-house counsel, and FXG's undersigned outside counsel agree that they will not issue or cause to be issued any press release directed to any media representative regarding the Lawsuit or the Settlement (except as required to effectuate notice under this Agreement or as required by law).

B.    Each of the Parties has had the opportunity to receive, and has received, independent legal advice from his or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income-tax consequences of this Settlement, and fully understands and accepts the terms of this Settlement.

C.    Plaintiffs represent and warrant that no portion of any claim, right, demand, action, or cause of action against any of the Releasees that Plaintiffs are releasing in this Agreement, and no portion of any payment to which Plaintiffs may be entitled, has been assigned, transferred, or conveyed by or for Plaintiffs in any manner; and no person other than the Plaintiffs and the Class Members have any legal or equitable interest in the claims, demands, actions, or causes of action to be released in this Agreement. Plaintiffs and Claiming Class Members represent and warrant that they have authority to: enter into this Settlement on behalf of any Related Entities; bind such Related Entities to this Settlement Agreement, including but not limited to the release of claims provided in this Agreement for any and all of the Related Entities' Released Claims arising or accruing during the Class Period; and to direct FXG and/or the Settlement Administrator to issue payments under this Settlement to be made payable to themselves individually rather than to such Related Entities.

D.    Any other person or entity (including, but not limited to, insurers, lien holders, business partners, related or associated business entities, or other creditors) that has any judgments, liens, subrogation interests, or related claims which arise out of the Released Claims or the damages alleged by the Plaintiffs and the Certified Class as a result of the Released Claims must be satisfied from the payments to Plaintiffs and Claiming Class Members as detailed in Section III herein. Plaintiffs and Claiming Class Members, in their individual capacity and in their capacity as corporate officers, agree that they are liable for, and will release, hold harmless, defend, and indemnify the Releasees from and

16

against any and all Released Claims, known or unknown, that may be brought by any person, shareholder, partner, owner (in whole or part), firm, corporation, or other entity, including any lien holders, or any other person asserting an interest in any such entity, against the Releasees for any such judgments, liens, interests, or claims that exist arising out of the Released Claims, this Settlement, and/or the distribution of payments under this Settlement Agreement.

     E.     None of the Parties relies or has relied on any statement, representation, omission, inducement, or promise of any other party (or any officer, agent, employee, representative, or attorney for any other party) in executing this Agreement, or in making the Settlement provided for herein, except as expressly stated in this Agreement.

     F.     Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that party and his or its attorneys.

     G.     Each of the Parties has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his or its attorneys.

     H.     Section titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement or any provision hereof.

     I.     Each of the Parties has participated in the drafting of all provisions of this Agreement, has had an adequate opportunity to read, review, and consider the effect of the language of this Agreement, and has agreed to its terms.

     J.     It is understood and agreed that this Agreement is for the compromise of disputed claims and is not to be construed as or deemed to be an admission of any liability, fault, or responsibility on the part of FXG or any other Releasee.

     K.     It is understood and agreed that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his or its counsel participated in the drafting of this Agreement.

     L.     This Agreement constitutes and comprises the entire agreement among the Parties with respect to the subject matter hereof. It supersedes all prior and contemporaneous oral and written agreements and discussions. It may be amended only by an agreement in writing, signed by all Parties hereto.

     M.     The Parties agree that any dispute regarding the interpretation or enforcement of the terms of this Settlement or in connection with this Agreement shall be resolved by the Court.

## XI.   PRELIMINARY TIMELINE FOR COMPLETION OF SETTLEMENT

The preliminary schedule for notice, approval, and payment procedures carrying out this settlement is as follows. The schedule may be modified depending on whether and when the Court grants necessary approvals and orders notice to the class, sets further hearings, or otherwise orders modifications to this schedule. In the event of such modification, the Parties shall cooperate in order to complete the settlement procedures as expeditiously as reasonably practicable. To the extent this Section XI conflicts with one or more other provisions of this Agreement, the other provision(s) shall supersede this Section XI.

| TIME REQUIRED | EVENT |
|---|---|
| Within 20 Days of entry of Preliminary Approval Order | Mailing of Settlement Notices, Claim Forms, and Form W-9's. |
| 30 days after mailing of Notice | Class Counsel to conduct trace/search efforts, send a follow up mailing to individuals whose Notice Packet was returned as undeliverable or whose listed address is found to be inaccurate; and send the reminder mailing |
| 60 days after mailing of Notice | Last day for Class Members to submit written objections and Claim Forms |
| At least seven days prior to Fairness Hearing (or at another time established by the Court) | Plaintiff files Motion for Final Approval |
| To be determined by the Court, but no less than120 days after entry of the Preliminary Approval Order | Fairness Hearing |
| Within 30 days of entry of Final Approval Order | Class Counsel to provide Settlement Administrator final calculation of payments from the Settlement Fund to be distributed to the Claiming Class Members |
| Within 15 Business Days of Settlement Effective Date | Defendant to transfer Settlement Payment to the Class Settlement Fund. |

18

| Within 20 business days of Settlement Effective Date | Settlement Administrator to distribute and pay all court-approved attorneys' fees and litigation costs |
|---|---|
| Within 20 business days of Settlement Effective Date | Settlement Administrator to distribute and pay: (1) Claiming Class Member Payments; (2) administration costs to Settlement Administrator; (3) class representatives' service awards (First Round Distribution). |
| 90 days after payment of settlement checks | Expiration of first round distribution of class member settlement checks. |
| Within 10 days of date of expiration of class member settlement checks. | Settlement Administrator to make the final calculation of payments to be distributed to the eligible class members of remainder of the Net Settlement Fund and provide all Counsel with a report listing the amount of all payments to be made to each Eligible Settlement Class Member, and amounts, if any, to be paid to unidentified class members who submit claims for settlement shares from the reserve fund. |
| Within 20 days of date of expiration of class member settlement checks | Settlement Administrator to distribute and pay funds remaining in the Net Settlement Fund and Reserve Fund to eligible identified and unidentified class members (Second Round Distribution). |
| 90 days after payment of second round distribution of settlement checks | Expiration of second round distribution of class member checks; Settlement Administrator to pay any residual funds to *cy pres* beneficiaries and close the settlement fund. |

## XII.   MISCELLANEOUS

### A.   Conditional Nature of Agreement

At the Plaintiffs' option, expressed in written notice to FXG's counsel, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of Plaintiff or the Class, or fails to enter the Preliminary Approval Order or Final Approval Order in the Lawsuit in substantially the form submitted by the Parties, except that a court ruling regarding Class Counsel's attorneys' fees and costs or the proposed Service Awards shall not be a basis for withdrawal.

At FXG's option, expressed in written notice to Class Counsel, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of FXG, or fails to enter the Preliminary Approval Order or Final Approval Order in the Lawsuit in substantially the form submitted by the Parties. Any appeal by Class Counsel of the attorneys' fees and costs awarded by the Court in connection with this Settlement shall not be a basis for any party to have this Agreement become null and void.

If this Agreement becomes null and void, the Parties shall move forward with the Lawsuit as though no settlement had been reached, all of the Parties to the Lawsuit being placed in the same position they were before this Settlement was proposed, negotiated and agreed upon, and Plaintiffs' motions for approval of this Settlement shall be withdrawn.

### B.   Severability

None of the terms of this Agreement is severable from the others. However, if the Court should rule that any term is void, illegal, or unenforceable for any reason, FXG, in its sole discretion, and Plaintiffs, in their sole discretion (but acting in accord with their duties and obligations to the Class), may elect to waive any such deficiency and proceed with the Settlement under the terms and conditions ultimately approved by the Court.

### C.   Effectiveness, Amendments, and Binding Nature

This Agreement may be amended only by written agreement signed by the Parties. Except as otherwise stated above, each of the parties, including Plaintiffs on behalf of themselves and the Class, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by that party to be true or applicable, this Agreement shall nevertheless remain effective.

This Agreement is binding on, and shall inure to the benefit of, the Parties in the Lawsuit and the Class Members and their respective agents, employees, representatives, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest. All Releasees other than FXG, which is a party, are intended to be third-party beneficiaries of this Agreement.

## D.     Cooperation in Implementation

FXG, Plaintiffs, and their respective counsel (including Class Counsel) agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

## E.     Governing Law

This Agreement shall be construed and governed in accordance with the procedural and substantive law of the state of New Jersey, except that all matters of federal law and the Class Settlement Fund's compliance with Internal Revenue Code § 468B and the Treasury Regulations thereunder shall be governed by federal income tax law.

## F.     No Admission of Liability

The Parties are entering into this Settlement for the purpose of compromising and settling disputed claims. Nothing in this Agreement or in the documents relating to the Settlement shall be construed, deemed, or offered as an admission by any of the Parties, or by any member of the Class, for any purpose in any judicial or administrative action or proceeding, whether in law or in equity, and regardless of whether this Agreement ultimately becomes effective.

## G.     Income Tax Obligations

The Settlement Payment is allocated by the Parties to compensate for the reimbursement of expenses (whether deducted from contractual payments to Plaintiffs or their affiliated entities or paid separately by Plaintiffs) and interest. No representation has been made to the Plaintiffs, Class Members, or their attorneys by FXG regarding the taxability of any portion of the payments under this Agreement. Plaintiffs, Class Members, and Class Counsel are solely responsible for their own tax filing and payment obligations arising from this Agreement, except that the Settlement Administrator will provide Plaintiff, Class Members, and Class Counsel with copies of IRS Forms 1099 for any payments the Class Settlement Fund makes to them under this Agreement. If any taxing authority imposes employment taxes because any portion of the Settlement Payment is determined to be taxable wages, the Settlement Administrator shall be responsible for the employer share of such taxes. However, as between the Parties, FXG agrees that it is responsible for the employer share of such taxes rather than Plaintiffs or Class Members. Nothing in this paragraph is intended to alter the duties of the Settlement Administrator set forth in this Agreement.

## H.     Signatures

This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes.

21

Plaintiffs:

_Michael Carrow_
_____

Michael Carrow

Date:  12/13/2020
_____

_____

Michael Fennell

Date:  _____

_____

Nicholas Stefanou

Date:  _____

Defendant:

By: _____

FedEx Ground Package System, Inc.

Its:

Date:  _____

APPROVED AND ACKNOWLEDGED:

_____

Class Counsel

APPROVED AND ACKNOWLEDGED:

Digitally signed by Benjamin Ferron
DN: cn=Benjamin Ferron, o, ou,
email=benjamin.ferron@fedex.com,
c=US
Date: 2020.12.10 18:53:37 -05'00'

Counsel for FedEx Ground Package System, Inc.

22

Plaintiffs:

_____

Michael Carrow

Date: _____

_____

Michael Fennell

Date:  12/13/2020

_____

Nicholas Stefanou

Date: _____

Defendant:

_____

By:

FedEx Ground Package System, Inc.

Its:

Date:  12/9/20

APPROVED AND ACKNOWLEDGED:

_____

Class Counsel

APPROVED AND ACKNOWLEDGED:

Digitally signed by Benjamin Ferron
DN: cn=Benjamin Ferron, o, ou,
email=benjamin.ferron@fedex.com,
c=US
Date: 2020.12.10 18:53:37 -05'00'

Counsel for FedEx Ground Package System, Inc.

Plaintiffs:                                    Defendant:

_____               _____
Michael Carrow                                 By:
                                               FedEx Ground Package System, Inc.
Date: _____                 Its:

                                               Date: _____12/9/20_____


_____
Michael Fennell

Date: _____


_____
Nicholas Stefanou

Date: __12/12/2020_____


APPROVED AND ACKNOWLEDGED:                     APPROVED AND ACKNOWLEDGED:

_____

Class Counsel                                  Counsel for FedEx Ground Package System, Inc.

Digitally signed by Benjamin Ferron
DN: cn=Benjamin Ferron, o, ou,
email=benjamin.ferron@fedex.com,
c=US
Date: 2020.12.10 18:53:37 -05'00'

Plaintiffs:

Defendant:

_____

_____
By:

Michael Carrow

FedEx Ground Package System, Inc.

Date: _____

Its:

Date:   _12/9/20_____

_____

Michael Fennell

Date: _____

_____

Nicholas Stefanou

Date: _____

APPROVED AND ACKNOWLEDGED:

APPROVED AND ACKNOWLEDGED:

_____

_____

Class Counsel

Counsel for FedEx Ground Package System, Inc.

Digitally signed by Benjamin Ferron
DN: cn=Benjamin Ferron, o, ou,
email=benjamin.ferron@fedex.com,
c=US
Date: 2020.12.10 18:53:37 -05'00'

22

# Exhibit 1

# Notice of Proposed Class Action Settlement for Individuals

# Who Worked as FedEx Contractors in New Jersey

*Carrow v. FedEx Ground Package System, Inc., No. 16-03026 (D.N.J.)*

*This is a Court-authorized notice.  This is not a solicitation from a lawyer.*

- A settlement of a lawsuit against FedEx Ground Package System, Inc. ("FedEx Ground") has been proposed in which FedEx Ground will pay contractors who contracted with FedEx Ground between April 13, 2010 to June 1, 2017 (the "Class Period") to resolve claims brought by delivery contractors ("contractors") alleging that FedEx Ground misclassified them as independent contractors while controlling them like employees.

- You may be eligible to receive a share of the settlement fund.

- FedEx Ground and the Plaintiffs agreed to a class action settlement that ***affects your rights whether you act or don't act***. FedEx Ground will pay $2,470,000.00 to resolve all claims of approximately 192 contractors in New Jersey who worked during the period from April 13, 2010 to June 1, 2017.  Read this Notice carefully to consider your options:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT CLAIM FORM** | **Receive Money.**<br>If you submit the enclosed Claim Form and IRS Form W-9 by ____, 2021, you will receive payment as part of this Settlement. |
| **OBJECT** | You may write to the Court about why you don't like the settlement. |
| **DO NOTHING** | If you do nothing, you will not receive any funds that are available under the Settlement, but you will still release any claims related to misclassification that you may have against FedEx. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved.

| **1.   Why did I get this notice package?** |
| --- |

You received this notice because FedEx Ground's records show that you signed a FedEx Ground Pickup and Delivery Contractor Operating Agreement, individually or on behalf of an incorporated entity, to provide service in New Jersey, between April 13, 2010 to June 1, 2017, and you did so after October 15, 2007, or you have potential claims that were not released in another case against FedEx Ground called <u>Tofaute</u>.

| **2.   What is this lawsuit about?** |
| --- |

Three contractors sued FedEx Ground as Plaintiffs, on behalf of themselves and a class of other pickup and delivery contractors. The lawsuit is about whether FedEx Ground misclassified pickup and delivery contractors as independent contractors rather than as employees and failed to provide them with legal rights that employees have under New Jersey law. On behalf of all contractors in New Jersey, Plaintiffs sought compensation for violations of the New Jersey Wage Payment Law ("NJWPL").

FedEx Ground maintains that the independent contractor classification is appropriate and denies that it has broken any laws.

While this action was pending, the case was mediated, and the parties subsequently entered into an agreement to settle this action.

| **3.   Why is this a class action?** |
| --- |

In a class action lawsuit, the Plaintiffs sue on behalf of other people who have similar claims. The people who have similar claims to the Plaintiffs are "Class Members." The individuals who sued—and all the Class Members like them—are collectively called the Class.

The Court has previously certified this case to proceed as a class action.

| **4.   Why is there a settlement?** |
| --- |

The Court has not issued a final decision about the case, which has been ongoing for many years. Instead of further litigation, which could have taken many more years with no certainty of the outcome, both sides agreed to a class-wide settlement. The settlement provides the Class Members with compensation sooner and allows both sides to avoid the cost of a trial and possible appeals. Plaintiffs and their lawyers think the settlement is in the best interest of the Class Members. You may be familiar with previous lawsuits and settlement related to FedEx drivers in New Jersey.  Though the plaintiffs in that case asserted similar claims to those asserted here, that case covered individuals who first signed an Operating Agreement before October 15, 2007, while this case primarily affects those individuals who first signed an Operating Agreement after October 15, 2007.

## 5.   How do I know if I am part of the settlement?

You are part of the settlement if you meet all the following criteria:

(1)            **Signed Operating Agreement.** You entered into a FedEx Ground or FedEx Home Delivery Pick Up and Delivery Operating Agreement, either on your own behalf or on behalf of a business entity; **AND**

(2)            **Effective Date.** That Operating Agreement was either signed: a) after October 15, 2007 and was in effect between April 13, 2010 to June 1, 2017 **or** b) it was in effect before October 15, 2007 **and** you excluded yourself from the class in a FedEx Ground multidistrict litigation action, *Tofaute v. FedEx Ground Package System, Inc.*, No. 05-595, United States District Court for the Northern District of Indiana.

(3)            **Dispatched in New Jersey.** You or your business entity performed package and delivery services dispatched out of a terminal in New Jersey between those dates.

If you do not satisfy all three conditions, you are not a member of the Class and are entitled to payment under the Settlement.

## 6.   I'm still not sure if I am included.

If you still are not sure whether you are included, you can call and ask for help. You can call the lawyers representing the class ("Class Counsel") for more information:

Harold L. Lichten, Esq.
Lichten & Liss-Riordan, PC
729 Boylston St., Suite 2000
Boston, MA 02116
Stephen Kirkpatrick, Settlement Administration Manager, skirkpatrick@llrlaw.com
617-994-5800

Anthony L. Marchetti, Jr.
MARCHETTI LAW, P.C.
900 N. Kings Hwy., Suite 306
Cherry Hill, NJ 08034
(856) 824-1001
amarchetti@marchettilawfirm.com

# THE SETTLEMENT BENEFITS

### 7.   What does the settlement provide?

FedEx Ground has agreed to pay $2,470,000 to resolve the class claims asserted in this action. The money will also be used to pay settlement administration costs, Plaintiffs' attorneys' fees and costs, and to pay the named Plaintiffs for their time and service to the Class. Settlement Payments will be distributed to Class Members who submit a Claim Form to participate in the settlement.

### 8.  How much will my payment be?

Class Counsel estimates that after deduction of attorney's fees, administrative expenses, and payments to the named Plaintiffs, Class Members who participate will receive approximately $100 for each week that they worked more than thirty hours, and approximately $50 per week when they worked between fifteen to thirty hours.  These amounts are only estimates and may be higher or  lower depending on a number of factors, including how many Class Members choose to participate in the settlement.

### 9.  What is the formula for allocation of the Settlement Fund?

The Net Settlement Fund, after deduction of fees and expenses, will be distributed among the Class Members who meet the Class definition and submit a Claim Form, based on their *pro rata* weeks worked within the Class Period. All Class members will receive a settlement payment  of approximately $100 for each workweek during which it appears, based on data derived from FedEx Ground records, that they personally drove one of their FedEx Ground routes 30 or more hours, and a lower payment of approximately $50 for workweeks in which they drove between 15 and 30 hours per week. There is a flat minimum payment of $250 dollars for any Class Member who participates in the settlement.

### 10.  Will I owe any taxes?

You will receive an IRS Form 1099 for the amount you are sent.  You should consult with an accountant or other tax advisor about the tax consequences of your settlement proceeds.

# HOW YOU GET A PAYMENT

**11. How will I receive a payment?**

**You will only receive a payment if you complete and submit the attached Claim Form and IRS Form W9 by \_\_\_\_\_, 2021.**  Then, if the Settlement is finally-approved and the time for appeals has expired, a settlement check will be mailed directly to you representing your share of the Net Settlement Fund. Within the next 90 days, a second check may be sent to you reflecting your *pro rata* share of unclaimed settlement proceeds (if any).

**12. When would I get my payment?**

The Court will conduct a Final Fairness Hearing on \_\_\_, 2021 at \_\_\_ am/pm \_\_\_\_\_ Courthouse to decide whether to approve the settlement. You should receive your payment within two months if the Court approves the settlement. However, payment will be delayed if there are appeals or if the Court declines to approve the settlement.

**13. What am I giving up to get a payment?**

Under the terms of the settlement, all Class Members, and the business entities that contracted with FedEx Ground during the Class Period where Class Members either served as Authorized Officers or had an ownership interest in, will be releasing FedEx Ground Package System, Inc., and parties related to it, from all claims that were asserted or could have been asserted in this action relating to allegations of misclassification as an independent contractor set forth in Plaintiffs' Operative Complaint.

**If the Court approves the Settlement, your claims (including those that could be brought on behalf of any corporate entity you owned that provided services to FedEx Ground) described above will be extinguished, regardless of whether you submit a Claim Form to receive funds from the Settlement.**

# THE LAWYERS REPRESENTING YOU

| 14. Do I have a lawyer in this case? |
|---|

The Court has appointed the following lawyers to serve as Class Counsel for the Plaintiffs and Class Members in this lawsuit:

| | |
|---|---|
| Harold L. Lichten, Esq. | Anthony L. Marchetti, Jr. |
| Lichten & Liss-Riordan, PC | MARCHETTI LAW, P.C. |
| 729 Boylston St., Suite 2000 | 900 N. Kings Hwy., Suite 306 |
| Boston, MA 02116 | Cherry Hill, NJ 08034 |
| Stephen Kirkpatrick, | (856) 824-1001 |
| Settlement Administration Manager | amarchetti@marchettilawfirm.com |
| skirkpatrick@llrlaw.com | |
| 617-994-5800 | |

These lawyers will be paid from the Settlement Fund, so you will not be charged personally for their work on this case and in negotiating this settlement.

| 15. How will the lawyers and Plaintiffs be paid? |
|---|

Class Counsel will ask the Court to approve payment of up to a) 32.25% of the Settlement Fund for attorney's fees and expenses to compensate the attorneys who have invested hundreds of hours and significant expense investigating the facts, litigating the case, and negotiating the settlement and b) $15,000 each in service awards for the three Representative Plaintiffs for their efforts in pursuing this lawsuit and assisting Class Counsel throughout this litigation. The Court will make the final decision about the amount of attorney's fees and the service awards to be paid.

Class Counsel will make their requests to the Court for attorney's fees and expenses, as well as service awards, on or before ___, 2021. Payment of attorneys' fees and expenses will be made out of the Settlement Fund and you will not be required to pay any other fees and expenses.

# OBJECTING TO THE SETTLEMENT

**16. How do I tell the Court that I would like to object?**

If you are a Class Member, you can object to the settlement if you don't think it is fair, reasonable, or adequate. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter stating that you object to the Settlement. You may hire a lawyer to represent you at your own expense. If the settlement is approved over your objection, you will be bound by the release of claims described above.

To object to the settlement, you must send a letter that includes:
- a written statement that you are objecting to the settlement, as well as the specific reason(s), if any, for each objection, including any legal or factual support you wish to bring to the Court's attention;
- Any evidence or other information you wish to introduce in support of your objection;
- A statement of whether you or your counsel intends to appear and argue at the Final Fairness Hearing; and
- Mail the objection, postmarked no later than ___, 2021, to the two addresses below:

| Clerk | Class Counsel |
|---|---|
| Clerk of the Court<br>Mitchell H. Cohen Building<br>& U.S. Courthouse<br>4th & Cooper Streets<br>Camden, NJ 08101 | Harold L. Lichten, Esq.<br>Lichten & Liss-Riordan, PC<br>729 Boylston Street, Suite 2000<br>Boston, MA 02116 |

**Your Objection will likely become a public record filed in the lawsuit.**

# THE COURT'S FINAL APPROVAL HEARING

**17. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Final Fairness Hearing on ___, 2021 at the United States District Court, located at 4th & Cooper Streets, Camden, NJ.

At the Final Fairness Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. The Court will listen to class members who appear at the hearing who have filed a notice of intention to appear. The Court may also decide how much Class Counsel will receive as attorney's fees and costs and whether to award service payments to the Class Representatives. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**18. Do I have to attend the final fairness hearing?**

No. Class Counsel will answer any questions that the Court may have at the hearing. You are welcome, however, to attend the final fairness hearing. If you submit a written objection, you don't have to come to the Court to talk about it. As long as you submitted your written objection on time, the Court will consider it.

You do not have to attend the Final Fairness Hearing to receive payment under the settlement. All that you are required to do to receive payment from the settlement fund is submit the attached Claim Form and IRS Form W9.

# IF YOU DO NOTHING

**19. What happens if I do nothing at all?**

**If you are a Class Member and do nothing, you will not receive any funds under the settlement, but you will still be bound by the release of claims described above.**

# GETTING MORE INFORMATION

**20. How do I get more information?**

This notice summarizes the settlement. Additional details are included in the Settlement Agreement itself. You can get a copy of the Settlement Agreement by contacting Class Counsel at:

Harold L. Lichten, Esq.
Lichten & Liss-Riordan, PC
729 Boylston St., Suite 2000
Boston, MA 02116
(Stephen Kirkpatrick, Settlement Administration Manager, skirkpatrick@llrlaw.com, 617-994-5800)

Anthony L. Marchetti, Jr.
MARCHETTI LAW, P.C.
900 N. Kings Hwy., Suite 306
Cherry Hill, NJ 08034
(856) 824-1001
amarchetti@marchettilawfirm.com

***Please do not contact the Court or FedEx Ground or its lawyers with questions about the settlement.***

# Exhibit 2

# CLAIM FORM

*Carrow v. FedEx Ground Package System, Inc., No. 16-03026 (D.N.J.)*

In order to claim a share of the class action settlement in the lawsuit filed against FedEx Ground Package System, Inc. ("FedEx Ground"), you must complete and return this form and the enclosed IRS Form W9 to Class Counsel at the address listed below. *Claim Forms may be submitted by mail, fax, or email by _____, 2021 to be eligible to participate.*

All members of the Settlement Class must return the forms to the address below by ____, 2021 in order to claim a share of the settlement proceeds.

> Harold L. Lichten, Esquire
> Matthew Thomson, Esquire
> Lichten & Liss-Riordan, P.C.,
> 729 Boylston Street, Suite 2000
> Boston, MA  02116
> www.llrlaw.com; Fax: 617-994-5801; Phone: 617-994-5800
> claims@llrlaw.com

Name: _____

Contracting Business Entity (if Any):_____

Address: _____

Home Phone: _____ Cell Phone: _____

Email address: _____

*PLEASE NOTE THAT TO PARTICIPATE IN THIS SETTLEMENT YOU, AND ANY RELATED ENTITY THAT WAS A PARTY TO AN OPERATING AGREEMENT WITH FEDEX GROUND DURING THE CLASS PERIOD (MEANING ANY BUSINESS ENTITY, WHETHER PARTNERSHIP, LIMITED LIABILITY COMPANY, SOLE PROPRIETORSHIP, CORPORATION, OR ANY OTHER BUSINESS ENTITY IN WHICH YOU WERE THE AUTHORIZED OFFICER AND/OR HAD AN OWNERSHIP INTEREST IN) MUST RELEASE YOUR SPECIFIED CLAIMS AGAINST FEDEX GROUND.*

*BY SIGNING THIS CLAIM FORM, YOU REPRESENT AND WARRANT THAT NO PORTION OF ANY CLAIM, RIGHT, DEMAND, ACTION, OR CAUSE OF ACTION AGAINST ANY OF THE RELEASEES THAT YOU ARE RELEASING IN THIS AGREEMENT, AND NO PORTION OF ANY PAYMENT TO WHICH YOU MAY BE ENTITLED, HAS BEEN ASSIGNED, TRANSFERRED, OR CONVEYED BY OR FOR YOU IN ANY MANNER; AND NO PERSON OTHER THAN YOU HAVE ANY LEGAL OR EQUITABLE INTEREST IN THE CLAIMS, DEMANDS, ACTIONS, OR CAUSES OF ACTION TO BE RELEASED IN THIS AGREEMENT.  YOU FURTHER REPRESENT AND WARRANT THAT YOU HAVE AUTHORITY TO:  ENTER INTO THIS SETTLEMENT ON BEHALF OF ANY RELATED ENTITIES; BIND SUCH RELATED ENTITIES TO THIS SETTLEMENT AGREEMENT, INCLUDING BUT NOT LIMITED TO THE RELEASE OF CLAIMS PROVIDED IN THE SETTLEMENT*

*AGREEMENT FOR ANY AND ALL OF THE RELATED ENTITIES' RELEASED CLAIMS ARISING OR ACCRUING DURING THE CLASS PERIOD; AND TO DIRECT FEDEX GROUND AND/OR THE SETTLEMENT ADMINISTRATOR TO ISSUE PAYMENTS UNDER THIS SETTLEMENT TO BE MADE PAYABLE TO YOU INDIVIDUALLY RATHER THAN TO ANY RELATED ENTITIES.*

*BY SIGNING THIS CLAIM FORM, YOU ALSO AGREE, IN YOUR INDIVIDUAL CAPACITY AND IN YOUR CAPACITY AS CORPORATE OFFICER, THAT YOU ARE LIABLE FOR, AND WILL RELEASE, HOLD HARMLESS, DEFEND, AND INDEMNIFY THE RELEASEES FROM AND AGAINST ANY AND ALL RELEASED CLAIMS, KNOWN OR UNKNOWN, THAT MAY BE BROUGHT BY ANY PERSON, SHAREHOLDER, PARTNER, OWNER (IN WHOLE OR PART), FIRM, CORPORATION, OR OTHER ENTITY, INCLUDING ANY LIEN HOLDERS, OR ANY OTHER PERSON ASSERTING AN INTEREST IN ANY SUCH ENTITY, AGAINST THE RELEASEES FOR ANY SUCH JUDGMENTS, LIENS, INTERESTS, OR CLAIMS THAT EXIST ARISING OUT OF THE RELEASED CLAIMS, THIS SETTLEMENT, AND/OR THE DISTRIBUTION OF PAYMENTS UNDER THIS SETTLEMENT AGREEMENT.*

*<u>TO RECEIVE YOUR SETTLEMENT PAYMENT, YOU MUST SIGN BELOW AND RETURN THIS FORM AND THE IRS FORM W9 TO THE ADDRESS ABOVE (BY MAIL, FAX, OR EMAIL) BEFORE ___, 2021.</u>*

*<u>BY SIGNING BELOW, YOU AGREE TO THE RELEASE AND WARRANTY DESCRIBED ABOVE, AND IN FURTHER DETAIL IN THE SETTLEMENT AGREEMENT.</u>*

_____
(Signature)

_____
 (Date)

Exhibit 3

**Name**

1 ADDISON, ANTHONY
2 ADJANOHOUN, ULRICH SEDJRO
3 ADLER, BENJAMIN N
4 AFZAAL, MUHAMMAD
5 AJMERI, MAJID ABDUL
6 ALBA JR., DAVID ENRIQUE
7 ALBA, RICKY R
8 ALFONSO, FRANK
9 ANDREANOJR, MICHAEL DOMINICK
10 AVILA, EDMUNDO J
11 BABL, JOHN D
12 BACCI, DONALD ALBERT
13 BADR, MOHAMED EZZAT
14 BARBERI JR., JOSEPH
15 BARROSO, JULIAN A.
16 BARSHAY, BRUCE ELLIOT
17 BAYTAR, AYDIN _
18 BERNARDIN JR., RONALD MAURICE
19 BETTS, BRIAN J
20 BIALY, DAWID
21 BOCK, RICHARD S
22 BOMTEMPO, MARIO LUCIO
23 BONHEUR, VORBE A
24 BOUDAHER, ROLON
25 BOWDEN, DENNIS A.
26 BOYKO, DENNIS
27 BRONN, GARY
28 BROWN, CHARLES
29 BROWN, CHARLES C
30 BUCHMAN, DARREN FRED
31 BULUR, YUNUS EMRE
32 CALIGUIRI, MICHAEL JOHN
33 CAMPBELL, DAVID R.
34 CAMPOS, CLAUDIO L.
35 CANNIZZARO, JOSEPH SALVATORE
36 CAPONE, PHILIP ANTHONY
37 CARROLL, DOUGLAS ALAN
38 CARROW, MICHAEL
39 CARTAGENAJR, JOSE MIGUEL
40 CASTANEDA, STEVEN R
41 CHERKASSKY, DMITRY
42 CHO, HYUNJOON
43 CHUMPITAZI, CARLOS
44 COGDELL JR., JOSEPH J
45 COLLINS, JOSEPH F.
46 DAVID, KEMONIE C.

47 DELGADO, DEREK
48 DELPINO, GEORGE T
49 DEMIRKAN, JANGIZ
50 DENORA, JULES
51 DERITA, DENNY A
52 DEYER, YILDIRIM
53 DIAS, COSME LUIS
54 DIAZPOLANCO, VLADIMIR
55 DICK, GREG L
56 DOUGHERTY, MICHAEL B
57 DUGAN, DENNIS MICHAEL
58 DURAND, CHARLES R.
59 DUZGUN, ERCAN
60 DVORZHINSKIY, ALEKSANDR
61 DYKSTRA, JAMES ALLEN
62 ELSAKKA, AYMAN
63 ESPOSITO, PAUL COLES
64 FENNELL, MICHAEL
65 FINK, ROBERT MICHAEL
66 FLOYD, MARK F
67 FLYNN, JAMES P
68 FORGAC, MAROS
69 GALLI, VICTORIA R
70 GALLIANO, MARK HENRY
71 GAONA, GUIDO FABRICIO
72 GARCIA, EDY R
73 GARCIA, JOSE MISAEL
74 GARCIA, OLGA ESTHER
75 GEIGER, MARK THOMAS
76 GIBBS, RASHEEN
77 GIBSON, DWAINE JAMAR
78 GRAY JR., EDWARD L
79 GROMYAK, TARAS
80 GRUJIC, LAZAR
81 HAS, YUSUF
82 HASSAN, RAMADAN A
83 HAUN, FRANK
84 HERNANDEZ, LANDON
85 HONG, JUNG
86 HUANG, RICHARD L
87 HUBCHAK, VASYL
88 HUERTA SR., JAVIER E
89 HWANG, DANIEL
90 ISAJIW, DANIEL
91 KAUFMAN, BRIAN P.
92 KAYLAKOV, LAZAR
93 KENNEY JR., THOMAS R

 94 KENNEY, MICHAEL RICHARD
 95 KHAN, MUSTAFA A
 96 KIM, EUNG CHAN
 97 KLINE, CHARLES EDWARD
 98 KWON, CHRISTOPHER
 99 LANDERER, GOLAN
100 LANDY, RONALD
101 LAUB, ARTHUR
102 LELI, KENNETH
103 LEO, JAIME RAFAEL
104 LESNIOWSKI, ARTUR A
105 LEVINE, SCOTT
106 LOPEZ, MIGUEL
107 LOVE, LEONARD J
108 LUKOMSKI, GREG
109 LYONS, STANLEY S.
110 MARTINEZ, RAPHY
111 MATIAS, JIMMY
112 MCGEEJR, CHARLES
113 MCLAUGHLIN, BRIAN CHRISS
114 MCMANUS, MICHAEL JOSEPH
115 MEDINA, ERVIN
116 MEKHEIL, GEORGE R
117 MIMNA, TIMOTHY EDWARD
118 MINETTI, JOHN
119 MOORE, CRAIG LAMONT
120 MORA, ROBERTO
121 MORALES-TABARES, FABIO L
122 NERIS, JEFFREY
123 NOON, DENNIS J
124 OBERTLIK, JOSEPH
125 OBREGON, WILLIAM M.
126 ODAJI, AEKA WONAH
127 OLSZAK, TOMASZ
128 PAENG, CHUN TAE
129 PAULA, ELEODORO ANTONIO
130 PAVLOPOULOS, MARIOS
131 PELLEGRINO, RICHARD BRIAN
132 PEPE, MICHAEL ANTHONY
133 PEREZ, JESUS D
134 PEREZ, JONI R
135 PEREZ, WILLY
136 PETILLO, MIKE
137 PIO, JOHN WALTER
138 PRICOLI, PAUL ANTHONY
139 PULVINO, JONATHAN MATTHEW
140 RACIOPPI, DANIEL E

141 RAPKIN, HARRY ALLEN
142 RELUCIO III, HAROLD
143 RICCIO, CHARLES C
144 RICE, ROOSEVELT
145 RISTOSKI, SASO
146 RODRIGUEZ, ROMULO B
147 ROSARIOTINEO, LUIS MIGUEL
148 RUSIN, THOMAS
149 SAINTHILAIRE, ROBERT ALEXANDER
150 SAINTVIL, STEEVE
151 SALJOOKI, ELCID
152 SALTER, STEPHEN
153 SAMELKO, TADEUSZ
154 SANCHEZ, LUIS PATRICIO
155 SANTINI, LUIS
156 SANTOSPADILLA, ANTONIO
157 SCHER, MARC JOSEPH
158 SCHIPPER, DAVID BRUCE
159 SCHRADER, BRETT M
160 SERNEABAD, SOLAIMAN
161 SHANE, JULEEN MARIE
162 SHILMAN, LEONID A
163 SIEGEL, JEFFREY ALAN
164 SOCHACKI, RONALD JOSEPH
165 SOL, MINWOO FRANK
166 STEFANOU, NICHOLAS EVANGELOS
167 STELMAKH, VITALII
168 STEWARD III, EDWARD JAMES
169 STUCKEY, LECHARLES ANTWOIN
170 STULTS, PAUL
171 TEJADA, CARLOS YOEL
172 TERESCHUK, MYROSLAV
173 THOMAS, QURAN RASHON
174 THOMPSON JR., WILLIAM GEORGE
175 TOLOCHIY, VITALIY
176 TURKMANI, AMIR
177 UCCIO, JAMES
178 ULLOA, FREDDY
179 VALDEZ, MARVIN REMBERTO
180 VASILIADES, STEVEN
181 VASQUEZ, RENE
182 VEGA JR., FELIX
183 VENTO, STEPHEN MICHAEL
184 VITRUK, MARKIJAN
185 WASHINGTON, LINDA
186 WILSEA, MARK ALLEN
187 WINKELMAN, PAUL

188 WOJTON, LUKASZ BOGUMIL
189 WOLFE, RYAN EDWARD
190 YATES, MICHAEL ALAN
191 ZAPATA, FELIPE A
192 ZEIDLIK, DANIEL A

Exhibit 4

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL CARROW, MICHAEL FENNELL, and NICHOLAS STEFANOU, individually and on behalf of others similarly situated,** | No. 16-cv-03026-RBK-JS |
| **Plaintiffs,** | |
| -against- | |
| **FEDEX GROUND PACKAGE SYSTEM, INC.,** | |
| Defendant. | |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Upon consideration of Plaintiffs' Motion for Preliminary Approval of Class Action

Settlement, the Court hereby ORDERS as follows:

1.     The proposed class action settlement on behalf of the class certified pursuant to the

Court's December 26, 2019 Order (Dkt. 121) is preliminarily approved as fair, reasonable, and

adequate.

2.     Class Counsel shall now perform their settlement administration duties set forth in

the agreement.

3.     Rust Consulting, Inc. is designated and approved as the Settlement Administrator

to perform the functions identified in the Settlement Agreement, including but not limited to the

establishment of the Qualified Settlement Fund for the purpose of resolving the contested claims,

as described more fully in Sections II and III of the Settlement Agreement pursuant to Section

1

468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 CFR § 1.468B-1, et. Seq. and this Order.

    4.    The form, contents and methods of notices to be given to the Class Members pursuant to the proposed settlement constitute the best notice practicable and are hereby approved.

    5.    All other events contemplated by the Settlement Agreement to occur after this Order and before Final Approval shall be governed by the Settlement Agreement, to the extent not inconsistent with this order.

    6.    A Final fairness hearing is scheduled for _____, 2021 at _____.


_____
DATE

_____
Hon. Robert B. Kugler
United States District Judge

Exhibit 5

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL CARROW, MICHAEL FENNELL, and NICHOLAS STEFANOU, individually and on behalf of others similarly situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**FEDEX GROUND PACKAGE SYSTEM, INC.,**<br><br>Defendant. | No. 16-cv-03026-RBK-JS |

The Parties having appeared for a final fairness hearing on _____, 2021, the Court makes the following findings and rulings:

(1)     The Settlement Agreement is incorporated by reference into this Order and is hereby adopted as an Order of this Court.

(2)     Unless otherwise stated herein, all capitalized terms contained in this Order and Judgment shall have the same meaning and effect as stated in the Settlement Agreement (in addition to any capitalized terms defined herein).

(3)     The Court hereby finds that the Notice of Settlement was distributed to all members of the Settlement Class defined above, and that it fully and accurately informed the Settlement Class Members of all material elements of the proposed Settlement, and was the best notice practicable under the circumstances, and complied with the requirements of the Federal Rules of Civil Procedure and due process.

(4)     The Court finds that no Settlement Class Member has objected to the Settlement. The Court finds that all individuals listed in Exhibit ___ to the Parties' Settlement Agreement are class members and are bound by the terms of the Settlement.

(5)     The Court hereby approves the parties' agreed-upon procedure for disbursement of the settlement awards by the Settlement Administrator, as set out in the Settlement Agreement.

(6)     The Court hereby approved attorneys' fees in the amount of ____% of the Gross Settlement Amount ($_____) to compensate Class Counsel for all work performed in this action.

(7)     The Court hereby approves service awards to Plaintiffs Michael Carrow, Michael Fennell, and Nicholas Stefanou in the amount of $15,000.00 each.

(8)     The Motion for Final Approval is hereby GRANTED, and the Court hereby finds that the Settlement is fair, reasonable, and adequate, upon consideration of all factor set forth in Federal Rule of Civil Procedure 23(e)(2).

(9)     The Court hereby enters final judgment and dismisses this action with prejudice, with each party to bear its own fees and costs except as set out in Paragraph 5 above.

(10)     In consideration of the Settlement Payment provided under the Agreement, and for other good and valuable consideration, each of the Named Plaintiffs and Class Members shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Releasees as provided in the Agreement.

(11)     This Judgment is the Final Judgment in the suit as to all Released Claims

(12)     Upon the entry of this Order, Named Plaintiffs and all Class Members are barred and enjoined from asserting, filing, maintaining, or prosecuting, or in any way participating in the assertion, tiling, maintenance or prosecution, of any action asserting any Released Claim against any of the Releasees, as set forth in and in accordance with the terms of the Settlement Agreement.

Nothing herein shall in any way impair or restrict the right of the Parties to enforce the terms of the Settlement.

(13)     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement, is or may be construed or used as (a) an admission of, or evidence of, the validity of any Released Claim or any wrongdoing or liability of any Releasee; (b) an admission or concession by Named Plaintiffs or any Class Member of any infirmity in the claims asserted in the operative complaint filed in this action; or (c) an admission of, or evidence of, any fault or omission of any of the Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

(14)     Without affecting the finality of this Judgment in any way, the Court hereby retains continuing jurisdiction over any dispute regarding the interpretation of the terms of this Agreement.


IT IS SO ORDERED.


_____                     _____
DATE                                                                         Hon. Robert B. Kugler
                                                                                  United States District Judge

Exhibit 6

## Settlement Administration Agreement

The Settlement Administrator agrees to be responsible for the following functions in accordance with the terms of the Settlement Agreement in *Michael Carrow, et al. v. FedEx Ground Package System, Inc.,* No. 16-cv-03026-RBK-JS (D.N.J.):

1.      Submitting the Named Plaintiffs' and Claiming Class Members' taxpayer identification numbers, as provided in the executed Form W-9's, to the Internal Revenue Service taxpayer identification number matching service, and obtaining (prior to issuing payment) a corrected Form W-9 from each Named Plaintiff and/or Claiming Class Member whose taxpayer identification number does not result in a match in the above-referenced IRS process.

2.      Providing the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, substantially in the form attached hereto as Exhibit 7, to be mailed in accordance with the provisions of CAFA to the appropriate federal and state officials identified in Exhibit 7.

3.      Mailing, by first-class United States Mail, settlement payments to Named Plaintiff and Class Members in accordance with the Payment Calculations for each such Class Member provided to the Settlement Administrator by Class Counsel.

4.      Mailing, by first-class United States Mail, payment(s) for attorneys' fees and costs to Class Counsel.

5.      Mailing, by first-class United States Mail, incentive awards to Named Plaintiffs.

6.      Mailing payments of unclaimed settlement funds to the designated *cy pres* beneficiaries, if any.

7.      Establishing, designating, and maintaining the Class Settlement Fund as a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1, for the purpose of resolving the contested claims of Named Plaintiff and Class Members.

8.      Maintaining the assets of the Class Settlement Fund in a non-interest-bearing escrow account segregated from the assets of FXG and any person related to FXG.

9.      Obtaining an employer identification number (EIN) for the Class Settlement Fund pursuant to Treasury Regulation § 1.468B-2(k)(4).

10.     Preparing and filing federal income tax returns in the name of the Class Settlement Fund, as well as any other tax filings the Class Settlement Fund must make under federal, state, or local law.

11.     Cooperating with FXG to jointly file a relation-back election under Treasury Regulation § 1.468B-1(j)(2), if necessary, to treat the Class Settlement Fund as coming into existence as of the earliest possible date.

12.     Paying and depositing the federal taxes owed by the Class Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Class Settlement Fund.

13.     Preparing, filing, and issuing all necessary tax reporting forms in the name of the Class Settlement Fund, including IRS Forms 1099 regarding the distribution of payments to Class Members, Class Counsel, and Named Plaintiff.

14.     Providing FXG with copies of all tax reporting and filings made for the Class Settlement Fund, including copies of the checks and IRS Forms 1099 issued to Class Members, Class Counsel, and Named Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities.

15.     Paying any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the Class Settlement Fund. Any such tax payment shall be made solely from the assets of that Class Settlement Fund without any recourse against FXG for additional monies.

16.     Providing the Final Accounting to FXG and Class Counsel.

17.     Liquidating any remaining assets of the Class Settlement Fund after all payments to the Class Members, Class Counsel, and Named Plaintiffs have been made and all tax obligations have been satisfied, and distributing such assets as directed by the Court.

18.     Petitioning the Court for termination of the Class Settlement Fund once all of the duties listed above in subsections (1) to (14) have been completed.


_____

On behalf of Rust Consulting

Exhibit 7

[DATE]
[ADDRESS]

**Re: Notice of Proposed Class Action Settlement in *Michael Carrow, et al. v. FedEx Ground Package System, Inc.,* No. 16-cv-03026-RBK-JS**

To Whom It May Concern:

We are the court-appointed Settlement Administrator in the above-captioned class action lawsuit (the "Class Action"). Pursuant to Section 3 of the Class Action Fairness Act, 28 U.S.C. § 1715, you are hereby notified of a proposed settlement of the Class Action currently pending in the United States District Court for the District of New Jersey.  FedEx Ground Package System, Inc. (the "Defendant") is the only defendant in the Class Action and the only defendant participating in the proposed class action settlement. Accordingly, pursuant to 28 U.S.C.§ 1715(b), the Defendant provides this notice, and states as follows:

(1) A copy of the original Summons and Complaint, the operative Second Amended Class Action Complaint, and any attachments thereto, appear on the enclosed CD in the folder labeled Tab 1.

(2) Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Settlement, filed December __ 2020, appears at Tab 2. A Final Fairness Hearing has not yet been scheduled. Please note that the Final Approval Hearing and other hearings may be scheduled, or rescheduled, in the matter, but you will not receive any further notice from Defendant.

(3) The parties have agreed to a notice to class members, filed with the Court on December __, 2020. The Settlement Notice appearing at Tab 3 will be mailed to class members who were previously afforded an opportunity to request exclusion from the Class pursuant to the court-authorized initial notice of the pendency of the Class Action in 2020. Under the terms of the proposed Settlement Agreement, class members do not have the right to request exclusion from the Settlement. Upon the Court's entry of the preliminary approval order, and subject to any revisions the Court may have, these notices will be mailed to class members as applicable.

(4) The proposed Class Action Settlement Agreement, as filed with the Court on October __ 2020, appears at Tab 5.

(5) No final judgment or notice of dismissal has yet been entered.

(6) The certified class is defined as: "All persons who: 1) entered into a FedEx Ground or Home Delivery Operating Agreement, either personally or through a corporate entity; 2) drove a vehicle on a full-time basis to provide package pick-up and delivery services pursuant to the Operating Agreement in any week from April 13, 2010 to June 1, 2017 ("the Class Period"); 3) were dispatched out of a terminal in the state of New Jersey; and 4) who first signed an Operating Agreement after October 15, 2007, or excluded themselves from the certified class in

*Tofaute v. FedEx Ground Package System, Inc*., No. 05-595 (N.D. Ind).  "Full-time basis" means thirty or more hours.

(7) At Tab 6 appears a list of the class members (the "Class List") who are currently believed to reside or most recently resided (to the best of Defendant's ability to determine based on information available in its records) in your state or territory, which also includes information regarding the estimated approximate proportionate share of the settlement that will be available to the members of the class identified in the list. The actual amount of money that will be made available to a Class Member – and, accordingly, his or her proportionate share – is likely to change as the settlement proceeds. The estimated proportionate shares provided in the Class List are based on current assumptions, not final information, regarding the number of Class Members who submit Valid Claims, and the number of routes and weeks those Class Members worked in New Jersey during the specified time period (April 13, 2010 to June 1, 2017). The final information in this regard could affect the actual proportionate share received by the eligible Class Members.[1]

Kindly acknowledge receipt of this notice by date-stamping the additional copy provided for that purpose and returning it in the self-addressed, postage-prepaid envelope also enclosed.

Sincerely,

_____

Enclosures

---

[1] CAFA requires that such information be provided by state of residence. (See 28 U.S.C. § 1715(b)(7).) Please note that the entire Class consists of persons who worked out of certain FedEx Ground locations in New Jersey during the Class Period (as defined). Each member of the Class, who timely submits a Valid Claim (as defined in the Settlement Agreement) and is otherwise eligible to receive a payment, will be sent a payment that is principally based on the number of routes they serviced and weeks they worked as a pick-up and delivery driver for FedEx Ground in New Jersey between April 10, 2010 and June 1, 2017. These values will be the same regardless of the Class Member's current state of residence.  In other words, state of residence will have no impact at all on Class Member payments in the Settlement.